```
                 UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS (Chicago)

GERALD GEORGE, et al.,       )
                             )
            Plaintiffs,      )
                             )    Docket No. 07-CV-1713
      v.                     )
                             )
KRAFT FOODS GLOBAL, Inc.,    )
et al.,                      )    Chicago, Illinois
                             )    May 15, 2008
            Defendants.      )


    HEARING ON PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT
                           BEFORE THE
        HONORABLE MAGISTRATE JUDGE SIDNEY I. SCHENKIER



APPEARANCES:

For Plaintiffs:           NELSON G. WOLFF
                          TROY A. DOLES
                          SCHLICHTER BOGARD & DENTON
                          100 South Fourth Street
                          Suite 900
                          St. Louis, MO  63102



For Defendants:           IAN H. MORRISON
                          SEYFARTH SHAW LLP
                          131 South Dearborn Street
                          Suite 2400
                          Chicago, IL  60603-5577


     PLEASE PROVIDE CORRECT VOICE IDENTIFICATION

Transcribed by:           Riki Schatell
                          6033 North Sheridan Road, 28-K
                          Chicago, Illinois  60660-3046
                          773/728-7281

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

```
 1              THE CLERK:  07-C-1713, George vs. Kraft Foods Global.
 2              MR. WOLFF:  Good morning, your Honor, Nelson Wolff
 3    and Troy Doles on behalf of the plaintiffs.
 4              MR. MORRISON:  Good morning, your Honor, Ian Morrison
 5    on behalf of the defendants.
 6              THE COURT:  Well, we have a motion for leave to file
 7    a first amended complaint.  We have a response to the motion.
 8    Let me, before I ask some questions, let me compliment the
 9    plaintiff for one thing you did that I don't see very often,
10    which is you gave me a version that actually made it very clear
11    what was being changed.  And frankly I think that everybody
12    profits from that, so I do appreciate that.
13              MR. WOLFF:  You're welcome.
14              THE COURT:  You obviously have a disagreement about
15    the propriety of amendment here.  I have a response.  I don't
16    know if you want to file a written reply?
17              MR. WOLFF:  I don't think it's necessary, your Honor,
18    unless you would like --
19              THE COURT:  Okay.
20              MR. WOLFF:  -- to hear anything specifically.
21              THE COURT:  All right.
22              MR. WOLFF:  We're, of course, prepared to.
23              THE COURT:  Let me ask a couple of questions then.
24    There's a lot in the motion that explains the addition of or
25    the proposed addition of the parties that you're seeking to
```

1  add.  And there's a lot of additional parties you're seeking to
2  add.  I think my count was 21?
3          MR. WOLFF:  By number I believe that's correct.
4          THE COURT:  Okay.  The motion doesn't discuss as much
5  the proposed amendments to Paragraph 107, which is the list of
6  alleged breaches of fiduciary duty, and there are nine, at
7  least by my count, additional allegations of breach.  Does that
8  sound about right?
9          MR. WOLFF:  It's about eight.
10         THE COURT:  Okay.
11         MR. WOLFF:  Nine.  There were, I think, the
12 defendants' response pointed out that there were about six that
13 they considered to be new.
14         THE COURT:  Okay.  But the new ones are, I think,
15 significantly new because, at least as I view the case, the
16 fundamental claims of breach of fiduciary duty in terms of any
17 claim in the end for money to be brought back into the Fund was
18 with respect to overpayment, improper payment to various, you
19 know, investment advisors or managers.
20         These additional allegations of breach of fiduciary
21 duty really seek to do something, I think, very different,
22 which is to attack the actual investment decisions and the
23 prudence of various investment decisions and what particular
24 investment vehicles were used and how much cash was kept or
25 invested, and that's a big difference from the way you've pled

1  the case and the way the case has been structured and the way
2  it proceeded since the beginning.  I mean would you agree
3  that's a big change?
4           MR. WOLFF:  Well, we agree that it's different and it
5  represents additional exposure that the defendants have.
6           THE COURT:  Yes, give me an idea of the change in the
7  exposure.  In the case as it now exists, if you were to prevail
8  and there was a number that was assigned as money that
9  defendants were responsible to restore to the Fund, what would
10 that number be at the outside?
11          MR. WOLFF:  Can't say at this point in time because
12 as your Honor knows, we just recently came into possession of
13 usable format of thousands and thousands of pages of documents
14 but what we've been able to identify now in a broad brush
15 stroke is the outline of the type of claim, so what we've added
16 here are more specifics.
17          THE COURT:  You're not answering my question.
18          MR. WOLFF:  You're asking about dollar amounts?
19          THE COURT:  Yes.  As the complaint now exists, not as
20 you proposed to amend it, on the claim that there was, you
21 know, improper payments, if you won the case, you know, what
22 would be the outside recovery?  Ball park.
23          MR. WOLFF:  Don't know.  We have experts looking at
24 it.
25          THE COURT:  All right.  But clearly if you're talking

