```
                UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF ILLINOIS (Chicago)

GERALD GEORGE, et al.,        )
                              )
              Plaintiffs,     )
                              )     Docket No. 07-CV-1713
         v.                   )
                              )
KRAFT FOODS GLOBAL, Inc.,     )
et al.,                       )     Chicago, Illinois
                              )     May 23, 2008
              Defendants.     )


         DECISION ON PLAINTIFFS' MOTION TO AMEND
                       BY THE
        HONORABLE MAGISTRATE JUDGE SIDNEY I. SCHENKIER



APPEARANCES:

For Plaintiffs:          NELSON G. WOLFF
                         SCHLICHTER BOGARD & DENTON
                         100 South Fourth Street
                         Suite 900
                         St. Louis, MO  63102



For Defendants:          IAN H. MORRISON
                         SEYFARTH SHAW LLP
                         131 South Dearborn Street
                         Suite 2400
                         Chicago, IL  60603-5577


     PLEASE PROVIDE CORRECT VOICE IDENTIFICATION

Transcribed by:          Riki Schatell
                         6033 North Sheridan Road, 28-K
                         Chicago, Illinois  60660-3046
                         773/728-7281


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

1            THE CLERK:  07-C-1713, George vs. Kraft Foods.

2            THE COURT:  Good afternoon.

3            MALE VOICE:  Good afternoon, Judge.

4            MALE VOICE 1:  Good afternoon, your Honor.

5            THE COURT:  Do you suppose you should identify

6    yourselves for the record?

7            MR. WOLFF:  Yes, this is Nelson Wolff on behalf of

8    plaintiffs.

9            MR. MORRISON:  Ian Morrison for the defendants, your

10   Honor.

11           THE COURT:  All right.  I apologize for having to

12   call you over here on the Friday afternoon before the three-day

13   weekend but I couldn't get to this quicker or I would have.

14   But I know that there was some desire to have an expeditious

15   ruling on the motion to amend the complaint that the plaintiffs

16   have brought because you have some depositions coming up,

17   although I see some motion practice concerning at least one of

18   the depositions, but anyway, we do have a ruling.  I have some

19   extended remarks to make to explain the ruling, which is to

20   deny the motion for leave to amend.

21           Let me start by just giving a little background.  On

22   May 7th of this year the plaintiffs filed their motion to amend

23   the complaint, an amendment that would add 21 defendants to the

24   case to bring to the total number of defendants 28.  It would

25   add nine additional allegations of breach of fiduciary duty,

1   which are contained in Proposed Paragraphs 107-M through U, to

2   bring the total allegations of breach of fiduciary duty to 21.

3           The proposed amendment covers an extended time period

4   but there is no specification in the proposed amendment of

5   which of the 28 defendants are alleged to have engaged in which

6   of the 21 types of breach of fiduciary duty during what periods

7   of time.

8           I have reviewed the briefs that were submitted by the

9   parties as well as the many pages of exhibits that were filed

10  in connection with the briefs.  In explaining the reasons for

11  my ruling let me start by setting forth some of the relevant

12  legal principles which are pretty well settled.  Federal Rule

13  of Civil Procedure 15(a) governs amendments to pleadings such

14  as the one filed here.  Because defendant here has already

15  answered the complaint, the plaintiffs must obtain leave of

16  court to file the proposed amendment absent agreement of the

17  defendants, which plaintiff doesn't have.  So according to Rule

18  15(a), leave shall be freely given when justice so requires.

19  Where an amendment would not achieve justice but would instead

20  work an opposite effect, the Supreme Court has held that a

21  district court has discretion to deny leave to amend so long as

22  its discretion is exercised reasonably, citing Foman (phonetic)

23  vs. Davis, 371 U.S. 178 at 182, a 1962 decision.

24          Factors that may be considered in considering whether

25  to deny leave to amend include undue delay, bad faith or

1    dilatory motive by a movant, repeated failure to cure

2    deficiencies by amendments previously allowed, undue prejudice

3    to the opposing party by virtue of allowance of the amendment,

4    and futility of the amendment.

