

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GERALD GEORGE, *et al.*,              )
                                      )
        Plaintiffs,                   )
                                      )        No. 07 C 1713
vs.                                   )
                                      )        Magistrate Judge Schenkier
KRAFT FOODS GLOBAL, INC., *et al.*,   )
                                      )
        Defendants.                   )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, individually and as representatives of a putative class, have filed this action alleging violations of the Employment Retirement Income Security Act of 1974, ("ERISA") 29 U.S.C. § 1001 *et seq.* Plaintiffs now seek class certification, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(1)-(3) (doc. # 81). For the reasons discussed below, the plaintiffs' motion for class certification is granted and a class certified under Rule 23(b)(1) and (b)(2); plaintiffs' motion for certification pursuant to Rule (b)(3) is denied.[1]

### I.

We begin with a review of the pleadings and the evidence developed by the parties during discovery. In so doing, we "look[] beneath the surface of [the] complaint to conduct the inquiries identified in" Rule 23(a) and (b) "and exercise the discretion" that Rule 23 confers upon the Court. *Szabo v. Bridgeport Machines Inc.*, 249 F.3d 672, 677 (7th Cir. 2001). However, in no way does the Court decide fact questions here or resolve the merits; we simply assess the allegations and evidence for purposes of determining if certification is warranted.

---

[1]On May 30, 2007, by consent of all parties and pursuant to 28 U.S.C. § 636(c), the Executive Committee reassigned this case to this Court for all proceedings, including entry of final judgment (doc. ## 12, 15).

**A.**

The plaintiffs in this action are Gerald George, Cathy Dunn, Jeanette Burghy, Timothy Streff, and Andrew Swanson. Plaintiffs pursue this action on behalf of the Kraft Foods Global Inc. Thrift Plan, Plan No. 125 (the "Plan") and similarly situated participants and beneficiaries of the Plan.

Defendant Kraft Foods Global, Inc. ("KFGI" or "Kraft"), formerly known as Kraft Foods North America, Inc., KFGI is the sponsor of the Plan (Compl. ¶ 17). Defendant Kraft Foods Global, Inc. Administrative Committee ("Administrative Committee") is a Plan administrator; the Administrative Committee has been delegated the authority and discretion to control the operation and administration of the Plan (Compl. ¶ 18). Defendant Kraft Foods Global, Inc. Benefits Investment Committee ("BIC") is responsible for oversight of certain investment aspects of the Plan; it is a named fiduciary of the Plan within the meaning of Section 409 ERISA, 29 U.S.C. § 1102 (Answer ¶ 19).

Plaintiffs also have named individual members of the BIC as defendants: (1) Jim Dollive, the Executive Vice President and Chief Financial Officer; (2) Karen May, the Executive Vice President, Global Human Resources; (3) Marc Firestone, the Executive Vice President, Corporate and Legal Affairs and General Counsel, a newly created position believed to be the successor position to the duties of the position known as "Executive Vice President, General Counsel and Corporate Secretary"; and (4) Pamela King, the current occupant of the position of Senior Vice President and Controller (Compl. ¶ 20). All defendants have stipulated that they owe identical fiduciary duties to all members of the purported class (Pls.' Ex. I ¶ 3).

**B.**

As part of the compensation and benefits package, KFGI offers employees the chance to participate in the Plan, which is a defined contribution plan under ERISA. *See* 29 U.S.C. § 1002(34). The Plan contains an employee stock ownership provision which qualifies for special tax treatment and is known as a "401(k) plan" (Compl. ¶ 27). A "plan document" established the Plan and controls its operation (Compl. ¶ 29). The assets of the Plan are held in a single trust fund known as the Kraft Foods Global[,] Inc. Master Defined Contribution Trust (the "Master Trust") (Compl. ¶ 29).

Plan assets are made up of individual participants' contributions and matching contributions by Kraft (Compl. ¶¶ 32-33). Participants may invest in various investment options that defendants select for the Plan (Compl. ¶ 34). The investment options include: the Euro Equity Fund, the International Equity Fund, the U.S. Mid Cap/Small Cap Fund, the U.S. Large Equity Index Fund, the Balanced Fund, the U.S. Government Obligations Fund, and the Interest Income Fund (Compl., ¶ 35). The Plan also offers participants the option of investing in one of two single-stock funds. The Altria Stock Fund is a fund that holds common stock of Altria Group, Inc., the parent corporation of KFGI. This Altria Stock Fund formerly held the common stock of Philip Morris, Inc., Altria's predecessor. The Kraft Foods Stock Fund holds KFGI's common stock (Compl. ¶ 36).

Prior to and including March 29, 2007, the Altria Stock Fund and Kraft Stock Fund provided Plan participants with the opportunity to invest a portion of their Plan accounts in the company for which they work or in Altria Group, Inc., the parent corporation of Kraft Foods Global, Inc. (Answer ¶ 61). The Altria Stock Fund and Kraft Foods Stock Fund have an interest generating short-term

3

reserve account as permitted by the Plan. The participants who elect to participate in these funds pay certain expenses associated with the fund from their account (Answer ¶ 73).

Kraft uses the Master Trust to provide investment and administrative services to several of its 401(k) plans (Compl. ¶¶ 30, 31). In this case, plaintiffs allege that the Master Trust gives common access to the same investment options and services for all the Kraft 401(k) plans (Compl. ¶ 31). Defendants, either directly or indirectly through the Master Trust, have caused the Plan to purchase services from various plan service providers, including trustee, record-keeping, administration, investment advisory, investment management, brokerage, consulting, accounting, legal, printing, and mailing services (Compl. ¶ 54). This means that recordkeepers, investment managers, consultants, and other service providers are shared. The fees incurred for such services are "allocated between the plans based upon each Plan's proportionate share of the assets in the Master Trust" (Compl. ¶ 31). The investments in the Plan constitute 91 percent of its assets held by the Master Trust (*Id.*).

