**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

GERALD GEORGE, CATHY DUNN,    )
TIMOTHY STREFF, and ANDREW    )
SWANSON, individually    )    Case No. 1:07-cv-01713
and as representatives of a class of similarly    )
situated persons,    )    Magistrate Judge Sidney I. Schenkier
    )
          Plaintiffs,    )
    )
        v.    )
    )
KRAFT FOODS GLOBAL, INC., KRAFT    )
FOODS GLOBAL, INC. ADMINISTRATIVE    )
COMMITTEE, BENEFITS INVESTMENT    )
COMMITTEE, and JIM DOLLIVE, KAREN    )
MAY, MARC FIRESTONE, and PAMELA    )
KING, all in their capacities as members of the    )
Benefits Investment Committee,    )
    )
          Defendants.    )
    )

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
<u>SUMMARY JUDGMENT</u>**

Ronald J. Kramer (rkramer@seyfarth.com)
Ian H. Morrison (imorrison@seyfarth.com)
Amanda A. Sonneborn (asonneborn@seyfarth.com)
Sam Schwartz-Fenwick (sschwartz@seyfarth.com)
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, IL 60603
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Attorneys for Defendants

May 22, 2009

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

ARGUMENT ...........................................................................................................3

I.      Plaintiffs' Fiduciary Breach Claims Are Baseless.................................................3

        A.    Plaintiffs' Company Stock Fund Claim Has No Merit...........................................6

                1.    The Decision To Offer Unitized Stock Funds Was Squarely Within BIC's Discretion And Is Not Subject To Challenge...............................................7

                2.    Plaintiffs' CSF Claim Fails Because Maintaining Unitized Stock Funds Is Not Imprudent – Instead It Is The Norm...................................................8

                3.    The Unitized Nature Of The Company Stock Funds Caused No Harm And Was Fully Disclosed. ...............................................................9

                4.    ERISA § 404(c) Bars Plaintiffs' CSF Claim. .............................................10

        B.    Plaintiffs' Attack On The Hewitt Fees Is Unwarranted........................................11

                1.    The Plan's Overall Fees, Including Hewitt's Fees, Are Unquestionably Reasonable, And Plaintiffs Offer No Evidence of Harm. ..........11

                2.    The Hewitt Fees Were The Product Of A Prudent Process. ......................13

        C.    The Fiduciaries Did Not Breach Their Fiduciary Duty By Merely Permitting State Street To Retain "Float."............................................................15

                1.    Fiduciaries Of Similar Sized Plans Routinely Allow Trustees To Retain Float.............................................................................................15

                2.    Plaintiffs Offer No Evidence That The Fiduciaries Overpaid State Street By Agreeing To Let It Keep The Float........................................16

II.      Plaintiffs' Disclosure Claims Are Plainly Meritless..............................................16

        A.    *Hecker* Confirmed That Plaintiffs' Disclosure Claims Were Unfounded. ............16

        B.    ERISA Does Not Require The Disclosures Plaintiffs Seek.....................................17

III.    ERISA's Statute of Limitations Bars (Or At Least Limits) Plaintiffs' Claims..................19

        A.    ERISA's Three-Year Statute Of Limitations Unquestionably Bars Plaintiffs' Claim Regarding The CSFs And Disclosures.........................................19

B.      Plaintiffs' CSF, Disclosure, And Hewitt Claims Are Untimely (In Whole Or Part) Under The Six-Year Statute Of Limitations. ...........................................21

C.      Plaintiffs Cannot Now Claim Fraud Or Concealment. ...........................................22

IV.     The Court Should Dismiss Claims Against Non-Fiduciaries. ...........................................23

CONCLUSION...........................................................................................................................25

## TABLE OF AUTHORITIES

CASES                                                                                            PAGE(S)

*Abbott v. Lockheed Martin Corp.*,
   No. 06-cv-0701-MJR, 2009 WL 839099 (S.D. Ill. Mar. 31, 2009) ......................10, 22, 23, 24

*Ameritech Benefit Plan Comm. v. Comm. Workers of America*,
   220 F.3d 814 (7th Cir. 2000) ................................................................................................5

*Armstrong v. LaSalle Bank Nat'l Ass'n*,
   446 F.3d 728 (7th Cir. 2006) ..............................................................................................13

*Ashcroft v. Iqbal*,
   No. 07-1015, slip op. at 14-15, 2009 WL 1361536, * 13 (May 18, 2009) ..............................4

*Baker v. Kingsley*,
   387 F.3d 649 (7th Cir. 2004) ..............................................................................................24

*Barker v. Am. Mobil Power Corp.*,
   64 F.3d 1397 (9th Cir. 1995) ..............................................................................................23

*Beauchem v. Rockford Prods. Corp.*,
   No. 01 C 50134, 2004 WL 432328 (N.D. Ill. Feb. 6, 2004) .................................................24

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................................4

*Brieger v. Tellabs, Inc.*,
   No. 06 C 1882, 2009 WL 720975 (N.D. Ill. Mar. 16, 2009) .................................................10

*Brock v. Robbins*,
   830 F.2d 640 (7th Cir. 1987) .....................................................................................4, 5, 8, 9

*Chao v. Linder*,
   No. 05 C 3812, 2007 WL 1655254 (N.D. Ill. May 31, 2007) .................................................4

*Chao v. Merino*,
   452 F.3d 174 (2d Cir. 2006)..................................................................................................6

*Curtiss-Wright Corp. v. Schoonejongen*,
   514 U.S. 73 (1995)..............................................................................................................18

*DeBruyne v. Equitable Life Assurance Soc'y of U.S.*,
   920 F.2d 457 (7th Cir. 1990) .............................................................................................5, 6

*DiFelice v. U.S. Airways, Inc.*,
   397 F. Supp. 2d 758 (E.D. Va. 2005) .................................................................................18

iii

*DiFelice v. U.S. Airways, Inc.*,
436 F. Supp. 2d 756 (E.D. Va. 2006), *aff'd* 497 F.3d 410 (4th Cir. 2007)............................6, 9

*DiFelice v. U.S. Airways, Inc.*,
497 F.3d 410 (4th Cir. 2007) ...............................................................................................6, 14

*Dupree v. Prudential Ins. Co. of Am.*,
No. 99-8337-Civ-JORDAN, 2007 WL 226392, at *24 (S.D. Fl. 2007), *appeal
dismissed* March 7, 2008 (11th Cir).................................................................................5, 13

*Edes v. Verizon Commun's, Inc.*,
417 F.3d 133 (1st Cir. 2005) .............................................................................................20, 21

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989)..............................................................................................................7, 13

*Hecker v. Deere & Co.*, 496 F. Supp. 2d 967, 973 (W.D. Wis. 2007), *aff'd* 556 F.3d at
585-586. ........................................................................................................................................18

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ..............................2, 3, 8, 10, 11, 13, 16, 17, 19, 24

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)..................................................................................................................8

*Hunter v. Caliber Sys., Inc.*,
220 F.3d 702 (6th Cir. 2000) ...............................................................................................14

*Jenkins v. Price Waterhouse Long Term Disability Plan*,
No. 08-1909, 2009 WL 117517 (7th Cir. May 4, 2009)..............................................8

*Jenkins v. Yager*,
444 F.3d 916 (7th Cir. 2006) ...............................................................................5, 6, 13, 14

*Kanawi v. Bechtel Corp.*,
590 F. Supp. 2d 1213 (N.D. Cal. 2008), *appeal docketed*, No. 08-16980 (Sep. 8,
2008) .........................................................................................................................................21, 23

*Kannapien v. Quaker Oats Co.*,
507 F.3d 629 (7th Cir. 2007) ...............................................................................................3, 10

*Lachmund v. ADM Investor Servs.*,
191 F.3d 777 (7th Cir. 1999) ...............................................................................................23

*Langbecker v. Elec. Data Sys. Corp.*,
476 F.3d 299 (5th Cir. 2007) ...............................................................................................10

