# EXHIBIT 1

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
 2

 3   GERALD GEORGE, et al          )
                                   )
 4                 Plaintiffs,     )
                                   )
 5        -vs-                     ) Case No. 07-CV-1713
                                   )
 6   KRAFT FOODS GLOBAL, INC., et al, )
                                   )
 7              Defendants.        )
                                   )
 8   ------------------------------)
     GEORGE PIRO, et al,           )
 9                                 )
                   Plaintiffs,     )
10                                 )
          -vs-                     ) Case No. 07-CV-1954
11                                 )
     KRAFT FOODS GLOBAL, INC., et al, )
12                                 )
                Defendants.        )
13

14
              DEPOSITION OF GERALD F. GEORGE
15            TAKEN BY MR. RONALD J. KRAMER
              ON BEHALF OF THE DEFENDANTS
16                   AUGUST 29, 2007

17

18

19            REPORTED BY DIANE E. DORSEY

20            CERTIFIED COURT REPORTER

21

22

23

24

25
```

1      A.   Correct?

2      Q.   All right. And that was an assumption on
3 your part?

4      MR. ARMSTRONG: Object to the
5 mischaracterization of his prior testimony.

6      A.   No. It was kind of like what was implied
7 or stated.

8      Going back, you know, this was a perk that
9 the Company was giving us, a big, you know, at-a-boy to
10 take care of the Company, the people, the family type
11 thing, you know. This was a big perk that the Company
12 was doing for us.

13      I mean, why else would they take away our
14 retirement that some of us people have been with for a
15 long time.

16      Of course, nobody objected to it, because
17 it was a wonderful deal.

18      Q   (By Mr. Kramer) All right. Well, sitting
19 here today, I mean, to the extent of your knowledge,
20 do you believe that you were better off under the
21 401(K) Plan?

22      A.   You know, it's hard to say, because I can't
23 measure back what I would have had if I would have just
24 had the retirement that they were offering.

25      Q.   Okay. So, sitting here today, you don't

GERALD F. GEORGE,  AUGUST 29, 2007

Page 83

1   the 401(K) Plan?
2        A.   No, I do not know specifically, but
3   generally speaking, everything that Kraft did, they put
4   on overheads.
5        Q.   All right.  Power Pointes, I take it?
6        A.   Yes, that, too.
7        Q.   Sitting here today, do you have any
8   specific recollection as to exactly what was told to
9   people about the 401(K) Plan?
10            MR. ARMSTRONG:  Objection, asked and
11  answered.
12            Go ahead.
13       A.   Again, going back to, you know, what I, you
14  know, already stated, you know, that it was a wonderful
15  thing that the Company was doing for us to give us this
16  perk, and that it would secure us much better in our
17  golden years, to the future, and it was, say, a
18  wonderful thing.  Retirement was going away, and this
19  was the only option we had.
20       Q    (By Mr. Kramer) All right.  Anything else
21  that you can recall?
22       A.   You know, you know, feeling really good
23  about it, and thinking, you know, the Company had
24  stepped up and given us something that was really nice.
25       Q.   Did anyone specifically tell you -- I think

1       A.    Absolutely not.

2       Q.    You considered it too risky?

3       A.    Especially with Phillip Morris at that time

4 period. Because of the lawsuits, stock went down below

5 thirty at the time.

6       Q.    Okay. Do you consider yourself to be a

7 sophisticated investor?

8       A.    No. I have to work at it.

9       Q.    All right. I show you what we've marked as

10 George Exhibit 7. Do you recognize this document?

11       A.    Yes.

12       Q.    Can you tell me what it is?

13       A.    It's the complaint filed, the initial

14 complaint filed.

15       Q.    Okay. And do you recall when it is you

16 first saw this document?

17       A.    Not exactly, no.

18       Q.    All right. This document was filed on

19 October 16 of 2006.

20       A.    Okay.

21       Q.    Do you remember whether or not you saw it

22 before or after it was filed?

23       A.    I saw it shortly after it was filed, I

24 believe.

25       Q.    Did you see any drafts before it was filed?

GERALD F. GEORGE, AUGUST 29, 2007

Page 105

1    A.   I believe I spoke on the phone about it.
2    Q.   And I don't want --
3    A.   No.
4    Q.   Okay. Did you read this document?
5    A.   Yes.
6    Q.   All right. Are you aware that the
7  complaint does not allege that Kraft shouldn't have been
8  charging any fees at all?
9         MR. ARMSTRONG: Object to the form of the
10 question.
11   A.   Yeah. I'm not sure how to answer that.
12 You know, Kraft, I guess, should have charged fees? I
13 don't know. No, I'm not aware that it didn't say that.
14   Q    (By Mr. Kramer) Okay. Are you aware that
15 the complaint alleges that the fees that Kraft did
16 charge were unreasonable?
17   A.   Yes.
18   Q.   All right. Are you aware -- Were you
19 aware -- Strike that.
20        Are you aware that the complaint raises
21 issues with regards to the Stock Funds?
22   A.   Meaning the fees in the Stock Funds?
23   Q.   No. Regarding how the stock -- The fact
24 that there is cash in the Stock Funds in addition to
25 stock?

1    MR. ARMSTRONG: Let me insert an objection
2 here. To the extent that you can answer that question
3 outside of conversations that you had with attorneys
4 regarding the complaint, go ahead and answer.
5    A.  Yes.
6    Q.  (By Mr. Kramer) You were aware of
7 that?
8    A.  Based on what I read, yes.
9    Q.  All right. And even though -- And you're
10 okay with that, even though you don't have any issues
11 with that?
12    A.  Yes.
13    Q.  All right. Do you have any basis for
14 believing it is inappropriate for the Kraft Stock and
15 the Altria Stock Fund to have a small amount of cash?
16    MR. ARMSTRONG: Objection to the form of
17 the question.
18    A.  No, I don't have any objection.
19    Q.  (By Mr. Kramer) All right. And do you
20 have any basis for believing that is somehow
21 inappropriate?
22    MR. ARMSTRONG: Object to the form of the
23 question, again.
24    A.  No.
25    Q.  (By Mr. Kramer) All right. I take it