```
 1   about now attacking the not simply what was paid to people in
 2   various capacities who provided services, but attacking the
 3   actual investment decisions, that's a great increase in
 4   potential exposure.
 5               MR. WOLFF:  It is an increase, we agree.  And
 6   some --
 7               THE COURT:  Do you --
 8               MR. WOLFF:  -- might consider that --
 9               THE COURT:  -- disagree with my adjective or --
10               MR. WOLFF:  I'm willing to stipulate that we think
11   it --
12               THE COURT:  Okay.
13               MR. WOLFF:  -- could be great, especially if you go
14   back a number of years.
15               THE COURT:  Now with respect to the 21 additional
16   parties you seek to name, how many of those parties have
17   anything to do with the claims you originally pled?
18               MR. WOLFF:  Well, we think that most of them do.  And
19   there are really, even though it's 21 in name, it's about eight
20   groups with either the Kraft or the Altria family tree, so to
21   speak.
22               THE COURT:  You think all those people are necessary
23   to relief?
24               MR. WOLFF:  Well, at this point in time we think that
25    there's enough information --
```

```
 1              THE COURT:  On the original claim.
 2              MR. WOLFF:  I think that they are.  Troy has been
 3   involved in this longer.  That's why I'm looking over to him
 4   and I believe it is.
 5              THE COURT:  Yes, because you haven't really laid that
 6   out in your papers, I don't think.
 7              MR. WOLFF:  The original -- Well, I think there was a
 8   motion to dismiss filed originally as to those parties and that
 9   was denied, so I think there's been a sufficient pleading to
10   move forward on that.  But we've, in fact, had documents
11   produced by the Altria companies through Kraft.
12              THE COURT:  Um-hum.
13              MR. WOLFF:  So we don't think there's really any
14   surprise to having brought them in whether it relates to the
15   original or to these modified claims.
16              THE COURT:  It was a surprise to me.  A big surprise
17   to me.
18              MR. WOLFF:  Well, by numbers I can understand that.
19              THE COURT:  Because last month you were -- Last month
20   people were here and said well, we might want to amend to add a
21   party.  A party?
22              MR. DOLES:  I did.  Yes, your Honor.
23              THE COURT:  There wasn't any discussion about adding
24   eight or nine new allegations of breach of fiduciary duty.  It
25   does strike me that your new claims of breach of fiduciary duty
```