5           In this case I focus on the issues of undue delay and

6    unfair prejudice which I find warrant the denial of plaintiffs'

7    motion.  Specifically, I find that plaintiffs were aware of the

8    facts underlying the new allegations that they seek to add long

9    ago, in most instances before or shortly after the original

10   complaint was filed, and have presented no good reason for

11   failing to raise the claim earlier.

12          I further find that defendants would be unduly

13   prejudiced by the amendment because it would substantially

14   delay resolution of the original claims, dramatically increase

15   the cost and scope of the case and also the financial stakes

16   involved in the case.

17          And I also find that delay occasioned by allowing the

18   amendment would impair the public interest in the prompt

19   resolution of disputes and would, at best, be dubious in

20   creating any judicial economies.

21          Now let me begin my discussion with the factor of

22   undue delay.  Undue delay, of course, by itself does not

23   constitute a sufficient basis to deny a motion to amend.  The

24   Seventh Circuit has so held in many cases including Feldman vs.

25   Allegheny International, Inc., 850 F.2d 1217 at 1225, a 1988

1    decision.  That said, the Seventh Circuit also has recognized

2    that the longer the delay the greater the presumption against

3    granting leave to amend.  That was a statement made by the

4    Seventh Circuit in Tamari vs. Bache, B-a-c-h-e & Co. S.A.L.,

5    838 F.2nd 904 at 909, 1988 decision.

6         Here there is evidence that the proposed amendments

7    could have been brought either at the outset of the case,

8    either before the original complaint was filed in October of

9    2006, or shortly thereafter, and certainly far earlier than the

10   filing date of the motion for leave to amend here, which was

11   May 7th, 2008.

12        At the threshold I note that plaintiffs' proposed

13   amendment did not add any new allegations to the general

14   allegations that support the original claims of breach of

15   fiduciary duty.  The amended complaint has a section that

16   defines the parties and explains the parties, has a number of

17   general allegations and then there are claims of breach which

18   incorporate those earlier allegations.

19        With respect to the general allegations that set the

20   stage for the claims of breach, there are no material additions

21   to what was in the original complaint, a factor that, while not

22   dispositive, does create some suggestion that the newly-added

23   claims which drive off the same general allegations are based

24   on evidence that the plaintiffs knew of, had access to or

25   should have known of at the time the original complaint was

1  filed.

2           Now in their response, the defendants have catalogued

3  evidence indicating that the plaintiffs had knowledge, in fact,

4  that would sufficient to allege the claims in the proposed

5  amendments that they now have filed, and to do so at a much

6  earlier date.  That evidence is discussed in defendants'

7  opposition to the motion at pages 3 through 6.  Let me

8  summarize some of that evidence.

9           One of the new proposed defendants is Kraft Foods

10  Global, Inc. Management Committee of Employee Benefits, which

11  I'll refer to in short as MCEB.  At the relevant times, MCEB

12  has been the administrator of the Plan at issue for non-

13  investment operational details of the Plan, and Jill Youman,

14  Y-o-u-m-a-n, has been the Secretary of MCEB.

15           Plaintiffs knew of MCEB's role and status before the

16  suit was filed in October of 2006.  The summary Plan

17  descriptions in plaintiffs' possession specifically identified

18  MCEB as such.  A month after suit, in November, 2006, Jill

19  Youman submitted an affidavit that also related this informa-

20  tion and in deposition she gave January 27th, 2007, she

21  reiterated this information.

22           Another new party that plaintiffs seek to add is

23  Kraft Foods Benefits Department, which I'll refer to as BIC.

24  In her November, 2006 affidavit Ms. Youman identified her roles

25  not only with MCEB but as well as BIC and stated that BIC had

1    been delegated day-to-day administrative duties for the Plan.

2    That's set forth in Exhibit F and Exhibit G to defendants'

3    opposition.