Participants in the Plan who invest in either the Altria Stock Fund or the Kraft Foods Stock Fund do not own shares of Altria or Kraft Foods stock directly. They own units of the respective stock funds (Compl. ¶ 74), which represent a fraction of the funds' assets (Answer ¶ 82). Each unit represents a portion of the shares of Altria or Kraft Foods stock in the fund (Compl. ¶ 75). Fees are charged against the participants' stock funds (Answer ¶ 76). Thus, fees are charged against the funds and not the participants' individual interests in each fund. However, "the value of a participant's account invested in the Altria Stock Fund will be reduced by fees and expenses" (Answer ¶ 84). Whatever investment option participants in the Plan select, certain fees and expenses incurred in

4

administering the Plan and investing its assets are paid from the Plan's assets, whether from the Master Trust or directly from the Plan (Compl. ¶ 37).

The Plan fiduciaries regularly disclose certain information to all Plan participants and beneficiaries. On an annual basis, the Plan discloses to Plan participants (as well as federal regulators) the amount it pays in dollars to Plan service providers. In addition, the Plan maintains a website (http://resources.hewitt.com/Kraft) which contains Fund Fact Sheets ("FFS") for each investment option offered by the Plan to its participants. The FFSs, which are updated quarterly, state the amount that is charged for administration of each fund (the annual operating expenses) as a percentage of assets (known as the expense ratio) (Defs.' Mem. at 3).

The Plan also mails quarterly account statements, including "Quarterly Updates" to each participant. *See, e.g.,* Defs.' Tab J (also denoted Ex. 11) (hereinafter "Defs.' Tab J") (Streff Dep. 82; Swanson Dep. 61-62; Dunn Dep. 55-56). The Quarterly Updates for January 2005 and January 2006 (which predate the filing of this lawsuit) include a matrix entitled "Administrative and Investment Fees," which discloses to participants that their accounts are charged administrative and investment fees, specifies the fees for each investment option, and compares those fees to fees charged by other service providers for comparable non-Plan investments. *See* Defs.' Tab J.

The Quarterly Updates disclose that:

> Nearly all of the expenses paid to third parties for administering the Kraft Thrift Plan and investing the plan's assets, such as investment management fees, trustee fees, brokerage commissions, participant recordkeeping, financial advice, and legal fees, are paid from the Plan's assets. Any remaining plan expenses are paid by Kraft Foods. Plan fees have always been reported on the quarterly fund fact sheets, for any or all of the funds, by logging on to the Kraft Foods Thrift Plan website.

Defs.' Tab J (Quarterly Updates); Thrift Plan SPD 01/19/06, at 17).

5

## C.

In this action, plaintiffs seek to recover alleged losses suffered by the Plan on a plan wide basis and to obtain injunctive and other equitable relief based upon alleged breaches of the defendants' fiduciary duties (Compl. ¶ 10). The alleged losses sought by the plaintiffs include the fees and expenses paid by the Plan that were allegedly unreasonable and excessive; not incurred solely for the benefit of the Plan and its participants; and undisclosed to participants. Plaintiffs allege that, by these actions, defendants violated their fiduciary obligations under ERISA (Compl. ¶ 11).

Plaintiffs allege two ERISA violations. In Count I, which plaintiffs bring under Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), plaintiffs allege that the Plan suffered investment losses as a result of defendants' conduct in breach of their fiduciary duties. They seek injunctive and equitable relief for the Plan, including declaratory relief and injunctive relief for future breaches. The injunctive relief requested includes an order directing defendants to "make good to the Plan" all losses that the Plan incurred, as well as equitable restitution (Compl. ¶¶ 105-06). In Count II, plaintiffs allege the same breaches of fiduciary duty, but this time seek relief under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). In Count II, plaintiffs seek an accounting, as well as a surcharge on defendants for all amounts owed to the Plan that are not accounted for (Compl. ¶¶ 116-118) and any other appropriate injunctive or equitable relief necessary to make the Plan and its participants and beneficiaries whole (Compl. ¶ 119).

## II.

The legal standards governing class certification motions are well-established. To be certified, a proposed class must (1) be "sufficiently definite to permit ascertainment of the class

6

members," *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir. 1977); (2) meet the four prerequisites of Rule 23(a); and (3) satisfy one of the conditions of Rule 23(b). If these requirements are met, the district court has broad discretion to determine whether certification is appropriate in a particular case. *Retired Chicago Police Assoc. v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993).

The determination of class certification turns not on the ultimate merits of the case, but rather on whether the party seeking certification meets its burden of showing that all the certification requirements are met. *General Tele. Co. of Southwest v. Falcon,* 457 U.S. 147, 161 (1982). That said, the Seventh Circuit has directed that, "[b]efore deciding whether to allow a case to proceed as a class action, . . . a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo,* 249 F.3d at 676. As this Court previously stated:

> We do not believe that *Szabo* directs district courts to decide class certification questions based on a preliminary assessment of the ultimate merits of the plaintiffs' claims: to base class certification on a prediction of who will win the case would be at odds with *Eisen* [*v. Carlisle & Jacquelin,* 417 U.S. 156 (1974)]. In our view, the "preliminary inquiry into the merits" discussed in *Szabo* is a more limited one, that has as its focus not the substantive strength or weakness of the plaintiffs' claims, but rather whether the path that will need to be taken to decide the merits renders the case suitable for class treatment. It is in this limited sense that the Court assesses the "merits" of plaintiffs' allegations in considering the class certification motion.