*Leahy v. Trans Jones, Inc.*,
    996 F.2d 136 (6th Cir. 1993) ........................................................................8

*Leister v. Dovetail, Inc.*,
    546 F.3d 875 (7th Cir. 2008) ..............................................................19, 22

*Lewis v. Citgo Petroleum Corp.*,
    561 F.3d 698, 701 (7th Cir. 2009) ...............................................................4

*Librizzi v. Children's Mem. Med. Ctr.*,
    134 F.3d 1302 (7th Cir. 1998) ..............................................................21, 22

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996).......................................................................................8

*Martin v. Consultants & Adm'rs.*,
    966 F.2d 1078 (7th Cir. 1992) ...................................................................20

*Metzler v. Graham*,
    112 F. 3d 207 (5th Cir. 1997) ......................................................................4

*Nelson v. Hodowal*,
    512 F.3d 347 (7th Cir. 2008) .....................................................................19

*Prudential Ins. Co. v. Doe*,
    76 F.3d 206 (8th Cir. 1996) .........................................................................4

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) .....................................................................23

*Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*,
    919 F.2d 1216 (7th Cir. 1990) ...................................................................23

*Ranke v. Sanofi-Synthelabo Inc.*,
    436 F.3d 197 (3d Cir. 2006)..................................................................22, 23

*Reeves v. Airlite Plastics, Co.*,
    No. 8:04CV56, 2005 WL 23467 (D. Neb. Sept. 26, 2005) ....................21

*Rogers v. Baxter Int'l Inc.*,
    417 F. Supp. 2d 974 (N.D. Ill. 2006), *aff'd* 521 F.3d 702 (7th Cir. 2008) ............................23

*Rush v. Martin Petersen Co.*,
    83 F.3d 894 (7th Cir. 1996) .......................................................................20

*Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*,
    128 F.3d 541 (7th Cir. 1997) ..............................................................23, 24

*Tatum v. R.J. Reynolds Tobacco Co.*,
No. 1:02 CV 00373, 2007 WL 1612580 (M.D.N.C. May 31, 2007)......................................24

*Taylor v. United Tech.*,
No. 06-cv-1494, 2009 WL 535779 (D. Conn. Mar. 3, 2009), *appeal docketed* No. 09-cv-1343, (Apr. 1, 2009)...........................................................................................................9

*Wsol v. Fiduciary Mgmt. Assocs.*, No. 99 C 1719, 2000 WL 139463, at *11 (N.D. Ill. Jan. 28, 2000), *aff'd* 266 F.3d 654, 657-58 (7th Cir. 2001) ............................................5, 9, 12, 13

*Wsol v. Fiduciary Mgmt. Assocs.*,
266 F.3d 654, 657-58 (7th Cir. 2001) ............................................................................5, 15

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
550 F. Supp. 2d 416 (S.D.N.Y. 2008), *aff'd* No. 08-1532-cv(L), 08-1534-cv(con), 2009 WL 1230350 (2d Cir. May 6, 2009) ....................................................................20, 21

## STATUTES

29 U.S.C. § 1001 ......................................................................................................................1

29 U.S.C. § 1002(21) ............................................................................................................24

29 U.S.C. § 1023 ...................................................................................................................17

29 U.S.C. § 1104...................................................................................................5, 8, 10, 11

29 U.S.C. § 1109...........................................................................................................4, 24, 25

29 U.S.C. § 1113(2) ..............................................................................................................22

## REGULATIONS

29 C.F.R. § 2520 ..............................................................................................................17, 18

71 Fed. Reg. 41,392, 41,394 ...........................................................................................17, 18

## OTHER AUTHORITIES

Fed. R. Civ. P. Rule 9(b)...................................................................................................22, 23

Fed R. Civ. P. Rule 12(c) .......................................................................................................11

Fed. R. Civ. P. Rule 56(c) ........................................................................................................4

Fed. R. Evid. Rule 702............................................................................................................6

Restatement (Second) of Trusts § 187 (1959) .......................................................................13

Defendants, Kraft Foods Global, Inc. ("Kraft"), Kraft Foods Global, Inc. Administrative Committee ("KFAC"), Benefits Investment Committee ("BIC"), Karen May, Jim Dollive, Marc Firestone, and Pamela King (collectively "defendants"), submit this memorandum of law in support of their motion for summary judgment.

## INTRODUCTION

Plaintiffs sue for breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* In this and 13 other lawsuits, plaintiffs' counsel made a sweeping attack on the 401(k) plans offered by some of the country's largest employers. Here, plaintiffs filed a voluminous complaint attacking many aspects of the operation of the Kraft Foods Global, Inc. Thrift Plan (the "Plan"). Recognizing that their broadside attack on the Plan's administration was utterly untenable, plaintiffs have now, after two and a half years of litigation, dozens of depositions and over one million pages of document discovery, abandoned all but the following claims:

1. **Stock Funds**: Defendants breached their fiduciary duties and continue to breach these duties to the Plan by imprudently maintaining or allowing to be maintained excessive cash in the Altria Stock Fund and the Kraft [Foods Inc.] Stock Fund and by imprudently managing the Funds by allowing excessive and unnecessary transactional costs, investment management and other fees and expenses to be charged to the Plan, thereby substantially reducing participants' returns.

2. **Hewitt Associates Recordkeeping Fees**: Defendants breached their fiduciary duties and continue to breach these duties to the Plan with respect to the compensation of the Plan's record keeper, Hewitt Associates, by failing to defray reasonable expenses of Plan administration and by causing the Plan to incur unreasonable and excessive direct and indirect fees and expenses which have not been incurred solely for the benefit of Plan participants and beneficiaries; by failing to adequately monitor the fees and expenses paid by the Plan; and by failing to determine all amounts of recordkeeping and administrative fees.

3. **Float**: Defendants breached their fiduciary duties and continue to breach these duties to the Plan by imprudently failing to monitor and account for earnings on funds being contributed to and/or disbursed from the Plan (*i.e.*, "float") and allowing State Street Bank and Trust Co., the Plan's trustee, to retain the float resulting in the payment of excessive and unreasonable trustee fees and expenses

which have not been incurred solely for the benefit of Plan
participants/beneficiaries.

4. **Disclosure**: Defendants allegedly failed to make ERISA-required disclosures
regarding Plan fees and expenses.

(*See* Docket # 215, 3/19/09 Joint Statement.)[1]

These four remaining claims – that the Plan fiduciaries breached their fiduciary duties to

Plan participants and that the Plan failed to meet its disclosure requirements – reflect two basic

(and fundamentally incorrect) challenges to the operation of the Plan. First, plaintiffs base their

stock fund, Hewitt and float claims upon an incorrect understanding of the fiduciary duties to act

prudently and to allow only reasonable compensation for service providers. Plaintiffs' positions

ignore the well-defined standards for fiduciary conduct and instead seek to replace settled law

with their own notions of what is prudent and reasonable. Indeed, plaintiffs' claims rest solely

on the all-or-nothing, unsupportable positions that it is never permissible to invest a portion of a

company stock fund in cash, that a plan must always hire the cheapest recordkeeper without

regard to factors other than price, and that a plan may never permit its trustee to retain "float" as

part of its compensation. Other than dubious "experts" who extol these extreme views, plaintiffs

can offer no evidentiary or legal support for their claims. Not only do plaintiffs fail to show that

these supposed breaches caused any loss to the Plan, but there were, in fact, no breaches at all.

Contrary to plaintiffs' claims, the Plan fiduciaries behaved in a manner fully consistent with their

---

[1] Plaintiffs previously claimed that defendants breached their fiduciary duties by selecting investment
options with excessive investment management fees (docket # 170), but have stipulated that they will
not present evidence to support that claim (docket # 216, 4/1/09 Minute Order). Defendants are
entitled to judgment on that claim and any other claim embedded in the complaint but not identified
in the joint statement. It is also clear for the reasons stated in defendants' motion for judgment on the
pleadings (docket #s 207, 209) that the investment fee claim, and any claim based upon the total fees
charged to participants under the Plan for that matter, fails as a matter of law because the fees
(between .08 to 1.07 percent of assets during the relevant time period) unquestionably are reasonable
as a matter of law. *See Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009).