```
 1   involve different kinds of evidence than the original claims.
 2            MR. WOLFF:  It does involve additional evidence that
 3   arises from --
 4            THE COURT:  Well, also different kinds of evidence,
 5   though.
 6            MR. WOLFF:  -- the same circumstances.
 7            THE COURT:  It's one thing to say, you know, you
 8   didn't pay appropriately, you didn't do the right investigation
 9   to see that you were getting, you know, the right price for
10   services.  That's a very different allegation than to say that
11   you should not have invested in this type of vehicle or that
12   your cash position was too high.  That's a very different kind
13   of claim which would require a different kind of evidence
14   including different kinds of experts' testimony, wouldn't you
15   agree?
16            MR. WOLFF:  Well, we agree that there are
17   differences.
18            THE COURT:  And so you really think that if I granted
19   this that all of the discovery that would be necessary could be
20   done under the schedule that we have now?
21            MR. WOLFF:  It's unclear.  We have worked hard to try
22   to schedule things with that in mind.  The practical reality is
23   is that I don't know, but we are working diligently to do so
24   and Judge, I might point out, if I could speak to address that
25   briefly, is that the nature of the additional aspects of the
```

1  claims are things that we addressed in the motion and I would
2  point out that there was no response as to those claims with
3  respect to there being any unfair surprise or prejudice, and
4  that mainly is because the basis of those substantive claims
5  arose from the review of the documents which have only recently
6  been made available.
7         So yes, it is true it does change the nature of the
8  overall claim, and yes, there is additional evidence.
9         THE COURT: If I denied leave to amend, if I denied
10 leave to amend, would you be able to file this as a separate
11 complaint?
12        MR. WOLFF: I think that there could be some problems
13 with that.
14        THE COURT: Why is that?
15        MR. WOLFF: Because I think that another court could
16 look at this, a court could look at this and say that this
17 arises from the same core of operative facts and there should
18 be joinder for the purposes of judicial economy, the same
19 parties involved, some of the same evidence, although not all
20 the same evidence, and so I think that there could be some
21 concerns about that.
22        THE COURT: Well, that wouldn't be a subject matter
23 concern, would it? Are you saying that some judge might look
24 at it and say if someone files a motion to, you know, transfer
25 that that motion might be granted? Are you saying that

```
 1  somebody would dismiss it for lack of jurisdiction?
 2          MR. WOLFF:  I'm not saying as a jurisdictional issue.
 3   I --
 4          THE COURT:  Because one of the things that I'm, you
 5  know, concerned about is whether, in fact, there would be
 6  judicial economy from taking these together because, as I say,
 7  the way I view the allegations of breach of fiduciary duty,
 8  they are different types of conduct, significantly different
 9  kinds of conduct that would require different kinds of evidence
10  and different kinds of experts and I have some concerns that
11  putting this in now is going to substantially delay the case.
12  And that is a relevant consideration.  So --
13          MR. DOLES:  Your Honor --
14          THE COURT:  -- I guess what I'm wondering is if I
15  were to deny this, would you file a separate complaint?
16          MR. DOLES:  Your Honor, if I may, the problems that
17  that would present, to my mind, is not so much with the new
18  case; it would be with the case that is presently before your
19  Honor.  What we would likely have -- And defendants have not
20  opposed this position at all -- is at the end of the day Kraft
21  will point a finger basically at the empty chair, Altria, who
22  would be presumably if we filed a different case in another
23  courtroom, they, Altria, made these decisions at the end of the
24  day now.
25          THE COURT:  I want to be precise.  Made what
```