4         Another party whom plaintiffs seek to add is the

5    Compensation and Governance Committee of Kraft Foods, Inc.

6    Board of Directors, who I'll refer to as the CGC.  The evidence

7    satisfies me that plaintiffs knew prior to suit or at least

8    shortly after suit that this CGC oversees and elects the

9    investment funds offered by the Plan, and I cite to Exhibits B

10   and C in defendants' opposition.

11        The Master Trust Agreement produced to the plaintiff

12   Swanson prior to suit identified CGC as a fiduciary charged

13   with control and management of the investment of the Fund and

14   the entity responsible for appointing investment managers,

15   trustees and monitoring investment performance.  That's also in

16   Exhibits B and C as well as Exhibit I to defendants'

17   opposition.

18        Now prior to CGC's assumption of those duties,

19   another newly-proposed defendant, Corporate Employee Plans

20   Investment Committee of the Board of Directors of Altria Group,

21   Inc., CEPIC for short, served in that role.  There is evidence

22   that plaintiffs were aware of this prior to filing suit because

23   they had possession of the summary plan descriptions prior to

24   suit, and a master trust agreement produced after suit but 10

25   months ago further identified CEPIC as the investment committee

1   responsible for the appointment of investment managers,

2   trustees and for monitoring investment performance.

3          Three other proposed defendants were also identified

4   and their roles known soon after suit was filed, Altria

5   Corporate Services, Inc., which I'll refer to as ACS, Benefits

6   Investment Group of Altria Corporate Services, Inc., I'll refer

7   to that as BIG-Altria, and Mike Warner, an employee of ACS.

8          For example, Ms. Youman's November 2006 affidavit

9   identified BIG-Altria as an entity that was delegated certain

10  functions including authority to hire investment managers and

11  trustees overseeing Plan investments.

12         In January 2007 Mr. Warner was deposed and he

13  testified that BIG-Altria made the decisions as to how much

14  cash to maintain in stock funds at any given time and that ACS

15  operated to insure that trustees complied with terms of the

16  Master Trust Agreement, selected investment managers, made

17  recommendations to name fiduciaries, monitored investment

18  managers and performed audits on Trust assets.  That testimony

19  is collected at Exhibit K to defendants' opposition.

20         Now there are a number of other individuals who have

21  been proposed as new additional defendants.  All of them are

22  sued as a result of capacities in which they served other

23  entities plaintiffs seek to add, and whom we have just found

24  plaintiffs knew or should have known about long ago.  For

25  example, Farrell, Polk, Shapiro & Wright are sued as directors

1   of CGC.  That's in proposed Paragraph 14 of the amended

2   complaint; Nichols, Halew, Reid, Evans, Brown and Camelari are

3   sued as members of the CEPIC.  That's in proposed Paragraph 20

4   and Olson as a director of BIC.  That's in Paragraph 18.

5           Since I have found that the plaintiffs knew enough

6   about those entities to have sought to add them earlier if they

7   wished, the same is true for those whom plaintiffs seek to add

8   as individual defendants but because of their roles with those

9   entities.

10          Now in reaching these findings, I have considered

11  plaintiffs' argument that they only recently received

12  production of unredacted copies of certain documents that were

13  earlier produced from the defendants.  But based on the

14  evidence that I have recited above, that discovery that

15  plaintiffs more recently received was not necessary to put them

16  on notice that these newly-proposed defendants or claims

17  existed.  I am satisfied that plaintiffs had that information

18  and evidence sufficient to make the claims and to name these

19  defendants long ago.

20          Now I've been discussing this all under the rubric of

21  undue delay and I've discussed it by considering chronological

22  time, that is, when on the calendar the motion to amend was

23  filed relative to the original complaint and when certain

24  things were known or not known.  But I think another

25  consideration is to view the question of undue delay in

1   connection with the posture of the case when the proposed

2   amendment is filed, which you could refer to as litigation

3   time.   In my judgment litigation time relates to the stage of

4   the case.   It embraces the work that has been completed in the

5   case, the planning that has occurred prior to the proposed

6   amendment, and the deadlines and direction of the case.