*Humphrey v. Int'l Paper,* No. 02 C 4147, 2003 WL 22111093, *3 (N.D. Ill., Sept. 11, 2003) (discussing *Szabo,* 249 F.3d at 675). *See also Murray v. Am. Mortg. Banc, Inc.,* No. 03 C 5811, 03 C 6186, 2005 WL 1323364 (N.D. Ill., May 5, 2005) (Report and Recommendation adopted, modifications not relevant, by 2006 WL 1647531 (N.D. Ill., June 5, 2006)(Guzman, D.J.).

# A.

We begin our analysis with the threshold question of plaintiffs' proposed class definition. The plaintiffs propose that the Court certify the following proposed class:

> All persons . . . who are or were participants or beneficiaries of the Plan, and those who will become participants of the Plan in the future. The named Defendants are excluded from the class.

(Compl. ¶ 24). Defendants argue that this proposed class is overly broad because: (1) it includes persons with time-barred claims; (2) future participants lack constitutional standing; (3) former participants may not sue under ERISA; (4) the proposed class fails to exclude officers of defendant KFGI, which will lead to intra-class conflicts; and (5) the proposed class includes participants who executed releases (Defs.' Mem. at 5-12). We address each of these arguments in turn.

## 1.

The Plan at issue dates back to January 1, 1979 (see Ex. A to Pls.' Motion). Since plaintiffs' proposed class contains no time limit, and seeks to include all persons whoever were participants, the time scope of the proposed class could extend back to 1979. ERISA, however, provides that any action alleging a breach of fiduciary duty under that section must be brought no later than "six years after the date of the last action which constituted a part of the breach, . . . except in the case of fraud or concealment." 29 U.S.C. § 1113 (2007). "[I]n the case of fraud or concealment," ERISA claims must be filed not within six years after the breach but, rather, within six years after "the date of discovery of such breach or violation." 29 U.S.C. § 1113(1).

Defendants argue that the six-year limitations period applies to limit the class, unless the plaintiffs show that defendants took "affirmative steps to hide the alleged fiduciary breach from

them" (Defs.' Mem. at 5-6) (citing *Ranke v. Sanofi-Synthelabo, Inc.*, 436 F.3d 197, 203-04 (3rd Cir. 2006)). Defendants argue that plaintiffs "do nothing that even approaches particular pleading of fraud" or concealment (Defs.' Mem. at 6), and thus, "[a]t a minimum, the class must be limited to individuals who were participants in the Plan as of October 16, 2000 – six years prior to the filing of the Complaint (*i.e.,* October 16, 2006) – and to their investments in the Plan since that date" (Defs.' Mem. at 5).

The cases in this district hold that Rule 9(b)'s requirement that fraud be plead with specificity apply to ERISA fiduciary breach cases. *See Rogers v. Baxter Intern., Inc.*, 417 F. Supp.2d 974, 984 (N.D. Ill. 2006) ("While claims for breach of fiduciary duty under ERISA generally are not subject to heightened pleading standards, Rule 9(b) does apply where the plaintiff alleges that a defendant's breach of fiduciary duty took the form of a fraudulent act"); *Beauchem v. Rockford Prods. Corp.,* 2003 WL 1562561, at *3 (N.D. Ill., March 24, 2003) (refusing to toll ERISA's statute of limitations because plaintiff failed to plead allegations of concealment with particularity as required by Rule 9(b)).

However, at the class certification stage, courts are not to examine the merits of the case for purposes of deciding factual or legal questions unrelated to the certification standards. *Eisen,* 417 U.S. at 177-78. Thus, we reject for now defendants' assertion that the class definition be limited according to the six-year ERISA statute of limitations. To accept that argument would require us to make a determination that dips too heavily into the merits. Whether the evidence fails to show that defendants fraudulently concealed the actual fees and expenses charged by the Plan for each of its investment options, as defendants vigorously argue (Defs.' Mem. at 2-5) (describing defendants' attempts to disclose material information to Plan participants), is an inquiry better left for later in the

case. Because a class definition may be altered or amended at any time before final judgment, *see* Fed.R.Civ.P. 23(c)(1)(C), if at any time after discovery is completed there is insufficient evidence to create a triable issue on whether defendants fraudulently concealed the fees and expenses at issue, then defendants may move to amend the class definition to limit the class accordingly.[2]

**2.**

Defendants argue that future participants cannot be identified, and thus must be excluded from the class definition (Defs.' Mem. at 8, citing *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 137 (3d Cir. 2000) (affirming exclusion of future participants "because of the infeasibility of auditing the Plan in order to determine whether each participant may or may not have some present or future claim")). Defendants claim that future participants have suffered no concrete or particular injury that is actual or imminent, and because they cannot sue individually, they cannot be part of the class (Defs.' Mem. at 7). We disagree.

Article III of the United States Constitution requires a party to demonstrate standing by alleging that: (1) the party suffered actual or threatened injury as a result of alleged illegal conduct by defendant; (2) the injury is fairly traceable to the challenged action, and (3) the injury is redressable by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472 (1982). The party also must assert that this harm is actual or imminent, rather than conjectural or hypothetical. *Port Washington Teachers' Assoc. v. Bd. of Educ. of the Port Washington Union Free Sch. Dist.,* 478 F.3d 494, 498 (2d Cir. 2007).