ERISA fiduciary obligations – they were experienced administrators who monitored the performance of the Plan's investment options and the compensation of the Plan's service providers. The law simply does not require more.

Second, plaintiffs' disclosure claim, made solely to avoid the ERISA § 404(c) safe harbor – which shields fiduciaries from liability when informed plan participants control their own investments – suggests that the Plan's disclosures regarding fees and investment options were inadequate. This claim, however, fails because the Plan disclosed all required information. *See Hecker*, 556 F.3d at 585. The adequacy of the Plan's disclosures exposes a fundamental weakness in plaintiffs' theory: because the Plan disclosed the nature, total fees, and performance of each investment, any losses suffered due to allegedly excessive fees or supposedly imprudent investment structure were caused by plaintiffs' own investment decisions.

In addition to these flaws in plaintiffs' theories, ERISA's statute of limitations also bars, or at least limits, their claims. Additionally, the Court should dismiss claims against the defendants who had no fiduciary responsibility for the acts at issue during the relevant time. Plaintiffs have presented no viable ground for recovery and thus, as a matter of law, the Court should enter judgment for defendants on every one of plaintiffs' claims.

## ARGUMENT

### I. Plaintiffs' Fiduciary Breach Claims Are Baseless.

To prevail on their fiduciary breach claims, plaintiffs must prove "(1) that defendants are plan fiduciaries; (2) that defendants breached their fiduciary duties; and (3) that their breach caused harm to the plaintiffs." *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007). Assuming that all defendants were fiduciaries (not all were, *see* Part IV) and that the claims are timely (not all are, *see* Part III), plaintiffs cannot show that any defendant breached its fiduciary duties or that the Plan suffered any harm as a result of the alleged breaches.

3

Initially, as earlier argued (docket #s 207, 209), the complaint does not state a claim upon which relief can be granted for its rote recitation of the elements of a claim and other conclusions does nothing to "show" that plaintiffs are entitled to relief. As the Supreme Court again said this week, a complaint must do more than provide "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and must allege facts that make "plausible" (not just "possible") that the plaintiff is entitled to relief. *Ashcroft v. Iqbal*, No. 07-1015, slip op. at 14-15, 2009 WL 1361536, * 13 (May 18, 2009). Here, the complaint does neither.

The undisputed facts also conclusively show that plaintiffs are entitled to no relief. *See Lewis v. Citgo Petroleum Corp.,* 561 F.3d 698, 701 (7th Cir. 2009); Fed. R. Civ. P. 56(c). Plaintiffs essentially claim that the decisions to offer "unitized" company stock funds, to pay Hewitt particular fees, and to allow State Street to retain float were imprudent.[2] Regardless of whether those decisions were imprudent, in order to recover, plaintiffs must prove that these actions harmed the Plan. 29 U.S.C. § 1109(a) (2009) (permitting recovery for loss to the Plan); *Brock v. Robbins*, 830 F.2d 640, 647 (7th Cir. 1987) ("no court has held trustees liable in money damages for imprudent conduct which resulted in no loss or damages to the ERISA plan and no

---

[2] The complaint arguably encompasses a claim based on a violation of the duty of loyalty as well. To prove a claim under the relevant subsections of ERISA §§ 403 or under 404(a)(1)(A)(ii), plaintiffs must first establish that defendants "were not acting with an 'eye single' to the interest of the plan, but in their own interests." *Chao v. Linder*, No. 05 C 3812, 2007 WL 1655254, at *8 (N.D. Ill. May 31, 2007); *see also Metzler v. Graham*, 112 F. 3d 207, 213 (5th Cir. 1997) (no evidence that the fiduciary "ever placed his interests over the plan's interest or ever failed to keep 'an eye single to the interests of the participants and beneficiaries.'") (internal quotations omitted); *Prudential Ins. Co. v. Doe*, 76 F.3d 206, 209 (8th Cir. 1996) (discussing how ERISA §§ 403 and 404(a)(1) are intended to prohibit breaches of fiduciaries' duty of loyalty). Plaintiffs have not pleaded, much less come forward with, any facts showing a conflict of interest. As such, any duty of loyalty claims should be dismissed as well. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (making clear that plaintiffs must come forward with specific evidence to sustain claims). Anything that might remain of plaintiffs' claims under either §§ 403 or 404(a)(1)(A)(ii), fails because both sections focus on whether the fiduciaries' conduct was reasonable. *Brock,* 830 F.2d at 645 (affirming dismissal of duty of loyalty claims because the fiduciaries' conduct was reasonable). As explained in further detail below, the fiduciaries' conduct here unquestionably was reasonable.

4

benefit or gain to the trustee and did not put the assets of the plan at risk."). Here, as plaintiffs cannot show that any alleged fiduciary breach caused harm, their claims must be dismissed.

Even assuming plaintiffs could prove harm, the fiduciaries' decisions were prudent. A fiduciary is required to "act as though [he] were a reasonably prudent businessperson with the interests of all the beneficiaries at heart" at the time the relevant decision was made. *Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006) (quoting *Ameritech Benefit Plan Comm. v. Comm. Workers of America*, 220 F.3d 814, 825 (7th Cir. 2000)); *see also DeBruyne v. Equitable Life Assurance Soc'y of U.S.*, 920 F.2d 457, 465 (7th Cir. 1990) (Section 404(a)(1)(B) "requires prudence, not prescience."). If the decisions reached by the fiduciaries were objectively reasonable, they cannot be challenged for imprudence. *Brock*, 830 F.2d at 645-646 (reasonable fees unassailable under duty of prudence standards); *Wsol v. Fiduciary Mgmt. Assocs.*, No. 99 C 1719, 2000 WL 139463, at *11 (N.D. Ill. Jan. 28, 2000) (finding commissions reasonable as industry standard rates paid) ("*Wsol I*"), *aff'd* 266 F.3d 654, 657-58 (7th Cir. 2001) ("*Wsol II*").

To determine whether a result is objectively reasonable, courts evaluate whether the decision is one similar fiduciaries for similar plans would have made. *See* 29 U.S.C. § 1104 (a)(1)(B) (2009) (fiduciaries must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims"); *Brock*, 830 F.2d at 645 (fees were reasonable in comparison to fees paid by similar fiduciaries for similar services); *Wsol II,* 266 F.3d at 657-58 (commissions reasonable because industry standard rates were paid); *Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337-Civ-JORDAN, 2007 WL 226392, at *24 (S.D. Fl. 2007), *appeal dismissed* March 7, 2008 (11th Cir) (App. Tab 39) (investment management fees reasonable given that they fell in the 25th - 75th percentile of

fees for like investments, and one fund was still reasonable even though it fell in the 90th percentile of fees); *DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756, 785-786 (E.D. Va. 2006) (fiduciary behavior is assessed in light of industry standard) ("*DiFelice II*"), *aff'd* 497 F.3d 410 (4th Cir. 2007) ("*DiFelice III*"). Here, it is undisputed that similar plans contain unitized stock funds, pay similar fees for recordkeeping services, and allow trustees to retain float. Thus, the fiduciaries' conduct was objectively reasonable and cannot give rise to liability.

Recognizing these fundamental weaknesses in their case, plaintiffs offer three so-called experts[3] who resort to precisely the type of hindsight and unsupported analysis that courts have repeatedly found irrelevant. *Jenkins*, 444 F.3d at 926 ("investment losses are not proof that an investor violated his duty of care"); *DeBruyne*, 920 F.2d at 465 ("the ultimate outcome of an investment is not proof of imprudence"). Indeed, plaintiffs' experts do little other than offer their own unsupported, personal opinions on what the fiduciaries should have done with regard to the Kraft and Altria stock funds (the "company stock funds" or "CSFs"), recordkeeping, and float. Plaintiffs cannot avoid summary judgment by offering expert testimony advocating that fiduciaries erred in not taking a specific approach – especially when the fiduciaries acted in the same manner as others in similar circumstances. *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006) (fiduciaries are not required to use any particular method even if another method seems preferable). In sum, plaintiffs' claims fail as a matter of law.