```
 1  decisions?
 2          MR. DOLES:  The decisions to enter into contracts
 3  with the service providers that your Honor was previously
 4  mentioning that your Honor believed is (inaudible) within the
 5  four corners of this complaint, excessive fees, but we also
 6  plead, your Honor, is that they breached their process of
 7  having a prudent process, which resulted --
 8          THE COURT:  Well, but that's an original --
 9          MR. DOLES:  Right.
10          THE COURT:  -- allegation, but that's why I was
11  asking you before about -- Because you've mixed two things
12  here.  You know, you've mixed two things.  You've mixed adding,
13  you know, you say eight groups.  I'm more simple minded; I just
14  count numbers and that's 21 different parties.  And you've
15  added eight or nine additional claims of breach of fiduciary
16  duty, of conduct that breached the duty.  And I don't know from
17  the way you've done this who you're saying is responsible for
18  what, whether if I said, for instance, if I said look, if there
19  are other parties who discovery has shown should be defendants
20  on the claims that you originally filed, who are they, without
21  regard to expanding the scope of the claims.  Would we have the
22  same list of 21?
23          You've mentioned one.  I don't know if that's one
24  person or that's one of the group of eight.  But you've
25  mentioned one.  What about all the others?
```

1  MR. DOLES: Well, your Honor, the reason for the
2  multiple additional individuals mainly is a matter of timing.
3  Throughout the course of the last six years, there has been
4  turnover in new entities being formed and them having the
5  responsibility --
6  THE COURT: Um-hum.
7  MR. DOLES: -- via delegation from Kraft to make
8  certain decisions, and then after that a new committee took
9  over from that and there was a new delegation.
10 THE COURT: Um-hum.
11 MR. DOLES: And then after that finally a Kraft
12 Benefit Investment Committee had the decisions, which also
13 delegated to Altria. Admittedly, your Honor, it is a
14 convoluted structure. There's no doubt about that.
15 But your Honor, I would like to address a question
16 that you had about, you know, expanding the scope of this
17 complaint. Your Honor, we alleged that there was a breach of
18 process that also ended up in excessive fees by contracting
19 entered into with service providers. Service providers, in
20 this complaint, obviously means record keepers --
21 THE COURT: Um-hum.
22 MR. DOLES: -- and investment management --
23 investment managers. Contracts were entered into with certain
24 investment managers that we believe incurred or charged
25 excessive fees through these investment options, so an

```
 1  imprudent investment policy --
 2          THE COURT:  Well, look, look, you're not going to sit
 3  there and tell me that in the way that the complaint was -- is
 4  pled as we sit here that your allegations included allegations
 5  about retaining imprudent investment options that under-
 6  performed and had poor returns.  You're not telling me that
 7  you're claiming that was embraced in your original claim of
 8  breach of fiduciary duty.
 9          MR. DOLES:  That's correct, your Honor.  That is a
10  result of their imprudent process that was -- that is in the
11  complaint.  But you are correct.
12          THE COURT:  So, you know, if on this complaint you at
13  a trial sought to offer evidence of imprudent investment
14  options, that would be irrelevant.
15          MR. WOLFF:  I think we disagree because it goes to
16  the underlying and the overarching claim which is that there's
17  a breach of fiduciary duty in managing this Fund.
18          THE COURT:  Yes, but you know, I guess I don't view a
19  claim of breach of fiduciary duty as being this open-ended
20  thing that allows you then to assert anything and everything
21  you might wish.  And I don't think you do either or else you
22  wouldn't have added or seek leave to add nine additional claims
23  of breach of fiduciary duty.
24          MR. WOLFF:  Right.  It is undoubtedly broad in scope
25  of responsibility and in the course of discovery to identify
```

```
 1   the specific nature and evidentiary foundation for the breaches
 2   is exactly what we're attempting to make more specific at this
 3   time now with the benefit of meaningful discovery and before
 4   discovery is closed, before experts have been named and before
 5   trial.
 6             THE COURT:  Let me ask on the defense side, you say
 7   that it's going to take another six to twelve months if this is
 8   added in?
 9             MR. MORRISON:  It's frankly a guess, your Honor.  We
10   don't know.  I mean you start at the beginning.  They want to
11   serve 21 defendants.
12             THE COURT:  Do you represent them?
13             MR. MORRISON:  Don't know yet.  We think one of them
14   is dead.  We think one of them is a Mexican national.  Many of
15   them are out of state.  For all we know it's going to take them
16   the full 120 days under Rule 4(n) to try and serve them.  We'll
17   end up getting people dismissed because they can't find them,
18   they can't, you know, can't effectuate service.
19             Then I have to assume that they're going to move to
20   dismiss and we mentioned this in our opposition, the futility
21   argument.  I mean fundamentally there is a problem under the
22   Supreme Court's Twombly (phonetic) decision with the way this
23   whole complaint has been pleaded from the beginning.  And that
24   was not something that the judge in the Southern District
25   addressed because the Twombly decision came out after the
```