7          And viewed in that way, the idea of litigation time

8   really kind of overlaps with the concept of prejudice and so

9   when determining whether there has been undue delay and

10  prejudice resulting from it, I think we look both at

11  chronological time and litigation time and not either one in

12  the abstract.

13         Now with respect to the litigation time component,

14  plaintiffs' proposed amendment, in my judgment, also suffers

15  from undue delay.   Now I recognize that you can find lots of

16  cases that would satisfy you that a period of time of 19 or 20

17  months from October of 2006, the filing of the complaint here,

18  to the present, May of 2008, is not the most egregious example

19  of delay in filing a claim.   And it is also true that we do not

20  have a trial date that's set in this case.

21         That said, I think all would agree that quite a lot

22  has taken place in this case in the last 19 or 20 months and is

23  scheduled to take place over the next several months that will

24  put this case in a posture to be ready for resolution on the

25  merits certainly by the very beginning of next year.   We have a

1   schedule in place where the non-retained expert discovery is to

2   be completed in July, the expert discovery then sometime in

3   October and I'll discuss the specific dates in a moment.  That

4   will put the case in a posture that it can be resolved, if

5   possible, on summary judgment or if not, on trial.

6           Granting the motion for leave to amend, in my

7   judgment, would dramatically expand the scope of the case in

8   terms of the number of parties, the number and the substance of

9   the claims that alleged breach of fiduciary duty, the need for

10  discovery and the costs and the economic stakes of the

11  litigation.  All of these things render it a certainty that an

12  amendment, if allowed, would completely undo the schedule that

13  has been set which is parenthetically set after extensions of

14  our prior schedules that had been set.  And it would delay

15  resolution of the case for an extended period of time.  And so,

16  for this reason, in terms of litigation time, plaintiffs'

17  motion comes late in the case.

18          Now I turn to the issue of undue prejudice, which is

19  the most important factor in determining whether to allow an

20  amendment to a complaint, and for that I cite In re: Ameritech,

21  188 Fed. Rules Decision 280 at 283, a Northern District of

22  Illinois case from 1999, which in turn cited Zenith Radio

23  Corporation v. Hazentine Research, Inc., 401 U.S. 321 at 330, a

24  1971 decision.

25          Undue prejudice can occur both by the timing of an

1    amendment, citing that Chaveriat, that's C-h-a-v-e-r-i-a-t, vs.

2    Williams Pipeline Company, 11 F.3d 1420 at 1430, a Seventh

3    Circuit decision from 1993, and when the amendment brings

4    entirely new and separate claims, adds new parties or at least

5    entails more than an alternative claim or a change in the

6    allegations of the complaint.  A. Czerny Disposal Company vs.

7    Chicago & Suburban Refuse Disposal Corp., 68 F.Rules Decision

8    383 at 385, a Northern District of Illinois decision of 1975.

9          Undue prejudice also may be found when additional

10   discovery necessary to add new claims and defendants would be

11   expensive and time-consuming.  The A. Czerny case stands for

12   that proposition, as does the In re:  Ameritech case, 188 Frd.

13   at 283.

14         I find that adding the 21 new proposed parties here

15   and nine new allegations of breach of fiduciary duty at this

16   stage of the case will cause undue prejudice in several

17   regards.  Let me discuss first class certification.  After a

18   lengthy period of preparing for class certification the parties

19   have fully briefed a motion for class certification, a motion

20   that the Court is prepared to rule on in the next two to three

21   weeks.

22         As the parties acknowledged during a hearing last

23   week, allowing an amendment would, without question, disrupt

24   the schedule for determining class certification.  There may

25   have been among the parties some disagreement about the extent

1    of that disruption, but I think the disruption would be

2    significant in several respects.  First, I don't think we could

3    do anything further on class certification until the new

4    parties were served and had appeared in the case.