---

[2]Defendants drop a final paragraph at the end of the statute of limitations argument suggesting that "it would be inappropriate to impose an unlimited class period because no Plaintiff had invested in two of the Plan's investment options until 2001 – the U.S. Government Obligations Fund and the Euro Equity Fund" (Defs.' Mem. at 7). The Court does not find that the specific types of investments offered to participants is relevant to a statute of limitations analysis because we are not dealing with individual plaintiffs or individual investment decisions. We are dealing with claims that the Plan, as a whole, suffered a loss and thus the Plan's participants and beneficiaries, as a whole, suffered that loss.

Here, plaintiffs bring this action on behalf of the Plan. They have alleged that the Plan suffered actual injury and that it continues to suffer the real and imminent possibility of injury in the future, unless their requests for injunctive relief are granted. Plaintiffs link the injury alleged (the loss of value based on excessive fees and expenses) to the conduct of defendants, as the Plan's fiduciaries. Defendants have stipulated that they owed the same fiduciary duties to all members of the purported class (Pls.' Ex. I, ¶ 3), so the injuries alleged are fairly traceable to the challenged action if plaintiffs prove the allegations in the complaint, and the injury alleged is redressable by injunctive and other equitable relief. In the event plaintiffs prove excessive fees, and that leads to injunctive relief that affects how the Plan pays out fees in the future, that will redound to the benefit of future participants. *See Loomis v. Exelon Corp.*, No. 06 C 4900, 2007 WL 2981951, *5 (June 26, 2007) (". . . injunctive relief, if granted, would affect not just present participants, but future participants, as well"); *see Taylor v. United Technologies Corp.*, No. 3:06CV1494(WWE), 2008 WL 2333120, *3 (June 3, 2008). Accordingly, we find that future participants may be included in the class certification.[3]

**3.**

Defendants argue that the former participants in the class should be eliminated from the class definition, because former participants may not sue under ERISA (Defs.' Mem. at 9). Defendants assert that, although ERISA allows former participants to bring ERISA suits where they are or may become eligible to receive benefits from the Plan, 29 U.S.C. § 1002(7), here former participants must be excluded because the proposed class definition "encompasses former participants who seek only

---

[3]As we explain below, we certify this class under Rules 23(b)(1) and (2), which does not provide class members with opt-out rights. Thus, inclusion of future participants does not render the class indefinite on the ground that future participants cannot be identified for purposes of allowing them an opportunity to opt-out.

11

individual monetary relief and not any type of relief that is authorized under Sections 502(a)(2) or (a)(3) of ERISA" (Defs.' Mem. at 9). We disagree.

The Seventh Circuit has held that participants who withdraw from their defined-contribution plan can still sue for breach of fiduciary duty. *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007). This is consistent with the Supreme Court's holding in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989), which found that a former employee may become eligible to receive benefits if he or she has a "colorable claim to vested benefits." In this case, plaintiffs obtain a recovery for the Plan, that will mean that persons who withdrew from the Plan during a period when excessive fees were paid will have received less than they should have received. That possibility gives former participants standing, because they would have a claim to a benefit: that is, "[w]hatever would have been [in the Plan] had the Plan honored the employee's entitlement, which includes an entitlement to prudent management." *Harzewski*, 489 F.3d at 805 (emphasis removed). Thus, former participants who were members of the Plan at the time of the alleged conduct violating ERISA may be part of a class bringing suit on behalf of the Plan for violations that occurred while they were participants.

**4.**

Defendants also argue that the proposed class fails to exclude the officers of defendant KFGI, which will lead to "intra-class conflicts" (Defs.' Mem. at 10). The officers of Kraft can participate in the Plan and thus would fall within the purported class definition; however, as officers of defendants, they may also be required to speak for the corporate entities for which they work. Failure to exclude the officers, says defendants, puts KFGI "on both sides of the 'v'" and therefore creates intra-class conflicts. Defendants cite *Baranski v. Vaccariello*, 896 F.2d 1095, 1098 (7th Cir.

12

1990), for the proposition that those whose interests may be antagonistic to the class cannot be class members.

Plaintiffs claim that the facts and holding in *Baranski* are distinguishable from this case on two grounds: (1) *Baranski* was a RICO case; and (2) the antagonistic interests found in *Baranski* between defendants and the class resulted because the defendants were named parties who were allegedly responsible for the fraud at issue (Pl.'s Reply at 14-15). We find that this latter point is significant, and thus agree that *Baranski* is not controlling.

The question that presented here, however, is whether non-party defendants who are officers and directors as well as Plan participants have a conflict of interest that precludes them from participating in this class action. We think the best course is to exclude defendants' officers and directors from the class even though they are not named parties. That will eliminate any concern that officers and directors who may gain if plaintiffs prevail will also be making decisions for corporate defendants as to how best to litigate – or settle – this case. If, through discovery, plaintiffs can show that there is no conflict of interest for such persons, the class definition can be modified prior to judgment. At this time, we will revise plaintiff's proposed class definition to exclude officers and directors of the defendants.

**5.**

Defendants' final argument for limiting the class definition is that participants who executed releases should not be included in the class definition. In support of this argument, defendants offer evidence that a number of former KFGI employees executed releases in consideration for severance benefits "in which they very likely waived their claims in this case" (Defs.' Mem., at 10, citing Tab L (Declaration of Jill K. Youman at ¶¶ 3-4)). Plaintiffs contend that this is not the law, citing to

13

several cases holding that individuals who signed releases upon termination of their employment released only individual claims (and sometimes not even all of those) rather than claims they could make on behalf of an ERISA plan. *See Bowles v. Reade,* 198 F.3d 752, 759-60 (9th Cir. 1999); *Loomis,* 2007 WL 2981951, *6.