### A.    Plaintiffs' Company Stock Fund Claim Has No Merit.

Bucking the common trend to attack company stock funds by saying they are too risky for retirement plans (*see Hecker,* 556 F.3d at 590-591), plaintiffs argue instead that the CSFs

---

[3] Defendants do not challenge under Fed. R. Evid. R. 702 plaintiffs' expert testimony at this time because their experts' testimony is irrelevant as a matter of law; however, defendants anticipate doing so if any claims survive summary judgment.

improperly contained excess cash and thus *were too conservative*. (Def. L.R. 56.1 Stmt. ("Facts") ¶¶ 49-56.) In addition, despite alleging that the CSFs contained excess cash, plaintiffs have elected to challenge only the basic unitized structure of the CSFs – namely, that in addition to stock they also contained some amount of cash or short-term non-stock investments. (Facts ¶¶ 49-56.) Their claim is supported only by their purported expert who merely opines that the structure of unitized stock funds is inherently imprudent because, he theorizes, the CSFs will never perform the same as an investment in only stock.[4] (Facts ¶¶ 54-57.) This claim is nonsense.

The decision to offer the unitized funds was squarely within BIC's discretion and cannot be questioned given the many benefits of unitization. (Facts ¶¶ 41-47.) In addition, it is commonplace amongst similarly sized plans to offer unitized stock funds, so the decision to do so here was neither unreasonable nor imprudent. (Facts ¶¶ 44, 61-62) Finally, the Plan fully disclosed the structure of and the level of cash in the CSFs, plaintiffs cannot show that the decision to offer unitized funds caused any harm to participants, much less a harm for which any defendant can be held liable. (Facts ¶¶ 48, 17-18, 20-24, 58.)

### 1. The Decision To Offer Unitized Stock Funds Was Squarely Within BIC's Discretion And Is Not Subject To Challenge.

Because the Plan expressly gave BIC the discretion to offer stock funds with a cash component, to prevail, plaintiffs need to prove that the decision to include the cash in the stock funds was arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111-112 (1989); *see also Jenkins v. Price Waterhouse Long Term Disability Plan,* No. 08-1909, 2009 WL 117517, at *10 (7th Cir. May 4, 2009) (where fiduciary is accorded discretion by the

---

[4] Plaintiffs have offered no evidence that the fiduciaries ever maintained an unreasonable amount of cash in the CSFs, *e.g.*, that maintenance of a particular level of cash was imprudent. In fact, plaintiffs' expert expressly disclaimed such an argument. (Facts ¶ ¶ 54-57.)

governing plan document, the court reviews only to determine if the decision was "downright

unreasonable"); *see also Leahy v. Trans Jones, Inc.,* 996 F.2d 136, 140 (6th Cir. 1993) (applying

the arbitrary and capricious standard in reviewing a breach of fiduciary duty claim).  The Plan

specifically states: "The Investment Committee (or an Investment Manager) may, in its sole

discretion, keep any portion of an Investment Fund (or a Subpart thereof) in cash or short-term

investments … for liquidity purposes … ."  (Facts ¶ 43.)  As explained in Part I(A)(2) below,

maintaining a unitized fund is the normal way to operate an employer stock fund and the normal

behavior of similarly situated fiduciaries can hardly be called "downright unreasonable."[5]

### 2. Plaintiffs' CSF Claim Fails Because Maintaining Unitized Stock Funds Is Not Imprudent – Instead It Is The Norm.

To prove that maintaining the CSFs was imprudent, plaintiffs must show that defendants

acted differently than similarly situated fiduciaries.  Yet it is undisputed that the majority of

similar funds are unitized.  (Facts ¶¶ 44, 61-62.)  Plaintiffs' expert freely admits that unitized

funds are the norm both in similar 401(k) plans and in the investment industry as a whole.  (Facts

¶ 44.)  Defendants' expert agrees.  (Facts ¶¶ 61-62.)  A 2008 survey of 436 sponsors of defined

contribution plans found that 70% of the plans with company stock funds used unitized funds.

(*Id*.)  A 2005 survey found that 58% of these funds were unitized.  (*Id*.)  Under plaintiffs' theory,

60% - 70% of 401(k) plan fiduciaries are acting imprudently.  By definition, that cannot be.

ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B)(2009) (defining prudence by reference to the

conduct of similarly situated fiduciaries); *Brock*, 830 F.2d at 645-646 (fees deemed reasonable

---

[5] Offering unitized company stock funds even can be characterized as a matter of fundamental plan design that is not subject to attack under ERISA § 404.  *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 443 (1999) (plan design not a fiduciary action); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (plan amendment not a fiduciary action); *see also Hecker,* 556 F.3d at 586 (selecting the type of investment options is more like a settlor than a fiduciary function).

based upon comparison to fees paid by similar fiduciaries for similar services); *Wsol I*, 2000 WL 139463, at *11 (commissions reasonable as industry standard rates paid).

Unitized stock funds are common because they offer important benefits for participants, such as buffering any loss due to a drop in the underlying stock price (because the value of cash is relatively stable), facilitating quick reinvestment of money withdrawn from the CSFs, and reducing brokerage costs. (Facts ¶¶ 45-47.) There is no reason to believe that maintaining a unitized stock fund was objectively imprudent. (Facts ¶ 61) *see also DiFelice II*, 436 F. Supp. 2d at 785-786 (unitized stock fund with 10% cash is "less risky" than owning company stock).

Plaintiffs' expert opines that there is a better way to operate stock funds, from which plaintiffs will argue that merely maintaining the CSFs is imprudent, ignoring the well-established standards for determining prudent conduct. Plaintiffs' counsel tried and lost on summary judgment the same argument with the same expert in *Taylor v. United Tech.*, No. 06-cv-1494, 2009 WL 535779, at *8-10 (D. Conn. Mar. 3, 2009), *appeal docketed* No. 09-cv-1343, (Apr. 1, 2009). The court found that "[a]lthough an expert may have proposed a better alternative to UTC's unitized stock plan, UTC was not obligated to proceed with that alternative." *Taylor*, 2009 WL 535779, at *9. This Court should do the same.

### 3. The Unitized Nature Of The Company Stock Funds Caused No Harm And Was Fully Disclosed.

Moreover, plaintiffs cannot show that the decision to offer the CSFs caused any harm to the Plan. Plaintiffs offer no evidence that these funds underperformed similar unitized funds, which they would have to do to establish harm. Instead, plaintiffs' expert bases his conclusion that the CSFs underperformed upon a purported comparison between the CSFs and a wholly different type of investment, namely an investment in pure stock. (Facts ¶ 55.)

Further, it is undisputed that the Plan disclosed to participants the unitized nature of the CSFs, the percentage of cash held, and the administrative fees charged. (Facts ¶ 58.) The Plan also provided participants with independent investment advice through a company called Financial Engines. (Facts ¶ 27.) If participants desired a different type of investment, they could have chosen from at least seven other funds offered by the Plan. Plaintiffs cannot show that the fiduciaries caused any loss suffered as a result of the participants' knowing decision to invest in the CSFs. *Hecker*, 556 F.3d at 590 ("Given the numerous investment options, varied in type and fee, neither [defendant] can be held responsible for those choices."); *Kannapien*, 507 F.3d at 639 (plaintiffs must prove that defendants caused the alleged harm to succeed on a breach of fiduciary duty claim); *Brieger v. Tellabs, Inc.,* No. 06 C 1882, 2009 WL 720975, at *1 (N.D. Ill. Mar. 16, 2009) (holding that causation is an element of a breach of fiduciary duty claim).