```
 1   motion to dismiss had been filed.
 2           But I have to assume they will move to dismiss.  Some
 3   of them will move to dismiss presumably on statute of
 4   limitations grounds because, contrary to what counsel is
 5   representing, the Altria board committee was not involved
 6   within the last six years.  They stopped having any involvement
 7   with this Plan in 2001, which was seven years ago.
 8           So once you factor that in, presumably they're going
 9   to want to take the depositions of the plaintiffs.  We would
10   want to take the depositions of the plaintiffs again as to the
11   new allegations.  They may wish to take other discovery.  It's
12   almost impossible to know with injecting 21 defendants who may
13   show up to court with 21 different sets of lawyers, how long
14   this thing would take.
15           I think it's evident that it's not going to get done
16   in two-and-a-half months.  And that seems pretty clear.
17           THE COURT:  Well, let's assume that they, if I denied
18   this and they filed a separate complaint, how would you
19   envision that spinning out?
20           MR. MORRISON:  In terms of?  I mean I assume that the
21   process would be much the same.  It's likely there would be a
22   series of motions to dismiss, there would be issues concerning
23   service.  There would be discovery.
24           We don't even know where they would file it.  Maybe
25   they would file it in New York.  Maybe they would file it here.
```

```
 1   There might be -- I mean it's impossible to say what would
 2   happen with a separate complaint.  But I think that your Honor
 3   is correct that the issues that they're trying to raise are
 4   distinct.  The new claims are distinct and while there might be
 5   some overlap in discovery, there might be some way to
 6   accomplish efficiency, there's a lot of differences.
 7             Plus the, you know, counsel referred to the
 8   structure, fiduciary structure as being convoluted and I think
 9   that's not clear.  It's not true.  The structure is linear.
10   There were a series of changes over time and you have one
11   committee that's in charge of certain things now and another
12   committee that has certain other responsibilities now.
13             In March of last year Kraft spun off from Altria, so
14   going back from, you know, March of last year through 2004
15   there was a different structure.  Before 2004 there was another
16   structure and so on, and counsel are now trying to sweep in all
17   of this history going back for some un-fixed period of time as
18   to all of these different parties, and E.R.I.S.A. is quite
19   clear that after you cease to be a fiduciary you cannot be sued
20   for subsequent conduct.
21             So really what they're trying to do, I think, is to
22   try and grab all of these defendants and sue them for
23   everything that's happened in the last 10 years and I think
24   that that's fundamentally unfair to the proposed defendants and
25   frankly to the current defendants.
```