5           Second is once they appeared in the case it may be

6    that various of the new parties would wish to engage in motion

7    practice directed to the adequacy of the complaint or other

8    issues relating to the claims against them.  There would be a

9    question presented about whether I ought to address class

10   certification while that is pending.

11          At some point, whether then or after it was decided

12   if some or all of those newly-added parties should remain in

13   the case, I would have to give them an opportunity to express

14   their views as to class certification, and it may be that those

15   views would be addressed simply by filing briefs.  It may be

16   that they would assert a need to do certain other discovery

17   based on their theories of class certification.  And I would

18   not, at this point, certainly presume to decide whether that

19   would be correct or not, but I would simply point that out to

20   indicate that however those issues sorted themselves out, it is

21   clear when you look at those chain of events, that delay in

22   deciding class certification that would result from adding new

23   parties would be significant.

24          Then there's the issue of the amendment as for its

25   effect on the time it would take to complete discovery in the

1   case.  The schedule now is for non-retained expert discovery to

2   close as of July 31st and expert discovery to be completed by

3   October 17th of 2008.  Once that occurs this case, as it is

4   presently constituted, will be in a posture to be addressed on

5   the merits and I would say by early next year at the latest.

6          Adding 21 new defendants and nine new substantive

7   allegations will completely thwart that schedule, which I again

8   want to add is not the first schedule that we have set in the

9   case.  It is an extension, and in fact, it is the third

10  schedule that we have set in this case.  The first schedule was

11  to have discovery completed, including experts, by June 15th.

12  I amended that in February of this year to provide for the

13  completion of all discovery including experts by August 15th

14  and then further amended the schedule just a month ago on April

15  17th to the dates that I now indicated.

16          The ways in which the proposed amendment will

17  undermine this schedule are numerous.  First, we have the need

18  to get all 21 newly-proposed defendants rounded up, served,

19  appearing, and then next we have to deal with whatever issues

20  they may wish to raise either through present defense counsel

21  or maybe through other counsel.

22          I have no idea what the representation will be, but

23  with 21 new defendants including separate entities, it well may

24  be that we're going to have the appearance of different

25  attorneys who may have different views about things in the

1    case, but certainly at the first instance would have the right

2    to raise issues directed at the pleadings, and would certainly

3    be within their rights to seek an opportunity to get up to

4    speed in the case as it even currently exists, with respect to

5    the documents that have been produced in this case which have

6    been represented to be in the tens of thousands.

7            Then, when the new defendants appear, to the extent

8    that they file motions directed at the pleadings, briefing and

9    resolution of those will take time.  And it may be that that

10   would take us well into the fall or toward the end of the year

11   depending on how long it takes to serve people, to get them

12   into the case appearing, and to give them an opportunity to get

13   up to speed not only on the allegations that are newly added

14   but the underlying allegations that already exist because this

15   complaint does not identify, as I said at the beginning, which

16   defendants are being sued on which allegations of breach of

17   fiduciary duty.

18           Now once all of that gets resolved and we are able to

19   proceed with merits discovery, we will have to contend with not

20   only 21 new defendants and their attorneys, however many they

21   may be, but also with nine newly-added claims of breach of

22   fiduciary duty, most of which inject into the case an entirely

23   new theory of breach of fiduciary duty.  The existing claims of

24   breach of fiduciary duty all, in my judgment, attack in various

25   ways the issue of fees and expenses paid to service providers

1   and allege failures and shortcoming on the part of the

2   defendants in the amount that was paid, what they did to

3   determine whether that was an appropriate amount, controls to

4   check on whether it was an appropriate amount, disclosures made

5   to participants on those subjects.

6          The additional claims, by contrast, involve attacks

7   not on the utilization of service providers but on the

8   substantive investment choices made with the assets of the

9   Plan.  Questions of whether there were appropriate investment

10  vehicles used, whether there should have been holdings in

11  investment X versus investment Y.  Whether there should have

12  been cash position A or cash position B.