We are not prepared to say that a release signed upon an employee's termination can never waive claims brought by a class of plaintiffs on behalf of a plan. It strikes us that this is a matter of the intent of the parties, which in the first instance is best determined by the language of the releases at issue. *See, e.g., Brieger v. Tellabs, Inc.,* 245 F.R.D. 345, 354 (N.D. Ill. 2007). In this case, the release language cited by defendants does not purport to limit any plaintiff, including the named plaintiffs acting as class representatives, from joining a class seeking relief on behalf of the Plan. The releases address individual, not Plan, claims, and there is no evidence that the releases reflected an intent of the plaintiffs to release their right to seek Plan relief – even if that later might rebound to their benefit. General releases do not waive claims not known or contemplated by the signatory party at the time of the release. *See Fair v. Int'l Flavors & Fragrances, Inc.,* 905 F.2d 1114, 1115 (7th Cir. 1990). Thus, we reject the attempt to include in the class definition a limitation based on the signing of releases.

## B.

We now turn to Rule 23(a), which requires that plaintiffs establish: (1) numerosity (a class large enough to make joinder of all members impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses typical of the class); (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class). *Patterson v. General Motors Corp.*, 631 F.2d 476, 480 (7th Cir. 1980), *cert. denied*, 45 U.S.

914 (1981). Defendants do not challenge numerosity, and with good reason. Plaintiffs allege, and defendants do not dispute, that approximately 43,737 participants with account balances in the Plan existed at the end of the 2004 Plan year (Compl. ¶ 25 (a)). We find that numerosity is satisfied, and therefore move on to discuss the other three requirements of Rule 23(a).

### 1.

Rule 23(a)(2) requires plaintiff to prove the existence of questions of law or fact common to the proposed class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Thus, "some factual variation among the class grievances will not defeat a class action." *Id.* at 1017. For example, the nature and amount of damages may differ among the class members, so long as those individual issues are manageable through bifurcated hearings or some other mechanism that allows the common issues to be adjudicated together. *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 678-79 (N.D. Ill. 1989). *See also Murray*, 2005 WL 1323364, at *5.

In this case, plaintiffs allege that the common questions among the proposed class members are whether the defendants: (1) charged fees and expenses to the Plan that were unreasonable and/or not incurred solely for the benefit of Plan participants; (2) entered into agreements with third parties which resulted in unreasonable fees and expenses that were not incurred for the benefit of Plan participants; (3) failed to monitor fees and expenses paid by the Plan and by such failure caused or allowed the Plan to pay unreasonable fees and expenses or incurred fees and expenses that did not benefit Plan participants; (4) failed to inform and understand the proper methods and implement the proper procedures for determining the reasonableness of fees and expenses paid by the Plan; (5) failed to inform and/or disclose to participants the fees and expenses paid by the Plan; (6) failed to

inform/disclose in proper detail and clarity the transaction fees and expenses that affect participants' account balances in connection with purchase or sale transactions; (7) failed to disclose hidden or excessive fees assessed against the Plan and failed to stop such fees from being assessed; (8) appointed fiduciaries who did not fulfill fiduciary duties; failed to monitor these fiduciaries; and failed to terminate fiduciaries' duties after breaches occurred; (9) failed to exercise fiduciary duties according to prudent person standard; (10) caused or allowed fees and expenses to be paid for purposes not authorized by ERISA; (11) are liable to the Plan and Class for losses suffered by the Plan as a result of fiduciary duties and ERISA obligations; and (12) are responsible to account for assets and transactions of the Plan and should be charged for any transactions and payments for which they cannot account (Compl. ¶ 25 (b)).

Defendants concede that the plaintiffs' burden to show commonality is low, and do not dispute that plaintiffs have met that burden here (Defs.' Mem. at 13 n.10). We agree, and find that plaintiffs have amply established the existence of common questions, thus satisfying Rule 23(a)(2).

**2.**

Plaintiffs allege that Rule 23(a)(3) is satisfied because all claims alleged are typical of those of absent class members: (1) defendants owed same fiduciary duties to each Plan participant and member of the class; (2) defendants' breaches of fiduciary duties constitutes breaches to each participant and class member; and (3) any differences among class members are minimal and "formulaic" mathematical problems based on account balances and do not involve substantive issues (Compl. ¶ 25 (c)).

Defendants offer three reasons why, in their view, the typicality requirement is not met. We address, and reject, each of those proffered reasons.

16

Defendants argue that "[t]here can be no typicality as to Plaintiffs' disclosure claims" because plaintiffs' breach of fiduciary duty claims premised on non-disclosure require a participant to show that the information would have been material to the average plan participant and that s/he detrimentally relied on the undisclosed information (Defs.' Mem. at 15, citing *Kamler v. H/N Telecomm. Servs. Inc.*, 305 F.3d 672, 681 (7th Cir. 2002); *Gesell v. Commonwealth Edison Co.*, 216 F.R.D. 616, 621-622 (C.D. Ill. 2003)). Defendants contend that plaintiffs have failed to make this showing because "[a]lthough . . . every Plan participant was exposed to the same information about fees and expenses," and "[t]he record shows that . . . they all had access to the same information (which disclosed the amount of fees for each investment option) each Plaintiff relied on different information to make their investment decisions" (Defs.' Mem. at 16). Thus, argue defendants, the record shows that different plaintiffs relied on different parts of the information distributed, even if the sum of that information was the same. In other words, defendants contend that plaintiffs cannot show typicality on the issue of non-disclosure for the class as a whole because there are individual issues related to detrimental reliance (*Id.* at 17). Defendants further contend that "[p]laintiffs cannot simply rely on their ERISA Section 502(a)(2) "claim on behalf of the Plan" to avoid this problem, because the Plan's asset allocation is the product of tens of thousands of individual participant decisions, some of which may have been based on information about fees and expenses [while] others were not" (*Id.* at 18).