### 4. ERISA § 404(c) Bars Plaintiffs' CSF Claim.

Finally, it is clear that defendants cannot be held liable for participants' well-informed decisions to invest in the CSFs. ERISA Section 404(c), 29 U.S.C. § 1104(c) (2009), "places responsibility for the success or failure of a participant's investments on his own choices among the portfolio offered in the plan." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 309 (5th Cir. 2007). While § 404(c) establishes various requirements, plaintiffs allege that the defendants did not comply with § 404(c) solely because they failed to disclose sufficient investment information to participants. Compl. ¶¶ 89-99 (docket #170). Accordingly, plaintiffs have waived alternate bases to avoid the defense. *Hecker*, 556 F.3d at 588-589 ("Plaintiffs chose to discuss § 1104(c) extensively in the Complaint and to specify the ways in which the Plans fell short" and are limited to those arguments.); *see also Abbott v. Lockheed Martin Corp.,* No. 06-cv-0701-MJR, 2009 WL 839099, at *12 (S.D. Ill. Mar. 31, 2009) ("Plaintiffs herein chose to anticipate the § 1104(c) defense and thereby waived other defenses."). Plaintiffs thus are limited

10

to arguing that defendants failed to comply with § 404(c) by making inadequate disclosures.[6]

For the reasons discussed in Part II, the Plan's disclosures were adequate; therefore, § 404(c)

bars plaintiffs' CSF claim.[7]  (Facts ¶ 28.)

### B. Plaintiffs' Attack On The Hewitt Fees Is Unwarranted.

Plaintiffs next attack the propriety of the fees paid to Hewitt, the Plan's recordkeeper.

Yet it is undisputed that the Plan suffered no harm as a result of the fees.  (Facts ¶¶ 69-70, 78-79,

88-89, 97-98, 112.)  The support for plaintiffs' claim comes solely from the opinion of an

"expert" who has no knowledge or experience with large 401(k) plan recordkeeping.  (Facts ¶¶

107-13.)  Moreover, Plan fiduciaries engaged in a prudent process to negotiate the fees, and were

pleased with Hewitt's performance.  (Facts ¶¶ 63-98.)  Even assuming it might have been

possible to get lower fees from an other vendor, fiduciaries are not required to seek out the

lowest cost provider.  Instead, they must make informed decisions taking into account the best

interests of the Plan's participants.  That is precisely what happened here.  Plaintiffs' claim fails

as a matter of law.

### 1. The Plan's Overall Fees, Including Hewitt's Fees, Are Unquestionably Reasonable, And Plaintiffs Offer No Evidence of Harm.

As defendants argued in their Rule 12(c) motion, the overall fees charged to Plan

participants (which ranged from .08 to 1.07 percent of assets during the relevant time (Facts ¶ 17;

Docket # 207 at 7)) are unassailably reasonable.  *Hecker,* 556 F.3d at 586.  In an effort to

---

[6] The complaint in this case and the complaint in *Hecker* (App. Tab 38) contain nearly identically sections titled "Defendants' Non-Compliance with §404(c)'s Safe Harbor Requirements and Concealment of Their Fiduciary Breaches," which allege specific ways in which the plans failed to comply with 404(c).  *See* Complaint ¶¶ 89-99; *Hecker,* 556 F.3d at 588.

[7] Defendants have asserted the Section 404(c) defense as to all of plaintiffs' claims, but have limited their Section 404(c) argument for purposes of this motion only to the CSF claim.

circumvent this irrefutable fact, plaintiffs argue, based upon the testimony of Larry Johnson, that the Plan should have paid less for a single component of these fees – recordkeeping.

The Hewitt recordkeeping fees, however, were well within the range paid by similarly sized plans, and thus were presumptively reasonable. *See Wsol I*, 2000 WL 139463, at \*11 (commissions reasonable where industry standard rates were paid). Indeed: (i) Buck, a reputable industry consulting firm, confirmed that the 2000 Hewitt "service agreement provisions and schedules seem to be consistent with the standards of the industry and similar vendors," and further noted that while it could not make a conclusive statement regarding the competitiveness of the fee given the services provided, "[o]n the surface, the fees seem to be fair if Kraft has been satisfied with the level of service;" (ii) the 2003 revised agreement was negotiated using the results of a request for proposal process run by consultant Gildner and Associates and conducted on Kraft's behalf by Philip Morris Companies ("Philip Morris"), Kraft's then parent company, that demonstrated Hewitt's fees were industry standard; and (iii) in the process of negotiating the 2006 agreement, Gildner and Associates utilized its trademarked database of recordkeeping agreements to benchmark the Hewitt fees, again finding them to be reasonable and similar to what could be expected from a competitive bid. (Facts ¶¶ 63-98.) Last but not least, defendants' expert found the Hewitt fees to be reasonable. (Facts ¶¶ 99-105.)

Plaintiffs have presented no contrary evidence. Their expert has nothing to say about how the Plan's fees compare with those of similarly sized plans. He merely opines that Hewitt's fees were unreasonable because they were higher than the fees he thinks his prior company would charge. (Facts ¶ 112.) Yet Johnson's company did not work in the large plan market – it never worked with a plan even half the size of the Plan and never even bid to work on plans of such size. (Facts ¶¶ 107-13.) Nor did his proposed fee include all of the services Hewitt

provided. (Facts ¶ 112.) Johnson's speculative opinion, based on pure guesswork rather than reality, is completely irrelevant. *Wsol I*, 2000 WL 139463, at *3, 11 (fees in question must be analyzed in regard to the average fees paid in the industry); *Dupree*, 2007 WL 226392, at *20, 47 (same).

Even if Johnson's former company, the only alleged comparator plaintiffs put forth, could have performed the same exact recordkeeping services provided by Hewitt for less, that alone would be insufficient to create an issue of material fact. Cheapest is not always best and more expensive does not equal "unreasonable." *See Hecker,* 556 F.3d at 586 ("nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems").[8] Because the Plan is very large and complicated, a record keeper that has experience with jumbo 401(k) plans is essential. (Facts ¶ 71.) It simply would not be in the best interest of participants to select a recordkeeper such as Johnson's company that is cheap but has never supported a large plan.

## 2. The Hewitt Fees Were The Product Of A Prudent Process.

The Hewitt agreements were the product of negotiations and analysis in which consultants and/or bids were utilized to insure they were reasonable. Courts do not second-guess fiduciary decisions reached after a prudent process. *See Jenkins*, 444 F.3d at 924-26 (fiduciary decision not actionable if reached through an appropriate process and in good faith); *DiFelice III*, 497 F.3d at 420 (citing evidence of process in support of a prudence finding).

---

[8] That a fiduciary is not bound to blindly accept the cheapest service provider is further supported by *Firestone Tire & Rubber Co*, 489 U.S. at 112, which held that "[w]here discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion." (quoting Restatement (Second) of Trusts § 187 (1959)); *see also Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 732 (7th Cir. 2006) ("judicial review of the decisions of an ERISA trustee…is deferential unless there is a conflict of interest").

In attempting to attack the Plan's process, plaintiffs' expert complains that defendants did not engage in a competitive request for proposal ("RFP") each time they renegotiated the Hewitt contract. (Facts ¶ 109.) Nothing in ERISA or its regulations, however, requires a fiduciary selecting a service provider to undertake a competitive bidding process. Soliciting bids is just one of the many ways in which a fiduciary can "engage in a reasoned decision-making process." *See DiFelice III*, 497 F.3d at 421 (fiduciaries acted prudently as evidenced by the fact that they met four times per year and retained two independent advisors to opine on the fund at issue); *see also Jenkins,* 444 F.3d at 925 (finding no fiduciary breach when fiduciary monitored the performance of the funds and reviewed written information regarding the funds); *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 722 (6th Cir. 2000) ("that the problem could have been solved by other means does not render [a fiduciary's] decisions imprudent or unreasonable").