```
 1              THE COURT:  All right.  Now I have before me
 2   separately a fully-briefed and under-consideration motion for
 3   class certification.  From the plaintiffs' perspective does
 4   this proposed amendment have any effect on that motion?
 5              MR. WOLFF:  (Inaudible).
 6              MR. DOLES:  In all candor, your Honor, it might
 7   require just additional briefing to explain to the Court this
 8   -- what we respectfully disagree with the structure, the
 9   commonality and all of the requirements that we went through.
10   Whether or not class certification is appropriate will be the
11   same.  So it may be a supplemental few pages just to explain in
12   further detail the delegation, but the decisions were still the
13   decisions made that we are challenging so it's not something
14   that we believe is going to be significantly different at all.
15              THE COURT:  What about from the defendants'
16   perspective?
17              MR. MORRISON:  I think it would be significantly
18   different, your Honor.
19              THE COURT:  Gee, I'm shocked you don't agree.
20                                                      (Laughter.)
21              Why do you think it would be significantly different?
22              MR. MORRISON:  Well, first of all, we'd be adding in
23   a bunch of different parties and the question of commonality
24   and typicality ought to be addressed with respect to each
25   defendant, the claim against each defendant.  There wouldn't be
```

1  any commonality or typicality because you'd have potentially a
2  sub-class or an issue as to whether, you know, you had
3  everybody in the proposed class had common concerns about the
4  conduct of a certain committee during a certain window of time.
5   That's one issue.
6              Adding in claims about the prudence of certain
7  investment options raises another issue.  I mean there's --
8  depending -- whether or not that's a common issue across this
9  class of tens of thousands of participants depends on whether
10 or not those participants invested in those investment options
11 and whether they made money or lost money.
12             The imprudence claim is essentially, I think, look-
13 -- You know, plaintiffs will look at how those investment
14 options performed and compare them to some hypothetical
15 benchmark and say, you know, you should have gotten something
16 that matched this benchmark.  Well, whether or not a plaintiff
17 is harmed by that is going to depend on when that plaintiff
18 invested.  Some plaintiffs might have invested and actually
19 profited from these allegedly imprudent investment options;
20 other plaintiffs may have been harmed.  Others may not have
21 been affected at all.  Those are issues that will need to be
22 addressed.  They have not even been touched in the current
23 briefing, and frankly there would need to be additional
24 discovery for that.
25             THE COURT:  Well, let me ask more of a procedural

```
 1  question.  If I allowed an amendment adding 21 parties, should
 2  I even address class certification until they're all in and can
 3  be heard?
 4           MR. WOLFF:  I think that would be appropriate.
 5           THE COURT:  So we're going to have then plainly a
 6  delay for that process.
 7           MR. WOLFF:  On the class certification process?  You
 8  could.  Mr. Morrison is obviously in a better position, having
 9  a similarity of interests with his current clients and the
10  proposed new clients and he might better be able to speak to
11  that.
12           THE COURT:  Um-hum.  All right.
13           MR. DOLES:  Your Honor, if I just may respond
14  briefly?
15           THE COURT:  Yes.
16           MR. DOLES:  The focus in this type of case is on the
17  Plan.  I know the defendants always want to talk about the
18  individual participants and their (inaudible), but the case law
19  is very clear, the focus is on the Plan --
20           THE COURT:  Um-hum.
21           MR. DOLES:  -- and how the Plan has been harmed so we
22  don't think this adds a myriad of new issues.
23           THE COURT:  Well, you know though, it does.  I mean I
24  agree with you that, you know, the fundamental question is has
25  the Plan been harmed.  But you're now alleging a different
```

```
 1  specie of harm than you did before.  And whether that raises
 2  different issues in terms of the amenability to class
 3  treatment, you know, I certainly haven't considered.  It's not
 4  before me.  But there are different issues and so we'd have to
 5  look at that.
 6          All right.  Well, I think that this has been helpful
 7  in fleshing out some of the things that occurred to me in
 8  reading the papers.  I'll take this under advisement and I'll
 9  let you know when I'm prepared to rule.  It won't be long,
10  okay?
11          MR. WOLFF:  One question, your Honor, just about
12  timing.  We are about to enter into depositions.  I think the
13  first one is supposed to be on May 28th or 29th, I may be wrong
14  on the exact day.
15          THE COURT:  I'll rule before that.
16          MR. WOLFF:  Okay.
17          MR. DOLES:  We haven't taken a single deposition yet.
18   They've been scheduled after we got the documents but not one
19  has been taken yet.
20          THE COURT:  Okay.  I'll rule before then.  What I --
21  you know, I don't know in what form I'll rule.  I may issue a
22  written opinion.  I may call you in and just explain it on the
23  record.  So we'll give you a heads up and let you know which it
24  is.
25          MR. WOLFF:  Thank you, Judge.
```

1       THE COURT:  Okay?
2       MR. MORRISON:  Thank you, your Honor.
3       THE COURT:  Thanks a lot.
4              (Hearing adjourned.)

   I, RIKI SCHATELL, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____        June 10, 2008
Riki Schatell                               Date