13         I don't think there's any dispute that the new

14  proposed amendments go down that road.  And that kind of claim

15  is materially different than a claim of improprieties in using

16  service providers and the fees paid to service providers and

17  disclosure of that information.

18         Now the difference, the substantive difference in the

19  breach of fiduciary duty claims as they now exist and those

20  that would seek to be added lead to the conclusion that there

21  will be different discovery that would need to be done to

22  address the new claims:  Different depositions, or additional

23  depositions; additional experts.  And even if you had the same

24  experts there's going to be a different scope of expert reports

25  and different length of time needed to address those matters.

1          So in my view, when you look at the expanded scope

2    that is sought in this case, I think discovery definitely will

3    not be completed under the schedule that is set as plaintiffs

4    suggest it could be done.  It would not be done by the end of

5    this year.  And I have serious question whether it would be

6    done by the end of next year.  And that delay will carry with

7    it also an increased cost in litigating the case.  I think that

8    there's no question about that.

9          Now that delay, in my judgment, causes undue

10   prejudice to the defendants who, from the beginning of this

11   case, have sought resolution at the earliest possible date.

12   Rule 15(a) does authorize denial of an amendment if it's going

13   to delay the resolution of the underlying case that existed

14   before, and that would certainly be the case there.

15         In addition, the proposed amendment in this case

16   creates another kind of prejudice beyond delay.  This proposed

17   amendment would expand not only the scope and cost of the

18   lawsuit but also of the monetary stakes of the lawsuit.  Now

19   the plaintiffs, when we discussed this last week, I think,

20   agreed with that point in general terms although the plaintiffs

21   were reluctant or unable at this point to put a precise number

22   on what the claim for recovery would be in the case as

23   presently constituted versus the claim for recovery in the

24   expanded case sought by the amended complaint.

25         But I think it was certainly conceded that there

1    would be a significant difference.  And I think that that's, in

2    my judgment, obvious if you're talking about a comparison

3    between a claim that seeks to restore to the Plan excessive

4    fees paid to service providers as opposed to a claim that puts

5    at issue the entire investment strategy of a plan.

6          Now when a proposed amendment will dramatically

7    increase exposure faced by defendant, that increased risk can

8    be the basis of a finding of undue prejudice that can warrant

9    denial of leave to amend.  One case I cite for that is The

10   Matter of Stavriotis, S-t-a-v-r-i-o-t-i-s, 977 F.2d 1202 at

11   1205, a Seventh Circuit decision from 1992.

12         Parties in a lawsuit make various business decisions

13   and strategy decisions such as how much money they're going to

14   spend on litigation, whether to consider settlement, at what

15   point and on what terms, and that's based on the case that is

16   presented and the case that is worked up to the litigation.  An

17   amendment that dramatically ups the ante of the lawsuit nearly

18   20 months after filing and with the discovery deadline in sight

19   unfairly and prejudicially can upset those judgments.  And

20   whereas here that happens when the plaintiffs knew enough to

21   file claims earlier, a court has the discretion to keep that

22   result from happening.

23         Now I want to emphasize a point that I made earlier,

24   and that is that the proposed amendment here, in my judgment,

25   would not merely expand the existing case but would

1   dramatically change its character by, in substance, in grafting

2   onto this case an entirely new one with different parties and

3   different claims requiring different proofs and presenting

4   different stakes, and the case law does indicate that a court

5   is well within its discretion to deny an amendment that would

6   so fundamentally change the case well after the initial filing.

7          A couple of cases I cite for that are Stiller vs.

8   Colangelo, 221 Frd. 316 at 317, a District Court of Connecticut

9   decision from 2004, which denied leave to amend a complaint to

10  add additional claims when the proposed new claims were

11  different in character and purpose from those articulated in

12  the initial complaint, and alleged new facts that would require

13  additional discovery.  I would also cite Izaak, that's

14  I-z-a-a-k Walton League of America vs. St. Clair, 497 F.2d 849,

15  an Eighth Circuit decision from 1974 that affirmed a denial of

16  leave to amend when the motion was filed 17 months after the

17  original pleading and the amendment injected new issues

18  requiring extensive preparation and voluminous amounts of trial

19  time.