The Court disagrees. As noted by the *Brieger* court, "[t]he Seventh Circuit has never expressly held that detrimental reliance is an element of an ERISA beach of fiduciary duty claim." *Brieger*, 245 F.R.D. at 353. We agree, and follow the line of cases holding that the issue of

individual detrimental reliance is irrelevant to class certification in an ERISA action under Section 502(a)(2) or (3). *See Brieger*, 245 F.R.D. at 350 (Section 502(a)(2) claims for omissions and misrepresentations made to class members on a plan-wide basis rather than individually or personally are typical and subject to certification); *see also Nauman v. Abbott Laboratories*, No. 04 C 7199, 2007 WL 1052478, at * 2-3 (N.D. Ill. Apr. 3, 2007) (certifying class after stating that individual reliance issues do not preclude class certification); *Smith v. Aon Corp.*, 238 F.R.D. 609, 616 (N.D. Ill. 2006) ("individual [p]laintiffs are not required to establish detrimental reliance" where claims are brought on behalf of Plan).

In this case, plaintiffs assert a course of conduct by defendants that involved not only failure to disclose information, but also the squandering of Plan assets through payment of excessive fees. It is this alleged conduct by defendants, uniform as to all participants, that is the gravamen of plaintiffs' claims and that forms the basis for the relief they seek: injunctive and declaratory relief for the Plan, and recovery by the Plan from defendants for the losses allegedly suffered by the Plan. For this type of claim, we do not see why the extent of nature or any reliance by individual class members on what information was disclosed matters for class certification purposes. Reliance is not an element plaintiffs must prove to establish a beach of fiduciary duty, which if proved would entitle the Plan to recovery. How that recovery will be allocated by the Plan to different class members is not a question that affects class certification. Typicality is measured by reference to defendants' actions toward the Plan as a whole, not with respect to individual defenses that might be raised with respect to how participants later may share in a recovery by the Plan. We therefore find that typicality is met.

18

**b.**

Defendants also argue that their assertion of a "safe harbor" defense raises individual issues that defeat a finding of typicality. Specifically, defendants claim that under Section 404(c), a fiduciary is not liable "for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." 29 U.S.C. § 1104 (c).

Section 404(c) provides to Plan fiduciaries a "safe harbor" from liability for losses that a participant suffers in his or her 401(k) accounts. 29 U.S.C. § 1104(c). The applicable regulations state that to be eligible for the protection of this "safe harbor," Plan fiduciaries must, among other things, provide:

    a.    an opportunity for a participant or beneficiary to exercise control over assets in his individual account, and

    b.    a participant or beneficiary with an opportunity to choose, from a broad range of investment alternatives, the manner in which some or all of the assets in his account are invested.

29 C.F.R. § 2550.404c-1(b)(1). For a participant or beneficiary to have "an opportunity to exercise control over assets in his individual account," he or she must have "the opportunity to obtain sufficient information to make informed decisions with regard to investment alternatives available under the Plan." 29 C.F.R. § 2550.404c-1(b)(2)(B). The regulations state that:

The "sufficient investment information" Plan fiduciaries must provide includes: A description of any transaction fees and expenses which affect the participant's or beneficiary's account balance in connection with purchases or sales of interests in investment alternatives (e.g., commissions, sales load, deferred sales charges, redemption or exchange fees).

29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(1)(v). Moreover, upon request, participants and beneficiaries must be given:

[a] description of the annual operating expenses of each designated investment alternative (e.g., investment management fees, administrative fees, transaction costs) which reduce the rate of return to participants and beneficiaries, and the aggregate amount of such expenses expressed as a percentage of average net assets of the designated investment alternative.

29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(2)(i).

ERISA's safe harbor regulations state that the imposition of reasonable charges for reasonable Plan expenses does not interfere with a participants's opportunity to exercise control over his or her individual account so long as Plan fiduciaries inform the participant of such actual expenses:

A plan may charge participants' and beneficiaries' accounts for the reasonable expenses of carrying out investment instructions, provided that procedures are established under the plan to periodically inform such participants and beneficiaries of actual expenses incurred with respect to their respective individual accounts.

29 C.F.R. § 2550.404c-1(b)(2)(ii)(A).

Defendants contend that their Section 404(c) defense places the responsibility "for the success or failure of a participant's investments" on his or her shoulders. *Langbecker v. Electronic Data Systems, Corp.*, 476 F.3d 299, 309 (5th Cir. 2007), and that adjudication of that defense "requires an individual determination" that defeat typicality (Defs.' Mem. at 18-19). That argument misapprehends the typicality requirement for class certification in light of the limited allegations in this case. It is simply not the case that "the Court will need to analyze whether *each and every one* of the 40,000 putative class members had sufficient control over his or her Plan investments" in order to decide whether defendants' Section 404(c) defense ultimately has merit (Defs.' Mem. at 20). The majority of the case law supports this view. *See Brieger*, 245 F.R.D. at 353 (citing cases and

distinguishing *Langbecker*). We agree with the *Brieger* analysis, and thus reject the argument that the safe harbor defense defeats typicality.

c.

Defendants' last argument opposing a finding of typicality is that there are "intra-class conflicts inherent in plaintiffs' company stock fund claims" (Defs.' Mem. at 20). We do not find a response to this argument by plaintiffs in the reply brief, but we reject it nonetheless.