By focusing solely on RFPs, plaintiffs ignore other well accepted, reasonable methods used by fiduciaries to select service providers and confirm that fees are reasonable, including benchmarking using industry survey data, retaining an independent third party to benchmark record keeping fees, and retaining an independent third party to review service provider contracts. (Facts ¶¶ 101-103, 111.) With one arguable exception, each time the Plan negotiated a new agreement with Hewitt, it either engaged in or benefitted from a bid process, and/or utilized a reputable consultant to advise on the agreement and fees or benchmark them: 1994 (bid and consultant); 2000 (consultant opinion); 2003 (negotiated based on earlier RFP that was run by a consultant); 2006 (consultant review and benchmarking). (Facts ¶¶ 63, 65-72, 74-98.) The arguable exception was the two year extension signed in 2001, which *lowered fees* based on an understanding reached in the 2000 negotiations (which involved a consultant), and which was renegotiated in 2003 based on an RFP. (Facts ¶¶ 73, 80-86.) Indeed, the process the fiduciaries

14

used not only was prudent but also resulted in *multiple* fee reductions. There can be no question that the fiduciaries, in deciding to renew Hewitt's contract and in negotiating Hewitt's fee, employed a "reasoned decision-making process" that is consistent with industry standards.

Moreover, throughout the class period, the fiduciaries and Plan agents have consistently monitored Hewitt's fees and performance. (Facts ¶¶ 35-40, 63-98.) They have reviewed Hewitt's fees, reviewed survey data that benchmarked Hewitt's fees, and compared notes with other plans. (*Id*.) These facts demonstrate the prudent monitoring of the Hewitt relationship and conclusively defeat plaintiffs' claim.

C.     **The Fiduciaries Did Not Breach Their Fiduciary Duty By Merely Permitting State Street To Retain "Float."**

1.     **Fiduciaries Of Similar Sized Plans Routinely Allow Trustees To Retain Float.**

Plaintiffs, through their expert David Witz, assert that defendants breached their fiduciary duty by "blindly" entering into an agreement that allowed State Street, the Plan trustee, to retain the float – the interest earned while payments from the trust are being processed. (Facts ¶¶ 114-19, 126.) This claim fails as plaintiffs have presented no evidence that similarly sized plans do not have similar float retention agreements. *See Wsol II,* 266 F.3d at 657-58 (evidence that broker's fee was typical defeated breach of fiduciary duty claim). To succeed on their breach of fiduciary duty claim, plaintiffs would need to present evidence that the fiduciaries' practice with regard to float was not a typical practice. *See* Part I *supra* at 3-6. Witz, however, admits that plans he works with allow their trustees to retain the float. (Facts ¶ 130.) He also never claims that similarly sized plans do not allow their plan trustees to retain the float. (*Id.*) Defendants' expert, David Meyers, agrees – it is common for trustees to retain float. (Facts ¶ 129.) Plaintiffs have offered no evidence that any other similar Plan acted differently with regard to float. (Facts ¶¶ 117-18, 124-30.) Therefore, plaintiffs cannot meet their burden of proof.

2. **Plaintiffs Offer No Evidence That The Fiduciaries Overpaid State Street By Agreeing To Let It Keep The Float.**

To prevail on their float claim, plaintiffs would also have to prove harm, *i.e.*, to show that State Street's compensation was excessive because it retained float. Plaintiffs, however, have offered no evidence to show that State Street was overpaid. (Facts ¶¶ 118, 124-26.) In fact, they have not even offered evidence of the amount of float retained by State Street or by similarly sized plans or the fees trustees charge to similarly sized plans that do not have a float retention agreement. Moreover, the undisputed evidence shows that the State Street fee agreement allowed it to keep the float and that retaining the float was not likely to result in a material difference in State Street's compensation. (Facts ¶¶ 121-23.) In addition, both Witz and Meyer agree that the way the Plan paid State Street (per item fees plus the float) was typical. (Facts ¶¶ 129-30.) Absent evidence that this arrangement resulted in State Street receiving unreasonable compensation, plaintiffs cannot prove a breach of fiduciary duty. *See* Part I *supra* at 3-6.

## II. Plaintiffs' Disclosure Claims Are Plainly Meritless.

### A. *Hecker* Confirmed That Plaintiffs' Disclosure Claims Were Unfounded.

Plaintiffs contend that defendants failed to disclose to Plan participants a host of details about plan administration, including a breakdown of fees paid to the Plan's recordkeeper, the trustee's retention of float, and the consideration of alternatives to the unitized structure of the Plan's CSFs. (Docket # 215, Jt. Stmt. at 3.) The Seventh Circuit in *Hecker* specifically held that the exact same disclosure claim did not even state a claim upon which relief can be granted:

> Deere disclosed to the participants the total fees for the funds and directed the participants to the fund prospectuses for information about the fund-level expenses. This was enough. The total fee, not the internal, post-collection distribution of the fee, is the critical figure for someone interested in the cost of including a certain investment in her portfolio and the net value of that investment.

16

*Hecker*, 556 F.3d at 586. The Plan made the same types of disclosures as the plan in *Hecker*. (Facts ¶ 19-27.) Thus, plaintiffs have no viable disclosure claim.

### B.   ERISA Does Not Require The Disclosures Plaintiffs Seek.

As *Hecker* confirmed, ERISA and the relevant regulations require that plan administrators publish specific information regarding fees and plan administration. 29 U.S.C. § 1023(a) and (b)(3) (2009); 29 C.F.R. § 2520.103-1 (2009). Plaintiffs do not allege that defendants violated these well-defined disclosure obligations, and in fact, defendants complied with all existing statutory and regulatory obligations. (Facts ¶¶ 18-26.)

ERISA § 103 requires each plan administrator to publish a summary plan description ("SPD") and to provide an annual report to participants on request. 29 U.S.C. § 1023(a)(1)(B). The annual report must include a financial statement, an actuarial statement (with schedules containing various financial data) and related opinions, and must indicate whether any of the related information is maintained by an insurance carrier, bank or similar institution or the plan sponsor. *Id.*; 29 U.S.C. § 1023(b)(3). The administrator also is required to furnish:

> the name of each person . . . who received directly or indirectly compensation
> from the plan during the preceding year for services rendered to the plan or its
> participants, the amount of such compensation, the nature of his services to the
> plan or its participants, his relationship to the employer of the employees covered
> by the plan, or the employee organization, and any other office, position, or
> employment he holds with any party in interest.

29 U.S.C. § 1023(c)(3). The Plan complied with all of these requirements. (Facts ¶¶ 18-26.) None of these statutory provisions required the Plan to disclose anything more than it did.

Similarly, existing Department of Labor ("DOL") regulations do not require what plaintiffs demand.[9] Each plan is required to file annual Forms 5500, on which it reports 401(k)

---

[9] The DOL's proposed new regulations further demonstrate that the disclosures plaintiffs request here are not yet required. Proposed Revision of Annual Information Return/Reports, 71 Fed. Reg. 41,392, 41,394 (proposed July 21, 2006) (to be codified at 29 C.F.R. § 2520) ("DOL Proposed Revision");

fees paid directly, any fees and commissions paid to brokers and sales agents for insurance products, the names of all service providers who received compensation in excess of $5,000, and total dollar amount of that service provider compensation. 29 C.F.R. § 2520.103-1 (2009). In addition to the Form 5500, each ERISA plan must furnish a summary annual report to participants containing information regarding the total administrative fees and expenses. 29 C.F.R. § 2520.104b-10(d) (2009). The Plan exceeded these requirements by providing not only the ERISA-required disclosures but also providing, through various media, frequent updates about the fees and performance associated with each investment option. (Facts ¶¶ 18-26.)