20         I move to one final point.  When determining whether

21  there is enough prejudice to justify denial of an amendment,

22  the court balances the respective interests of the parties.  I

23  cite the In re:  Ameritech case I cited before, 188 Federal

24  Rules decision at 283.  That kind of balancing looks at the

25  hardship to the moving party if leave to amend is denied, the

1    reasons for the moving party failing to include the material to

2    be added in the original pleading and the injustice resulting

3    to the party opposing the motion should it be granted.  And I

4    cite for that Volume 6 of Wright, Miller & Kane, Federal

5    Practice and Procedures, Section 1487 at pages 621 through 623.

6            In this case, looking at those considerations, denial

7    of leave to amend would not prejudice plaintiffs' ability to

8    pursue these new claims against these new parties in a separate

9    action if they choose to do so.  On the other hand, adding the

10   claims and the parties at this date would substantially delay

11   the progress and ultimate resolution of the case and greatly

12   increase its costs and stakes, a matter which, as I found

13   before, would create undue prejudice to the defendants.

14           In terms of the reason for the moving parties'

15   failure to include the material in the original pleading or to

16   amend far earlier than they did, I've already explained that I

17   don't find the reason for that.

18           And finally, I would point out that delay can create

19   prejudice not just for a party but for the public as well which

20   pays for the court system because delay tends to defeat the

21   public's interest in speedy resolution of legal disputes,

22   citing Fort Howard Paper Company vs. Standard Havens, Inc., 901

23   F.2d 1373 at 1379, a Seventh Circuit decision from 1990.

24           I also note that burden on the judicial system can

25   justify a denial of the motion to amend even if the amendment

1    would cause no hardship at all to the opposing party.  The

2    Seventh Circuit made that observation in Perian, P-e-r-i-a-n v.

3    Grady, 958 F.2d 192 at 195, a 1992 decision, and in this case,

4    given the claims that plaintiffs seek to add are materially

5    different than the ones currently pled, for the reasons I've

6    stated before I think the economies to be achieved by

7    litigating them in this case together with the other claims are

8    somewhat dubious and the burdens that would be imposed and the

9    delay that would be caused are evident.

10            And so on these facts I think that the balance of

11   prejudice favors denial of the amendment and so for the reasons

12   I have described, I do deny the motion for leave to amend.

13            Now I do have the motion that was filed by Kraft for

14   a protective order in connection with the 30.(b)(6) deposition.

15    I think that that was noticed up for Tuesday?

16            MR. MORRISON:  That's correct, your Honor.

17            THE COURT:  How would the plaintiff like to proceed

18   on that?  Do you want to be -- Maybe it's an oxymoron to say be

19   heard in writing?  Do you want an opportunity to respond in

20   writing?

21            MR. WOLFF:  We'd like to, your Honor, and actually

22   Mr. Morrison and I discussed this yesterday and I explained to

23   him that we would like to have some time to do so, that this

24   was not a good time to address it.

25            THE COURT:  I wasn't planning to do it today.  Or

1    Tuesday, really.

2              MR. MORRISON:  Your Honor, to clarify matters we

3    talked last night and agreed that maybe we could re-notice the

4    motion for Thursday of next week.  I don't know if that's still

5    sufficient time in which to allow them to file a response and

6    we can certainly appear then.

7              THE COURT:  Or to give me a chance to read it.

8              MR. WOLFF:  Your Honor, that's fine.  Obviously we'd

9    like to have enough time to go ahead and write something.  We

10   were going to -- We had talked last night about talking after

11   this, depending on what the -- (inaudible, multiple voices) --

12             THE COURT:  Sure.

13             MR. WOLFF:  -- was and then setting it for a

14   different date so we had already agreed that he was going to

15   pull it off for Tuesday -- (inaudible, multiple voices) --

16             THE COURT:  Okay.

17             MR. WOLFF:  -- and we'd come up with another date.

18   If that could be Thursday, great.  If not, then we'll find

19   something else soon.