Defendants contend that "[t]wo variables will lead to intra-class conflicts with respect to [p]laintiffs' claims that the stock funds had excessive cash buffers" (*Id.*). The first variable identified by defendants is that plaintiffs participated in the stock funds for varied periods of time (*Id.*). The second variable is that plaintiffs' excessive cash allegations depend on a fluctuating market to prove loss, namely, that as the price of the stock was rising, the stock fund's returns would naturally be less if the funds held excessive cash (*Id.*). Defendants contend that both of these variables taken together ignore what happens in a declining or flat market. Because a different result might obtain under various circumstances depending on chronological time as well as the timing of the market with respect to that time, defendants contend that the excessive cash allegations are "ripe for intra-class conflict" depending on which participants make the claims (*Id.* at 20).

We disagree. At the threshold, we note that the hold of excessive cash is not pled as a breach of fiduciary duty in Counts I or II (nor in the paragraphs incorporated by reference in those claims).[4]

---

[4]There is one allegation in the complaint, at paragraph 71, that says it is important that the Employer Stock Fund not hold cash of any significance on an continuous basis. Also, paragraph 73 alleges that the Altria and Kraft stock funds did hold excessive cash and paragraph 76 alleges that the value of the funds have been reduced by holding excessive cash, as do paragraphs 78, 80, and 82. All these paragraphs are incorporated into Counts I and II. But, so are scores of other allegations that precede Counts I and II. What is missing from Counts I and II is any allegation that the alleged holding of excessive cash breached a fiduciary duty.

21

In any event, even were that claim alleged, it would not defeat certification. On class certification (rather than the merits), we focus the typicality inquiry on what the defendants' behavior was toward the Plan as a whole and not what it was or what the result of that behavior was on individuals. *See Brieger*, 245 F.R.D. at 350 (inquiry to Plan not inquiry to individual accounts based on individual investment patterns is the issue for typicality). The relief sought in Count I under Section 502(a)(2) is an injunctive and/or declaratory order that requires the defendants to make good to the Plan whatever losses, if any are proven, occurred as a result of defendants' alleged breaches of fiduciary duty. Thus, if plaintiffs proved that excessive cash was indeed held and that this was a breach of the defendants' fiduciary duties, then they would be required to prove that resulted in a loss to the Plan. If that were proven, an injunctive order requiring a make good remedy would be in order on a class wide basis. As for Count II, the Section 502(a)(3) claim, again the question would come down to proof of loss to the Plan, not to individual participants.

For these reasons, we find that plaintiffs have satisfied the typicality requirement under Rule 23(a)(3). We now move to the last element: adequacy of representation.

**3.**

Plaintiffs allege that they are "adequate representatives of the absent class members and will protect such absent class members' interests in this litigation." They allege no antagonistic interests or unique claims and defenses that would "undermine the efficient resolution of the class claims." And, they have retained competent counsel, versed in ERISA, class actions and complex litigation (Compl. ¶ 25 (d)). The plaintiffs' burden of establishing they are adequate class representatives is "not difficult." *Wahl v. Midland Credit Mgmt., Inc.,* 243 F.R.D. 291, 298 (N.D. Ill. 2007). "An adequate class representative must maintain only an understanding of the basic facts underlying the

22

claims, some general knowledge, and a willingness and ability to participate in discovery." *Walker v. Banker's Life & Cas. Co.,* No. 06 C 6906, 2007 WL 2903180, at *6 (N.D. Ill., Oct. 1, 2007).

Not surprisingly, defendants have a different view. The defendants rely on case law outside this district and circuit to support the view that where the plaintiffs have little knowledge of and involvement in the class litigation, they cannot be adequate representatives (Defs.' Mem. at 21-22). Defendants then suggest that, because the named plaintiffs became involved in the case by responding to a newspaper article (instead of affirmatively seeking counsel on their own initiative) and could not fully articulate the claims they were making in the case, they are inadequate representatives. We disagree.

A named plaintiff does not need to have special knowledge of the case or possess a detailed understanding of the legal or factual basis on which a class action is maintained. *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 373 (1966). Rather, the class representative must know the basic facts underlying the lawsuit as alleged in the complaint, and must be willing to participate in discovery. *See Walker,* 2007 WL 2903180, at *6. The class representatives meet that standard. In depositions, they have stated why they filed the case, described defendants' alleged breaches, and indicated an understanding of their roles and responsibilities as class representatives (see Defs.' Reply Mem., Exs. D, E, F, G). Each plaintiff describes the same conduct: alleged unreasonable and undisclosed fees being charged to the Plan in spite of defendants' fiduciary duties to act otherwise. As plaintiffs point out, it is indeed not surprising that they cannot articulate the nature of their claims since ERISA is a complicated area of the law. Plaintiffs have relied on their lawyers, whom defendants concede are adequate class counsel, to understand and articulate their claims – which they have done. Thus, we find Rule 23(a)(4) satisfied.

**C.**

We now consider whether plaintiffs have shown class certification is appropriate under each of the subparts of Rule 23(b). Plaintiffs allege that class certification is appropriate under each subpart of Rule 23(b). Defendants focus their arguments on why certification under Rule 23(b)(1) and Rule 23(b)(3) is not appropriate. Their only rejoinder to the assertion that a class may be certified under Rule 23(b)(2) is this: "the case does not truly focus on the conduct of the Defendants, for the reasons already explained. Were the Court nevertheless to certify a class, Rule 23(b)(2) would be the least objectionable Rule 23(b) option" (Defs.' Mem. at 25 n.21).

At the outset, the Court finds that Rule 23(b)(3) is not an appropriate basis upon which to certify a class in this case, because the putative class does not seek money damages as primary relief; rather, any monetary relief requested would be ancillary to the injunctive and other equitable relief requested. Moreover, the class that plaintiffs propose includes future participants, who could not be identified for purposes of class notice. Thus, the Court's analysis of Rule 23(b) will focus solely on certification under subsections (b)(1) and (b)(2).