ERISA's general fiduciary obligation also fails to support plaintiffs' disclosure claim. A fiduciary's "duty of disclosure and reporting" is comprehensively defined in ERISA's Title I. As the Supreme Court recognized: "This may not be a foolproof informational scheme, although it is quite thorough. Either way, it is the scheme that Congress devised. And we do not think Congress intended it to be supplemented by a faraway provision in another part of the statute." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 84 (1995). Thus, "[i]n general, ... a fiduciary fulfills its duty to disclose information if it complies with ERISA's disclosure requirements." *DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 758, 769 (E.D. Va. 2005) ("*DiFelice I*").

Plaintiffs also ignore the fact that "[b]efore such a violation [of the general fiduciary duty] can be found, there must be either an intentionally misleading statement … or a material omission." *See Hecker*, 556 F.3d at 585 (internal citation omitted). In this case, plaintiffs do not claim that defendants affirmatively misrepresented anything or made any material misrepresentation. Instead, they merely allege defendants should have provided additional,

---

*see also Hecker v. Deere & Co.*, 496 F. Supp. 2d 967, 973 (W.D. Wis. 2007) (finding that the DOL regulations do not currently require the disclosure plaintiffs seek), *aff'd* 556 F.3d at 585-586.

immaterial information. As in *Hecker*, "the participants were told about the total fees imposed by the various funds, and the participants were free to direct their dollars to lower-cost funds if that was what they wished to do." *Hecker*, 556 F.3d at 585.[10] Given the extensive and repeated disclosures about the Plan's total fees and the structure of the CSFs, additional details about the Hewitt fee arrangement, the trustee's retention of float, and possible alternatives to a unitized stock fund structure simply are not material. Plaintiffs' disclosure claims fail as a matter of law.

## III. ERISA's Statute of Limitations Bars (Or At Least Limits) Plaintiffs' Claims.

In the absence of evidence of fraud or concealment, "a plaintiff complaining about 'a fiduciary's breach of any responsibility, duty, or obligation under' sections 1101 to 1114 has the *shorter of* six years from the date of the breach to file suit or …three years 'after the earliest date on which the plaintiff had actual knowledge of the breach.'" *Leister v. Dovetail, Inc.*, 546 F.3d 875, 878 (7th Cir. 2008) (emphasis added) (citing ERISA § 413). As plaintiffs have had actual knowledge of the facts giving rise to the CSFs and disclosure claims since at least 2000, those claims are untimely under the three-year statute of limitations. (Facts ¶¶ 17-26, 48, 58.) Plaintiffs' claims regarding the CSFs, disclosures, and Hewitt are also (in whole or part) untimely under the six-year statute of limitations.[11]

### A. ERISA's Three-Year Statute Of Limitations Unquestionably Bars Plaintiffs' Claim Regarding The CSFs And Disclosures.

Under ERISA's three-year "actual knowledge" statute of limitations, a plaintiff need only have "knowledge of the facts or transaction that constituted the alleged violation" – and not

---

[10] In *Hecker* and previous cases, the Seventh Circuit has rejected claims for fiduciary liability based upon the failure to disclose immaterial information. *See, e.g., Nelson v. Hodowal*, 512 F.3d 347, 351 (7th Cir. 2008) ("no regulation or decision requires ERISA fiduciaries to disclose facts that may lead to idiosyncratic reactions").

[11] Defendants are not raising a statute of limitations argument as to the float claim because that claim is limited to the period since August 1, 2003 when State Street was the trustee.

knowledge that those facts support a legal claim – to start the limitations clock under ERISA Section 413(2). In this case, plaintiffs only needed to know of the CSFs' structure and the content of the disclosures in order to raise their claims.[12] *Rush v. Martin Petersen Co*., 83 F.3d 894, 896 (7th Cir. 1996) ("We have defined 'actual knowledge'. . . as knowledge of the 'essential facts of the transaction or conduct constituting the violation,' and have explained that this means it is 'not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality.'") (internal citations omitted); *see also Martin v. Consultants & Adm'rs.*, 966 F.2d 1078, 1086 (7th Cir. 1992) ("the relevant knowledge for triggering the statute of limitations is knowledge of the *facts* or *transaction* that constituted the alleged violation"); *Young v. Gen. Motors Inv. Mgmt. Corp.,* 550 F. Supp. 2d 416, 419 (S.D.N.Y. 2008) (finding to be untimely a claim that defendants breached their fiduciary duties by allowing a 401(k) plan to invest in certain mutual funds with allegedly excessive fees because plaintiffs had all the information necessary to bring their claims well over three years before they filed suit), *aff'd* No. 08-1532-cv(L), 08-1534-cv(con), 2009 WL 1230350 (2d Cir. May 6, 2009).

Here, the Plan routinely disclosed to all participants the CSFs' unitized nature. (Facts ¶¶ 18-23, 48, 58.) Similarly, the Plan routinely made standard disclosures to participants, which plaintiffs now allege were inadequate under ERISA's general fiduciary duties. (Facts ¶¶ 18-26.) Thus, there is no question that plaintiffs had "actual knowledge" of the CSFs' structure and the content of the Plan's disclosures – the facts or transactions upon which their claims are based – more than three years before filing suit.

Moreover, in determining whether plaintiffs had actual knowledge, it is irrelevant whether plaintiffs actually looked at the disclosures. *Edes v. Verizon Commun's, Inc.*, 417 F.3d

---

[12] Although the Plan made adequate disclosures regarding the Plan fees, defendants do not seek summary judgment based upon plaintiffs' "actual knowledge" of the Hewitt fee.

133, 142 (1st Cir. 2005) ("Congress [did not intend] the actual knowledge requirement to excuse willful blindness by a plaintiff."); *Reeves v. Airlite Plastics, Co*., No. 8:04CV56, 2005 WL 23467, at *5-6 (D. Neb. Sept. 26, 2005) (plaintiff who deliberately refused to look at his account statements could not disavow actual knowledge of a fiduciary breach that would have been apparent from the statements).  Allowing plaintiffs to avoid the time bar based upon professed ignorance of widely-distributed plan disclosures and content on an internet site each named plaintiff accessed (Facts ¶¶ 18-26) "would effectively provide an end run around ERISA's limitations requirement," which the Court should not allow.  *Young,* 550 F. Supp. 2d at 419, n.3. Given that plaintiffs knew the facts giving rise to their CSF and disclosure claims more than three years before filing suit, the Court should dismiss those claims.

> **B.**     **Plaintiffs' CSF, Disclosure, And Hewitt Claims Are Untimely (In Whole Or Part) Under The Six-Year Statute Of Limitations.**

ERISA's six-year statute of limitations runs from the date of "the last action which constituted a part of" the alleged breach, regardless of when the participant discovers the breach. *See Librizzi v. Children's Mem. Med. Ctr*., 134 F.3d 1302, 1307 (7th Cir. 1998); *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1225 (N.D. Cal. 2008) ("Section 413(1) bars claims for breach of fiduciary duty if a party does not file an action within six years of the date of the alleged violation, regardless of when the participant actually learns of the breach."), *appeal docketed*, No. 08-16980, (Sept. 8, 2008).  The allegedly imprudent Hewitt relationship, the unitized nature of the CSFs, and the content of the disclosures pre-date October 16, 2000, so claims based upon them are time-barred.  (Facts ¶¶ 18-26, 41, 63.)

Unquestionably, any claims as to the 1995 or 2000 Hewitt agreements, which were entered before October 16, 2000, are untimely.  (Facts ¶¶ 63, 72.)  The last act constituting any alleged breach would have been approving those contracts, which happened more than six years

before plaintiffs filed suit. *Leister*, 546 F.3d at 880 (date of violation is relevant date for starting six-year clock); *Librizzi*, 134 F.3d at 1307 (the six-year period is "measured from the violation").

Similarly, the Plan has offered at least one unitized CSF as an investment option since at least 1995. (Facts ¶ 41.) Plaintiffs' sole claim as to the CSFs is that it violated ERISA for the Plan to offer unitized funds. As the Plan offered such a fund for more than 11 years before the plaintiffs filed their complaint, the CSF claim is plainly untimely.