20             THE COURT:  Merv, what do I have on my calendar

21   Monday the 2nd?  I have a settlement conference, I know,

22   sometime that day.

23             THE CLERK:  You have a settlement conference at nine.

24             THE COURT:  In terms of -- Is that a bad day?

25             MR. MORRISON:  It's a bad day for me and I can't

1   speak at the moment for Mr. Kramer, who might be able to cover

2   it if I can't, but I know I will be out of town that day.

3           THE COURT:  Tuesday?

4           MR. MORRISON:  Tuesday.

5           MR. WOLFF:  I'll have to reschedule a medical

6   appointment -- (inaudible, multiple voices).

7           THE COURT:  But we'll -- We could do it --

8           MR. WOLFF:  Wednesday?

9           THE COURT:  That Wednesday?  Okay.  You want to do

10  that?

11          MR. MORRISON:  Wednesday is fine, your Honor.

12          THE COURT:  Does that work for plaintiff?

13          MR. WOLFF:  You know, it does.  We've got a second

14  part of that deposition that's tentatively scheduled for that

15  Friday but I had talked with Ian about getting another date

16  since that person who is being designated is also going to be

17  produced at some point in her individual capacity, so we could

18  probably move that one as well.

19          THE COURT:  Okay.  Well, if we set this for hearing

20  and ruling on Wednesday, the 4th, would it work for you then to

21  file anything you wanted in writing by Friday, the 30th?

22          MR. WOLFF:  Sure.

23          THE COURT:  Okay.  Why don't we do that then?

24          MR. MORRISON:  And, your Honor, do you need us to

25  file a revised notice of motion?

1          THE COURT:  No.  No, we'll just enter an order that

2     says that the motion is re-set for hearing on the 4th.

3          (Addressing the Clerk:)  Do we have much on status

4     that day?

5          THE CLERK:  (Inaudible.)

6          THE COURT:  The 4th.

7          THE CLERK:  (Inaudible).

8          THE COURT:  All right, why don't we set you at 9:00

9     on the 4th?  Is that okay?                    (Pause.)

10         MR. WOLFF:  That's fine.

11         THE COURT:  Okay.  Great.               (Pause.)

12         Let me make one observation in terms of briefs.

13    Another oxymoron.  You all write very well and your briefs are

14    very easy to read.  But I think it would be more constructive

15    -- I'm telling you this for me.  I'm not telling you what to do

16    with any other judge.  I can tell you that I don't need to have

17    citations to authority for the proposition that the scope of

18    discovery is not unlimited.

19         MR. WOLFF:  Is not what, your Honor?

20         THE COURT:  Is not unlimited.  I am familiar with

21    what I have written in Litigation Magazine so, you know, I

22    don't need block quotes about what I write in Litigation

23    Magazine.  I think that it's more constructive to focus not

24    only giving what is generally boilerplate authority but

25    authority to the extent it really pertains to the specific

1    issue that is being called out.  At least I find that more

2    helpful.

3              MR. MORRISON:  Understood, your Honor.

4              THE COURT:  Okay.  And maybe that will make them

5    briefer.

6              MR. WOLFF:  That will make it shorter, more brief.

7              THE COURT:  All right.  Thank you very much, and

8    again I apologize for doing this the Friday before a three-day

9    weekend.  As you go down, you probably won't see many people

10   around the building.

11             MR. WOLFF:  I didn't on the way up.

12             THE COURT:  Right.  Thanks a lot.  Have a good

13   holiday.

14                      (Hearing adjourned.)



        I, RIKI SCHATELL, certify that the foregoing is a

     correct transcript from the record of proceedings in the

     above-entitled matter.


     _____          June 10, 2008
     Riki Schatell                                Date