**1.**

We begin with Rule 23(b)(1), which allows for certification of the class if:

> [T]he prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed.R.Civ.P. 23(b)(1).

Defendants argue that certification under Rule 23(b)(1) should be denied because: (1) "the inherently individualized nature of Plaintiffs' claims and Defendants' defenses thereto . . . diminishes any potential for 'inconsistent adjudications'"; and (2) "there is no basis from which to conclude that adjudication of Plaintiffs' individual claims would "as a practical matter" dispose of the interests of other non-parties or would otherwise substantially impair or impede their ability to protect their interests" (Defs.' Mem. at 25-26). We find these arguments unpersuasive. We have already found, with respect to the typicality arguments raised under Rule 23(a)(3), that plaintiffs' allegations do not present individual issues or defenses that defeat certification. The same is true under Rule 23(b)(1).

There is existing law in this district finding class certification appropriate under Rule 23(b)(1) for ERISA claims. In *Brieger*, 245 F.R.D. at 357, the court found that, although the United States Supreme Court has cautioned that Rule 23(b)(1) should be "narrowly interpreted," it also has advised that "[a]mong the traditional varieties of representative suit encompassed by Rule 23(b)(1)(B) were those involving the 'presence of property which called for distribution or management.'" *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 833 (1999) (citations omitted). ERISA Section 502(a)(2) claims, such as those brought by plaintiffs here, would fall within this category because they can only be brought as representative actions. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985).

Sections 502(a)(2) and (a)(3), provide, in relevant part:

(a) Persons empowered to bring a civil action

A civil action may be brought–

(2) by . . . a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation, or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. §§ 1132(a)(2), (3).

The *Brieger* court found that, because the plaintiffs there brought their Section 502(a)(2) claims on behalf of the Plan, "adjudications of the representative plaintiffs' suit would, as a practical matter, be dispositive of the interests of the other participants claims on behalf of the Plan." 245 F.R.D. at 357. Also, because the adjudication of claims would involve recovery and distribution of Plan assets rather than individual accounts, "separate actions by individual plaintiffs would impair the ability of other participants to protect their interests if the suit proceeded outside of a class context." *Id.* Thus, the *Brieger* court found, on the facts of that case, that the proposed class met the requirements of Rule 23(b)(1) because (b)(1)(A) and (b)(1)(B) were satisfied. *See also Loomis,* 2007 WL 2981951 at *5 (same); *Taylor v. United Tech. Corp.,* No. 3:06-CV-1494-WWE, 2008 WL 2333120,*6 (2008) (same). There are relevant parallels between the facts of *Brieger* and our case that persuade us that Rule 23(b)(1) is an appropriate vehicle for class certification here.

**2.**

Rule 23(b)(2) states:

    (b)    **Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

    . . .

    (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

> corresponding declaratory relief is appropriate respecting the class as
> a whole;

Fed.R.Civ.P. 23(b)(2). A class may properly be certified in this case under Rule 23(b)(2), because the putative class in Counts I and II seeks primarily injunctive and declaratory relief. "The application of Rule 23(b)(2) to class actions requesting primarily declaratory or injunctive relief does not prevent the court from granting damages or other monetary relief to class members generally. Once the conduct of the defendant makes such injunctive or declaratory relief appropriate, the full panoply of the court's equitable powers is introduced. Accordingly, monetary relief has been granted on a classwide basis in Rule 23(b)(2) actions, provided that these awards are either (1) equitable in nature or (2) secondary or ancillary to the general scheme of injunctive or declaratory relief sought by the plaintiffs." *See* Newberg on Class Actions, § 4:14 (2008). *See also Coleman v. Pension Ben. Guar. Corp.*, 196 F.R.D. 193 (D.D.C. 2000). Another way to state the test is whether "reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." Newberg, § 4:14, n.3.

That test is met here. Plaintiffs make no direct claims for money damages. Although money will undoubtedly change hands if the plaintiffs prevail, the monetary relief in this case is equitable in nature because it is sought as restitution for breach of fiduciary duty. Thus, Rule 23(b)(2) also is an appropriate basis for class certification.

**3.**

That leaves us with the question of whether to certify the class under Rule 23(b)(1), or Rule 23(b)(2), or both. Plaintiffs state they would prefer certification under Rule 23(b)(1)(A) and

27

(B) (Pls.' Mem. at 11-12), but they have not explained why this vehicle would be better than Rule 23(b)(2) certification. For their part, defendants say if any class is certified, it should be under Rule 23(b)(2) (Defs.' Mem. at 25 n.21), without explaining why Rule 23(b)(2) would be a more appropriate basis than Rule 23(b)(1).

We find no difference between Rule 23(b)(1) and Rule 23(b)(2) as it affects the injunctive, declaratory and other equitable relief that plaintiff request. Since both Rule 23(b)(1) and (b)(2) offer a sound basis for certification, we see no need to choose between them. As other courts have done from time to time, we therefore will certify the class under both Rule 23(b)(1) and (b)(2). *E.g., Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 604-05 (N.D. Cal. 1986); *Bertozzi v. King Louie Intern.*, 420 F. Supp. 1166, 1180-81 (D.R.I. 1976).

## CONCLUSION

For the reasons stated above, the Court grants plaintiffs' motion for class certification (doc. # 81) by certifying the following class pursuant to Rule 23(b)(1) and (b)(2):

> All persons who were participants or beneficiaries of the Plan, all current participants and beneficiaries of the Plan, and those who will become participants of the Plan in the future. The named Defendants and all officers and directors (named or unnamed) of Defendants are excluded from the class.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: July 17, 2008**