Finally, the Plan has disclosed the same type of information regarding the Plan's fees and investment options through the methods described in Section II *supra* since at least 1995 – 11 years before plaintiffs filed suit. Plaintiffs' claim that the Plan violated ERISA's general fiduciary duty by not disclosing more information is clearly untimely.

Alternatively, and at a minimum, the Court should concern itself only with conduct that happened after October 16, 2000 (*i.e.,* within the six years before the suit was filed). *See Abbott*, 2009 WL 839099, at *6-7 (finding that plaintiffs' claims could not relate to actions that took place more than six years before the filing of their complaint).

### C. Plaintiffs Cannot Now Claim Fraud Or Concealment.

The only way plaintiffs could avoid ERISA's statute of limitations would be to prove that defendants engaged in fraud or concealment with regard to the actions at issue in the complaint. 29 U.S.C. § 1113(2) (2009). Plaintiffs offer no such evidence.

First, to take advantage of this tolling, plaintiffs must allege that defendants engaged in fraud or concealment with the specificity required by Fed. R. Civ. P. 9(b). Fed. R. Civ. P. 9(b); *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 203-205 (3d Cir. 2006) (plaintiffs "were well-positioned to know, upon reviewing their own past experiences, whether they had any communications from [defendants] that prevented or diverted them from discovering the alleged breach. To the extent that any misleading communication did occur, it should have been pled in

22

the complaint …"); *Abbott,* 2009 WL 839099, at *6-7 ("a party must state with particularity the circumstances constituting fraud or mistake") (quoting Fed. R. Civ. P. 9(b)); *see also Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990) (plaintiffs must identify "steps taken by [Defendants] to hide the fact of the breach.").[13] Here, plaintiffs make no such allegations in their complaint, which is fatal to any claim of fraud or concealment.

Second, even if their failure to plead fraud or concealment with specificity could be excused, plaintiffs would still have to prove that defendants "'made false misrepresentations with the intent to defraud the plaintiffs' or took 'affirmative steps' to conceal [their] own alleged breaches." *See Kanawi,* 590 F. Supp. 2d at 1225-1226 (quoting *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1401 (9th Cir. 1995)); *see also Abbott,* 2009 WL 839099, at *7 (granting summary judgment with respect to the fraud or concealment issue because plaintiffs had not even alleged fraud or concealment). Indeed, plaintiffs must show defendants took affirmative steps to conceal the alleged fiduciary breaches. *Ranke*, 436 F.3d at 204 ("an ERISA fiduciary … [must] have taken affirmative steps to hide an alleged breach of duty from a beneficiary in order for the 'fraud or concealment' exception to apply.") Plaintiffs can offer no such evidence, so the Court should not toll the statute of limitations.

## IV.   The Court Should Dismiss Claims Against Non-Fiduciaries.

"[A] claim for breach of fiduciary duty lies only against an individual or entity that qualifies as an ERISA 'fiduciary.'" *Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*, 128

---

[13] Under Rule 9(b), plaintiffs must specify the time, place, speaker, and content of the fraudulent statements, and must specify how those events show intent to defraud the plaintiff. *See, e.g., Pugh v. Tribune Co*., 521 F.3d 686, 699 (7th Cir. 2008) (if plaintiff had pleaded fraud with regard to his breach of fiduciary duty claim, he would have been required to plead with specificity); *Lachmund v. ADM Investor Servs*., 191 F.3d 777, 782 (7th Cir. 1999) (a plaintiff must plead the who, what, when and where of the alleged fraudulent concealment); *Rogers v. Baxter Int'l Inc*., 417 F. Supp. 2d 974, 984 (N.D. Ill. 2006) (plaintiff must plead with specificity for ERISA claims based on allegedly fraudulent conduct), *aff'd* 521 F.3d 702 (7th Cir. 2008).

F.3d 541, 547 (7th Cir. 1997). ERISA defines "fiduciary" in functional terms. *See* 29 U.S.C. §

1002(21) (2009). Consequently, "[i]n assessing whether a person can be held liable for breach of

fiduciary duty, a court must ask whether [that] person is a fiduciary with respect to the particular

activity at issue." *Baker v. Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004) (internal citation

omitted). *Hecker* confirmed that not every person who "plays a role" in the administration of an

employee benefit plan is a fiduciary. *Hecker*, 556 F.3d at 584 ("There is an important difference

between an assertion that a firm exercised 'final authority' over the choice of funds, on the one

hand, and an assertion that a firm simply 'played a role' in the process, on the other hand.")

(internal citation omitted). ERISA § 409(b) also makes clear that a person cannot be held liable

for matters that took place before he became a fiduciary. 29 U.S.C. § 1109(b) (2009); *Beauchem*

*v. Rockford Prods. Corp.,* No. 01 C 50134, 2004 WL 432328, at *3 (N.D. Ill. Feb. 6, 2004)

("ERISA expressly states that no fiduciary shall be liable for a breach committed before he

became a fiduciary or after he ceased to be one.") Accordingly, plaintiffs' claims can only lie

against the defendants who had responsibility for the matters at issue at the time the relevant

decisions were made.

It is undisputed that Kraft (as an entity) never exercised, let alone possessed, any final

decision-making authority over the content of Plan disclosures, the administration of the CSFs,

the selection and payment of the Plan's recordkeeper, or State Street's compensation. (Facts ¶¶

6-14.) Similarly, KFAC never possessed or exercised authority over the CSFs or State Street's

compensation. (*Id.*) Also, BIC never possessed or exercised authority over the disclosures or the

Hewitt relationship or over anything at issue before its creation in January 2004.[14] (*Id.*) Kraft,

---

[14] BIC and KFAC, as entities, are not proper defendants. *See Tatum v. R.J. Reynolds Tobacco Co.*,
No. 1:02 CV 00373, 2007 WL 1612580, at *6-8 (M.D.N.C. May 31, 2007) (committee cannot be
sued for breach of fiduciary duty under ERISA).

KFAC, and BIC thus had no fiduciary responsibility for those matters and the Court should dismiss those claims against them.  Further, defendants May, Dollive, Firestone, and King cannot be held liable for events that took place before they joined BIC or after they ceased to be on BIC. 29 U.S.C. § 1109(b) (2009).  (Facts ¶ 12.)

**CONCLUSION**

The Court should grant the defendants' motion for summary judgment, should enter judgment for defendants, and should award defendants their attorneys' fees and costs.

**DATED:  May 22, 2009**

Respectfully submitted,

KRAFT FOODS GLOBAL, INC.; KRAFT FOODS GLOBAL, INC. ADMINISTRATIVE COMMITTEE; BENEFITS INVESTMENT COMMITTEE; JIM DOLLIVE; KAREN MAY; MARC FIRESTONE; and PAMELA KING

*/s/Ronald J. Kramer*
One of Their Attorneys

Ronald J. Kramer (rkramer@seyfarth.com)
Ian H. Morrison (imorrison@seyfarth.com)
Amanda A. Sonneborn (asonneborn@seyfarth.com)
Sam Schwartz-Fenwick (sschwartz@seyfarth.com)
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, IL 60603
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on May 22, 2009, he caused a copy of this

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT to be presented to the

Clerk of the Court for filing and uploading to the CM/ECF system, which will send notification

of such filing to the following CM/ECF registrants:

>Jerome Schlichter (jschlichter@uselaws.com)
>Nelson G. Wolff (nwolff@uselaws.com)
>Troy A. Doles (tdoles@uselaws.com)
>Jason P. Kelly (jkelly@uselaws.com)
>Schlichter Bogard & Denton LLP
>100 S. 4th Street, Suite 900
>St. Louis, Missouri 63102
>(314) 621-6115
>
>Thomas R. Meites (tmeites@mmbmlaw.com)
>Meites, Mulder, Mollica & Glink
>20 S. Clark Street, Suite 1500
>Chicago, Illinois 60603
>(312) 263-0272

>/s/ *Ronald J. Kramer*
>Ronald J. Kramer