**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

GERALD GEORGE, et al.,      )
     )
          Plaintiffs,      )     Case Nos. 1:08-cv-3799; 1:07-cv-1713
     )
       v.      )     Magistrate Judge Nolan
     )
KRAFT FOODS GLOBAL, INC., et al.,      )
     )
          Defendants.      )

**PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF
EXPENSES AND FOR CASE CONTRIBUTION AWARDS FOR NAMED PLAINTIFFS**

**SCHLICHTER, BOGARD & DENTON**
Jerome J. Schlichter
Nelson G. Wolff
Troy A. Doles
Jason P. Kelly
100 South Fourth Street, Suite 900
St. Louis, MO 63102
Tel: 314-621-6115
jschlichter@uselaws.com
*Lead Counsel for Plaintiffs*

*and*

**MEITES, MULDER, & GLINK**
Thomas R. Meites
321 S. Plymouth Court, Suite 1250
Chicago, IL 60604
Tel: (312) 263-0272
tmeites@mmmglaw.com
*Local Counsel for Plaintiffs*

# TABLE OF CONTENTS

I.      Introduction ......................................................................................................... 1

II.     The Complex History of 401(k) Fee Litigation and Settlement of *George v. Kraft* ..... 3

        A.      The Substantial Affirmative Relief is Highly Valuable to the Class. ............... 6

        B.      Estimated Value of Non-Monetary Relief ........................................................ 8

III.    Awarding Attorneys' Fees Based on a Percentage of the Plan's Recovery is Consistent with Seventh Circuit Law .................................................................. 9

IV.     The Amount of Counsel's Requested Fee is Consistent With Seventh Circuit Authority ............................................................................................................ 11

        A.      The Market for Attorneys' Fees in this Litigation is a Contingency Fee Based on a Percentage of the Recovery ..................................................... 12

        B.      Class Counsel's Request is Consistent with the Market for its Services at the Inception of the Litigation ....................................................................... 13

        C.      Market Rate Determination ........................................................................ 15

                1.      Actual Fee Contracts ...................................................................... 15

                2.      Information from Other Cases ........................................................ 16

                3.      The Quality of Class Counsel's Service was High................................ 19

        D.      A Lodestar Cross-Check Supports Class Counsel's Fee Request. ................. 23

V.      Approval of Costs ............................................................................................. 25

VI.     Named Plaintiff Awards ................................................................................... 26

VII.    Conclusion ........................................................................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*Bakalor v. Integrated Commc'n Network, Inc.,* 96-2021-CIV-KING (S.D. Fla. 1997) .............. 19

*Bessey v. Packerland Plainwell, Inc.,* No. 4:06-cv-95, 2007 WL 3173972 (W.D. Mich. Oct. 26, 2007) ...................................................................................................... 17

*Blanchard v. Bergeron*, 489 U.S. 87 (1989) ................................................................. 6

*Boeing Co. v. VanGemert*, 444 U.S. 472 (1980).................................................... 2, 9

*Bruner v. Sprint/United Mgmt. Co.,* 2009 WL 2058762 (D. Kan. Jul. 14, 2009)......................... 17

*Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) ........................ 11

*Cook v. McCarron*, 1997 WL 47448 (N.D. Ill. 1997) .................................................. 27

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ..................................................... 27

*Cullen v. Whitman Med. Corp.,* 197 F.R.D. 136 (E.D. Pa. 2000) ...................................... 17

*Eshelman v. Client Services, Inc.*, Case No. 0822-CC-00763 (22d Cir. Mo.)............................ 24

*Faircloth v. Certified Fin. Inc.,* 2001 WL 527489 (E.D. La. May 16, 2001) ........................... 18

*Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560 (7th Cir. 1994)................................. 2, 9, 10

*Gaskill v. Gordon,* 160 F.3d 361 (7th Cir. 1998)................................................... 9, 10, 16

*Goldsmith v. Tech. Solutions Co.*, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)....................... 16

*Gutter v. E.I. Dupont De Nemours & Co.,* No. 95-2152-CIV-GOLD (S.D. Fla. May 30, 2003) ....................................................................................... 18

*Hecker v. Deere*, 556 F.3d 575 (7th Cir. 2009) .......................................... 5, 14, 22, 26

*In re Ampicillin Antitrust Litig.,* 526 F. Supp. 494 (D.D.C. 1981) .................................. 16

*In re Busporine Antitrust Litig.,* No. 01-MD-1410 (S.D.N.Y. Apr. 11, 2003) ........................... 18

*In re Corel Corp. Inc. Sec. Litig.,* 293 F. Supp. 2d 484 (E.D. Pa. 2003).............................. 18

*In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990)...... 27

*In re Employee Benefit Plans Sec. Litig.,* 1993 WL 330595 (D. Minn. Jun. 2, 1993)................. 19

*In re Eng'g Animation Sec. Litig.,* 203 F.R.D. 417 (S.D. Iowa 2001)........................ 18

*In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) ........................ 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) .................................................................................. 11

*In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403 (S.D. Tex. 1999) ................................. 18

*In re Managed Care Litig. (Aetna),* 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) .................... 18

*In re Managed Care Litig. (Cigna),* 00-1334-MDL-MORENO (S.D. Fla. Feb. 2, 2004)............ 18

*In re Marsh ERISA Litig.*, 2010 WL 451028 (S.D.N.Y. Jan 29, 2010) ........................ 16

*In re Medtronic Inc. Implantable Defibrillator Prod. Liab. Litig.*, 2008 WL 4861694 (D. Minn. Oct. 20, 2008)..................................................................................................... 17

*In re Neoware Sys., Inc. Sec. Litig.,* 2000 WL 1100871 (E.D. Pa. July 27, 2000) ....................... 18

*In re Pac. Enters. Sec. Litig.,* 47 F.3d 373 (9th Cir. 1995) ............................................................ 19

*In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361 (E.D. Pa. Apr.18, 2005) ...................... 17

*In re Ready-Mixed Concrete Antitrust Litig.*, No. 05-0979, Doc. 732 (S.D. Ind. Mar. 31, 2009) .................................................................................................................... 10, 12

*In re Relafen Antitrust Litig.,* No. 01-12239-WGY (D. Mass. Apr. 9, 2004).............................. 17

*In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808 (D. N.J. Nov. 9, 2005)..... 17

*In re Safety Components Int'l, Inc. Sec. Litig.*, 166 F. Supp. 2d 72 (D.N.J. 2001)....................... 18

*In re Synthroid Marketing Litig.*, 264 F.3d 712 (7th Cir. 2001) ......................................... 2, 11, 13

*In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317-MDL-SEITZ (S.D. Fla. Apr. 19, 2005) ............................................................................................................... 17

*In re Texas Prison Litig.*, 191 F.R.D. 164 (W.D. Mo. 1999)........................................................ 17

*In re Trans Union Corp. Privacy Litig.*, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009)................. 10

*In re Unisys Corp. Sec. Litig.*, 2001 WL 1563721 (E.D. Pa. Dec. 6, 2001) ................................ 18

*In re US Bancorp Litig.*, 291 F.3d 1035 (8th Cir. 2002)............................................................... 18

*In re Vitamins Antitrust Litig.,* 2001 WL 34312839 (D.D.C. July 16, 2001) .............................. 18

*Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D. Cal. 2008) ........................................................ 21

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986) ................................................................. 2, 12, 13

*Kogan v. AIMCO Fox Chase, L.P.,* 193 F.R.D. 496 (E.D. Mich. 2000) ...................................... 18

*Loomis v. Exelon Corp.*, 2007 WL 2981951 (N.D. Ill. June 26, 2007) ........................................ 21

*Martin v. Caterpillar, Inc.*, 2010 WL 3210448 (C.D.Ill. Aug. 12, 2010)........................ 21, 22, 26

*Martin v. Caterpillar, Inc.*, No. 07-1009, Doc. 197 (C.D. Ill.) (J. McDade)................... 16, 22, 24

*Martin v. Survivair Respirators, Inc.,* No. 22042-0883 (22d Cir. Mo. June 30, 2010) ............... 23

*Matter of Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992)...................................... 12, 25

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970)................................................................. 2, 25

*Miltland Raleigh-Durham v. Myers,* 840 F.Supp. 235 (S.D.N.Y.1993)....................................... 25

*Mister v. Illinois Central Golf Railroad*, Case No., 81-3006 (S.D. Ill.) ...................................... 23

*Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399 (7th Cir. 2000)............................................. 12

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370 (D. Minn. 1985).......................................... 19

*Perry v. Nat'l City Bank,* No. 05-CV-891-DRH-PMF (S.D. Ill. Mar. 3, 2008) .......................... 17

*Retsky Family Limited P'ship v. Price Waterhouse LLP*, 2001 WL 1568856 (N.D. Ill. 2001) ..................................................................................................................... 16

*Skelton v. General Motors Corp.*, 860 F.2d 250 (7th Cir. 1988) .................................................. 11

*Smith v. Dominion Bridge Corp.*, 2007 WL 1101272 (E.D. Pa. Apr. 11, 2007) ......................... 17

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) .................................................. 10

*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) ........................................................... 15

*Taylor v. United Tech. Corp.*, 2008 WL 2333120  (D. Conn. June 3, 2008) ............................... 21

*Trustees v. Greenough,* 105 U.S. 527 (1882) ............................................................................. 25

*Tussey  v. ABB Inc.*, 2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) ........................................ 3, 21

*Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291 (11th Cir. 1999) ..................................... 19

*Wilfong v. Rent-A-Center*, Case No. 00-680-DRH (S.D. Ill. 2002) ........................................... 23

*Will v. General Dynamics*, 2010 WL 4818174 (S.D.Ill. Nov. 22, 2010) ........ 10, 16, 21, 22, 24, 27

*Williams v. General Elec. Capital Auto Lease*, 1995 WL 765266 (N.D. Ill. 1995) .................... 10

**Statutes**

ERISA §404(a).............................................................................................................................. 5

**Other Authorities**

Alba Conte, 1 ATTORNEY FEE AWARDS §2:7 (3d ed. Oct. 2009 update)..................................... 10

*Employers on the hook for 401(k) fees*, PHILADELPHIA BUSINESS JOURNAL, Sept. 3, 2010 .......... 4

Groom Law Group, 401(K) FEE LITIGATION OCTOBER 2011 UPDATE........................................... 3

John J. Coffee, Jr., *Rescuing the Private Attorney General: Why the Model of the Lawyers
   as Bounty Hunter is Not Working*, 42 MD. L. REV. 215 (1983) ................................................ 20

Katheyn L. Moore, *401(k) Plan Fees, A Trifecta of Governmental Oversight*, NEW YORK
   UNIVERSITY REVIEW OF EMPLOYEE BENEFITS AND EXECUTIVE COMPENSATION 2009,
   (Alvin D. Lurie, ed.), Chapter 17 ............................................................................................ 4

MANUAL FOR COMPLEX LITIGATION, FOURTH, §21.71 (2004) ...................................................... 6

PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION, §3.13;................................................. 6, 11

Steve J. MacGillivray & Eric F. Gladbach, *Implementing Preventative Measures: 401(k)
   Excessive Fee Litigation*, IN HOUSE DEFENSE QUARTERLY, at 10 (Fall, 2007) ......................... 4

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An
   Empirical Study*, J. OF EMPIRICAL LEGAL STUDIES, Vol. 1, Issue 1 (March 2004)................... 13

*Third Circuit Task Force Report*, 108 F.R.D. 237, 246-49 (1985).............................................. 11

**Rules**

Fed.R.Civ.P. 23(h) ...................................................................................................................... 25

## I. Introduction

This litigation has gone on for more than five years. The Class battled a well-funded and well-represented adversary in two separate cases, both involving complex allegations and uncertain law. In one action, the Class largely succeeded in reversing a grant of summary judgment to Defendants; in another, the Class largely defeated Defendants' summary judgment motion. Both cases were proceeding toward trial when they were settled.

The significant settlement of the two *George v. Kraft* cases, which includes $9,500,000 in monetary relief to the Plan and highly valuable affirmative relief, represents the culmination of over seven years of research, investigation, evaluation, and litigation by Class Counsel, and at very significant risk. All current and future participants in the Plan will benefit from non-monetary relief, which includes, among other things, Kraft's agreement to continue to or to implement: state-of-the-art fee and expense disclosures to participants; less costly, market-priced recordkeeping services; and other steps which plaintiffs assert will control investment expenses. Further, over 81,000 current and former participants, dating back to October 2000, are eligible for monetary recovery, most of whom will not have to do anything to receive their award, which they can receive tax-deferred directly into their plan account or other qualified retirement account, such as an IRA.

In light of the risks and uncertainty in all ERISA litigation, and ERISA 401(k) Fee Litigation in particular, Class Counsel agreed to represent Gerald George, Cathy Dunn, Andrew Swanson, and Timothy Streff on a contingency basis for one-third of any recovery, plus costs. This is a typical arrangement in the market for professionals with the experience, competence and resources to handle litigation in more settled areas of law involving less uncertainty and less risk than that of this case. Tellingly, at the time Plaintiffs retained Class Counsel, no other firm

was willing to accept such a daunting challenge on this case at *any* rate, and virtually no cases had even been filed against large 401(k) plan sponsors involving claims of excessive fees and prohibited transactions under ERISA.

The Settlement Agreement in this case provides for Plaintiffs' attorneys' fees to be paid out of the common fund created by the settlement. Settlement Agreement ("S.A.") ¶¶ 5.7, 7.1. In such situations, the plaintiffs' attorneys may petition the court for an award of fees out of that fund. *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970); *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980). Ultimately, the District Court must determine the rate for Class Counsel's services by "estimat[ing] the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). "When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate'." *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986).

This case is unique in that Class Counsel have been virtually alone in their willingness to fully pursue ERISA breach of fiduciary duty claims for the types of breaches at issue in this litigation. No other law firm in the United States has pursued such cases to the extent Class Counsel have. But for Class Counsel's determined prosecution of this action, the Kraft 401(k) Plan and its participants would not have obtained any recovery because it is extremely unlikely that they would have found other adequate counsel to take on the burden and risk of these claims.

Class Counsel's fee request represents one-third of the Plan's monetary recovery, 19% of the lowest estimate of the value of the settlement and only 8% of the potential benefit to the Class. This one-third fee is the same as that agreed to by the Named Plaintiffs in their

contingency fee agreement with Class Counsel and is consistent with market rates in more established and less undesirable areas of the law.

## II.    The Complex History of 401(k) Fee Litigation and Settlement of *George v. Kraft*

On October 16, 2006, following a long period of extensive research and investigation by Class Counsel, and further support from plan participants Gerald George, Cathy Dunn, Andrew Swanson and Timothy Streff, Class Counsel filed their original complaint alleging breaches of fiduciary duty and prohibited transactions against Kraft with respect to their obligations to their employees' 401(k) plan. According to an ERISA defense firm report, this case and the others filed by Class Counsel created a new category of actions, called "401(k) Fee Litigation"[1], and the Founding Partner of Schlichter, Bogard & Denton, Jerome Schlichter, was named the Third Most Influential Person by 401(k) Wire, a leading publication for the 401(k) industry. Prior to these cases, and continuing to the present, no firm has devoted the resources or been willing to bring such actions in this relatively undeveloped area of law. Theado Decl. ¶ 14. Further, the Department of Labor, to the knowledge of a long-time ERISA practitioner, had never brought such a claim. *Id.*

Class Counsel undertook their representation of the Named Plaintiffs and the Class fully expecting to litigate each and every one of these cases against well-funded defendants and capable defense counsel. Of the 100 largest law firms in the United States, at least eight have represented one or more of these defendants in Class Counsel's 401(k) Fee Litigation, including Seyfarth & Shaw, lead counsel for Defendants in these cases.[2]  Against these formidable adversaries, Class Counsel have tried the first full trial of a 401(k) fee case in *Tussey v. ABB* in

---

[1] *See, e.g.*, Groom Law Group, 401(K) FEE LITIGATION OCTOBER 2011 UPDATE, *available at* http://www.groom.com/resources-631.html.
[2] These firms include: Morgan, Lewis & Bockius; O'Melveny & Myers; McDermott Will & Emery;  Jenner & Block; Paul, Hastings, Janofsky & Walker; Bryan Cave; Seyfarth Shaw; Latham  & Watkins and Goodwin Procter.

the Western District of Missouri. These cases are widely considered to have led to numerous large employers choosing to obtain reduced fees and move their retirement plans into cheaper investment options and led to the Department of Labor to require enhanced disclosure of fees and expenses beginning this year. *See, e.g.,* Steve J. MacGillivray & Eric F. Gladbach, *Implementing Preventative Measures: 401(k) Excessive Fee Litigation*, IN HOUSE DEFENSE QUARTERLY, at 10 (Fall, 2007); *Employers on the hook for 401(k) fees*, PHILADELPHIA BUSINESS JOURNAL, Sept. 3, 2010. Katheyn L. Moore, *401(k) Plan Fees, A Trifecta of Governmental Oversight*, NEW YORK UNIVERSITY REVIEW OF EMPLOYEE BENEFITS AND EXECUTIVE COMPENSATION 2009, (Alvin D. Lurie, ed.), Chapter 17.

This settlement resolves cases in which Plaintiffs asserted claims of breaches of fiduciary duty and for relief under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). In *George v. Kraft*, No. 07-cv-01713 ("*George I*"), Plaintiffs specifically alleged that certain defendants violated ERISA by maintaining unitized Company Stock Funds as investment vehicles in the KFGI Thrift Plan ("the Plan"), by paying excessive fees to the Plan's recordkeeper for its services, by providing insufficient disclosures, and by allowing the Plan's trustee to retain the float earned on certain transactions the trustee conducted on behalf of the Plan. On March 30, 2007, *George I* was transferred from the Southern District of Illinois to the Northern District of Illinois. The parties consented to Magistrate Judge Sidney Schenkier's jurisdiction over the case. Discovery commenced and, on November 12, 2007, Judge Schenkier certified a class. On January 27, 2012, the Court granted Defendants' Motion for Summary Judgment. Plaintiffs appealed and, on June 3, 2011, the Seventh Circuit Court reversed as to Plaintiffs' claims regarding the Company Stock Funds and the excessiveness of the Plan's recordkeeping fee. The case was remanded for further proceedings.

On July 2, 2008, the Class Representatives, after being denied leave to amend their complaint in *George I*, filed *George II* (No. 08-cv-3799). *George II*, pending before Judge Castillo, alleged that Defendants violated ERISA by maintaining the Growth Equity Fund and the Balanced Fund as investment options in the Plan. As in *George I*, *George II* required substantial discovery and motion practice.

In 2010, Plaintiffs moved for, and obtained, class certification in *George II*, although the first order certifying a class was later vacated. Plaintiffs filed a renewed Motion for Class Certification on November 15, 2011, and Judge Castillo had not yet ruled at the time of the settlement. Meanwhile, the Court had denied in part Defendants' Motion for Summary Judgment on claims concerning the two funds.

Both cases were, at the same time, impacted by decisions in other 401(k) fee cases. Notably, on February 12, 2009, the Seventh Circuit Court of Appeals affirmed the dismissal of *Hecker v. Deere*, an excessive fee case filed by Class Counsel, despite supporting amicus briefs by the Secretary of Labor, the AARP, the National Senior Citizens Law Center, the Consumer Federation of America and others. In its dismissal, the Seventh Circuit relied on reasons that included the ERISA §404(c) affirmative defense Defendants also raised in this case. The Seventh Circuit in *Hecker* also upheld an award of costs against plaintiffs in the amount of $219,211.00.

Throughout the litigation, Defendants disputed Plaintiffs' allegations of breaches of fiduciary duty and prohibited transactions by contending, among other defenses, that: (1) the level of recordkeeping fees is not imprudent under ERISA §404(a); (2) investment management fees paid by the Plan were not excessive or unreasonable; (3) the actively managed Balanced Fund and Growth Equity Fund were prudently maintained in the Plan; and (4) the Company

Stock Funds were properly structured. However, predicting how a court would interpret these claims and defenses was far from clear.

Given the uncertainty of the claims, and after receiving a large number of documents – over one million pages – each of which was reviewed by an attorney, an initial mediation was held on August 29, 2011 with nationally-recognized mediator Michael Dickstein. This failed to reach any resolution of the case. However, thereafter, the Parties were able to reach an agreement as to the monetary terms of the settlement.

Class Counsel insisted on broad affirmative relief as a condition of settlement. This was the subject of intense discussions without resolution for another 13 weeks. Additional in-person mediation sessions were then held on December 3, December 12, 2011 and January 27, 2012 before Judge Nolan as well as numerous telephonic conferences, emails, and exchanges of draft documents until, on February 23, 2011, the Parties signed the Settlement Agreement.

Following the signing of the Settlement Agreement, the Parties filed a Joint Motion for Preliminary Approval of the Settlement. Doc. 327. After a hearing, the Court issued its Order granting preliminary approval of the settlement on February 29, 2012. Doc. 336. Pursuant to the Settlement Agreement and the Court's Order, customized, individual notices were mailed to the Class during the week of March 25, 2012. Class counsel also arranged for a Class website, www.kraftERISAsettlement.com, to provide information and documents to the Class.

A. **The Substantial Affirmative Relief is Highly Valuable to the Class**

Where, as here, the settlement includes substantial affirmative relief, such relief must be considered in evaluating the overall benefit to the Class. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, §21.71, at 337 (2004); PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION, §3.13; *cf. Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (cautioning against an "undesirable emphasis" on

monetary "damages" that might "shortchange efforts to seek effective injunctive or declaratory relief").

The affirmative relief also carries significant value to the Plan. The Agreement provides for the following during the settlement period

- First, the Settlement Agreement requires Kraft to continue not to include retail mutual funds as investment options in the Plan.

- Second, the Settlement Agreement requires existing limitations on the cash holdings of the Kraft and Altria Company Stock Funds to be kept in place.

- Third, the Settlement Agreement the removal of the Balanced Fund.

- Fourth, the Settlement Agreement requires Defendants to provide participants with increased and enhanced fee disclosure as provided in new DOL regulations.

- Fifth, the Settlement Agreement prohibits recordkeeping fees from being set as a percentage of plan assets, which would allow fees to increase solely based on fluctuations in the market instead of on the basis of services provided to the Plan.

- Sixth, the Settlement Agreement requires Kraft to follow through on its decision to retain a new, less expensive recordkeeper based on a competitive bidding process for recordkeeping services.

- Seventh, the Settlement Agreement sets up a binding dispute resolution procedure that must be used to resolve potential violations of the Settlement Agreement.

- Eighth, the Settlement Agreement prohibits ALCS and ALCS Benefit Investments from receiving any compensation for services related to the Plan.

## B.    Estimated Value of Non-Monetary Relief

Such broad  non-monetary relief will provide powerful tangible financial benefits to Class members beyond the money they will receive. Between 1995 and the filing of Plaintiffs' lawsuit, Kraft failed to competitively bid recordkeeping fees. According to plaintiffs' expert on 401(k) plan recordkeeping costs, the recordkeeping fees currently paid by the Plan are appropriately $35 higher per participant than what can be obtained with a market rate. Doc. 225-56 at 33. Under the Settlement Agreement, Kraft with follow through on a competitive bidding process which will culminate in the retention, in July 2012, of a new recordkeeper, Fidelity Workplace Services LLC. According to a nationally recognized economist who is an authoritative source on fees in 401(k) Plans, the Plan can be expected to save over $1.4 million per year once the recordkeeping fees are reduced. Brown Decl. ¶ 6. The value of this savings over five years is $7,123,200 and over ten years is $14,246,400. Brown Decl. ¶ 6.[3]

Since the lawsuit and the Settlement Agreement have created a heightened awareness of these issues, Class Counsel believe Defendants are highly unlikely to return to the practices that led to this lawsuit being filed, and, accordingly, the estimated value of the affirmative relief should be considered over time.

Additional value will be realized by the requirement that Defendants follow through on their decision to eliminate the Balanced Fund and continue limits on cash holdings in the Company Stock Funds. Assuming participants keep investing as they have been; elimination of

---

[3] While the Settlement Period does not extend over 10 years, it is Class Counsel's opinion that the Settlement Agreement's benefits, including those regarding procedures for recordkeeping fees, will continue to be followed after the settlement period due to the unlikelihood Defendants will reverse a course of action they have agreed to in this litigation.

the Balanced Fund will save the Class $2,625,177 in investment management fees alone during the settlement period. Brown Decl. ¶ 8. Meanwhile, the Settlement Agreement commits Defendants to capping cash holdings in the Company Stock Fund. If these commitments cause even a one percentage point reduction in cash in the Company Stock Funds, that could save the Plan $497,257 during the settlement period. Brown Dec. ¶ 10. Again, having committed to these practices for the duration of the settlement period, Class Counsel believe it is unlikely Kraft will reinstitute the Balanced Fund or increase cash levels in the Company Stock Fund after the settlement period is over.

These three provisions of the affirmative relief alone, when combined with the cash up front, bring the total benefit to the class to $23,956,411 over five years and $39,350,463 over ten years. Accordingly, the fee requested by Class Counsel represents a contingency fee of only 13 percent of the value of the benefit to the Class over five years and only 8 percent of the value of benefit to the Class over ten years.

III.   **Awarding Attorneys' Fees Based on a Percentage of the Plan's Recovery is Consistent with Seventh Circuit Law**

The Seventh Circuit has held that attorneys' fees based on the common fund doctrine are appropriate in ERISA cases. *See Florin*, 34 F.3d at 563. Under the "common-fund" doctrine, class counsel that obtains a settlement or judgment creating a commonly held fund for the benefit of the class is entitled to a reasonable fee drawn from that fund. *See, e.g.*, *Boeing*, 444 U.S. at 478.

The Seventh Circuit uses the percentage basis rather than a lodestar or other basis when determining a reasonable fee. *Gaskill v. Gordon,* 160 F.3d 361, 363 (7th Cir. 1998) ("it is commonplace to award the lawyers for the class a percentage of the fund, in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-

fee basis."); *Florin*, 34 F.3d at 566; *Williams v. General Elec. Capital Auto Lease*, 1995 WL

765266, *9 (N.D. Ill. 1995) ("The approach favored by the Seventh Circuit is to compute

attorney's fees as a percentage of the benefit conferred upon the class"); *In re Ready-Mixed*

*Concrete Antitrust Litig.*, No. 05-0979, Doc. 732 at 10 (S.D. Ind. Mar. 31, 2009) (the Seventh

Circuit "has expressed a preference for the percentage of the fund approach"); *Will v. General*

*Dynamics*, 2010 WL 4818174 at *2 (S.D.Ill. Nov. 22, 2010) ("The Seventh Circuit Court of

Appeals uses a percentage basis rather than a lodestar or other basis when determining a

reasonable fee").

     Other courts and commentators have joined the Seventh Circuit in expressing a clear

preference for awarding a set percentage. Alba Conte, 1 ATTORNEY FEE AWARDS §2:7 (3d ed.

Oct. 2009 update) ("There has been a growing recognition that the lodestar approach for

determining reasonable fee awards from a common fund created serious problems and is not the

most appropriate means for determining such a common-fund fee."). This preference for the

percentage of recovery method stems from the twin benefits of (1) minimizing the expense of

reviewing billing statements, and (2) the belief that the market would have yielded a contingent-

fee arrangement. *In re Trans Union Corp. Privacy Litig.*, 2009 WL 4799954, *9-10 (N.D. Ill.

Dec. 9, 2009). In this case, the evidence is clear that the market for Class Counsel's services

universally results in contingent-fee arrangements. Theado Decl. ¶¶ 16–17. Accordingly, a

contingent-fee determination is consistent with the Seventh Circuit's market approach. *Gaskill*,

160 F.3d at 363.

     For the same reasons, other circuits have expressly held that the percentage of recovery

method is to be used in awarding fees in common fund cases. *See, e.g., Swedish Hosp. Corp. v.*

*Shalala*, 1 F.3d 1261, 1263 (D.C. Cir. 1993); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946

F.2d 768, 775 (11th Cir. 1991); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995). The opinions are further supported by a Task Force convened by the Third Circuit which closely examined the method of compensation and found that the percentage of recovery method is superior to the lodestar method. The Task Force determined that the lodestar method suffers from numerous deficiencies:  (1) it increases the workload of the judicial system; (2) it is subject to manipulation; (3) it encourages the inflation of billing rates and hours worked; (4) it creates a disincentive to settle cases early on; (5) it discourages flexibility by the court; (6) it particularly disadvantages public interest cases; and (7) it leads to a lack of predictability. *Third Circuit Task Force Report*, 108 F.R.D. 237, 246-49 (1985).  These findings of the Third Circuit have been specifically endorsed by the Seventh Circuit. *Skelton v. General Motors Corp.*, 860 F.2d 250, 252-53 (7th Cir. 1988).

In addition to this long-held endorsement by the Seventh Circuit, the percentage of the fund method has also been adopted by The American Law Institute in its publication, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION, §3.13(b) ("a percent-of-the-fund approach should be the method utilized in most common-fund cases, ***with the percentage being based on both the monetary and the nonmonetary value of the settlement***.") (emphasis added).

## IV. The Amount of Counsel's Requested Fee is Consistent With Seventh Circuit Authority

In determining whether to grant a fee petition in a class action settlement, the Seventh Circuit requires the Court to determine whether the fee requested is within the range of fees that would have been agreed to at the outset of the litigation in an arm's length negotiation in light of the risk of nonpayment and the normal rate of compensation in the market at the time. *See Synthroid*, 264 F.3d at 718. Thus, in common fund cases, "the measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case."

11

*Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000). "[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Matter of Continental Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992). This requires the district judge to "ascertain the appropriate rate for cases of similar difficulty and risk, and of similarly limited potential recovery." *Kirchoff*, 786 F.2d at 326.

Where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, "the normal rate of compensation in the market" is "33.33% of the common fund recovered." *In re Ready-Mixed*, Doc. 732 at 14.

A. **The Market for Attorneys' Fees in this Litigation is a Contingency Fee Based on a Percentage of the Recovery**

Class counsel entered into agreements with each of the Named Plaintiffs for a contingency fee of one-third of any recovery plus costs, with the understanding that their claims would be brought as a class action. Exs. A-D. Class Counsel have submitted the declaration of Thomas Theado, a prominent ERISA counsel, stating that he would have insisted upon a similar arrangement and that contingency fees are universally the method of payment for comparable legal services. Theado Decl. ¶ 17. Class Counsel are virtually alone in their willingness to handle 401(k) fee litigation with full development of the cases, and do so only on a contingency fee basis. Schlichter Decl. ¶¶ 17–22. Other ERISA benefits attorneys agree. Theado Decl. ¶ 17. ("A fee award that is equivalent to one-third of the gross recovery is a fair and reasonable attorney fee.")

The evidence is indisputable that an arm's length contract for representation between competent counsel and the Class at the inception of this litigation would necessarily be on a

contingency basis. It follows that the market rate for the legal services provided by class counsel is a contingency fee. *See Kirchoff*, 786 F.2d at 324 ("When the prevailing method of compensating lawyers for similar services is the contingent fee, then the contingent fee is the market rate.").

In light of these market realities, the question is simply whether Class Counsel's fee of 33 1/3 % of the monetary recovery or 8% of the estimated value of the settlement over time was reasonable at the inception of this litigation. *See Synthroid*, 264 F.3d at 718. The evidence submitted by Class Counsel shows conclusively that the percentage is within or below the market rate and below the reasonable hours rate Class Counsel would be entitled to without taking into account the uncertainty of recovery.

B.    **Class Counsel's Request is Consistent with the Market for its Services at the Inception of the Litigation**

"Substantial empirical evidence indicates that a one-third fee is a common benchmark in private contingency fee cases." Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. OF EMPIRICAL LEGAL STUDIES, Vol. 1, Issue 1, 27-78, at 35 (March 2004). Many factors support the reasonableness of this request, including: (1) that the Named Plaintiffs agreed to a one-third contingency fee;[4] (2) that Class Counsel are at the forefront of litigation of this type;[5] (3) that, unlike most areas of the law, virtually no cases of this type had been brought by private firms before Plaintiffs' attorneys filed this case;[6] (4) that this litigation entailed tremendous risks that no other plaintiffs' counsel was willing to undertake at any contingency fee; (5) that the regulatory agency involved, the Department of Labor, has not

---

[4] Exs. A-D.
[5] Theado Decl. ¶¶ 14-15.
[6] Theado Decl. ¶ 14.

brought such cases;[7] (6) that this litigation required extensive and particularized skill, not only in litigating a complex national class action, but also in navigating ERISA and the Department of Labor's voluminous regulations, comments and advisory opinions relevant to the case;[8] (7) that this litigation required extensive investment including the retention of expert witnesses, the review of extensive discovery and the investment of thousands of attorney hours, as well as substantial legal assistant hours, in litigating the case;[9] (8) that these expenses were incurred over the course of more than five years, beginning well before the case was filed, during which time Class Counsel had not received any compensation for their services to the class;[10] (9) that numerous affirmative defenses, including the statute of limitations and ERISA § 404(c) defenses, threatened to create a significant or complete bar to recovery; (10) that Defendants are adamant in their position that *Hecker v. Deere*, 556 F.3d 575 (7th Cir. 2009), controls this case and requires dismissal; and (11) that the risk of substantial costs being assessed against Plaintiffs was significant, and, in fact, an award of over $200,000 in Defendants' copying costs against plaintiffs was upheld by the Seventh Circuit in *Hecker*.

Moreover, Class Counsel will have substantial additional time in the case in the future for no fee and has undertaken even further risk of substantial expense if a dispute arises. This time and risk, all of which is without cost to the Class, includes: (1) the Settlement Agreement's requirement that Class Counsel continue to monitor Defendants for almost three years without a fee; (2) the Settlement Agreement's requirement that Class Counsel take on the risk that the settlement would not be finally approved, in which case Class Counsel is responsible for one-

---

[7] Theado Decl. ¶ 14.
[8] Theado Decl. ¶ 11.
[9] Schlichter Decl. ¶ 19.
[10] Schlichter Decl. ¶¶ 17 – 22.

half of the settlement costs, including the costs of notice to the class;[11] and (3) apart from the risk of further litigation and its time and cost, the additional expenses Class Counsel will incur in the future, including expenses related to maintaining a class website and responding to questions from class members.[12]

In short, this case presents an overwhelming set of factors uniquely demonstrating the appropriateness of the requested relief.

C.     **Market Rate Determination**

The Seventh Circuit has directed courts to look at three factors in determining the "market rate." *Taubenfeld v. AON Corp*., 415 F.3d 597, 599-600 (7th Cir. 2005). Courts should consider (a) actual fee contracts that were privately negotiated for similar litigation; (b) information from other cases, and (c) the quality of legal services rendered. *See id*. All these factors support the requested award.

1.     Actual Fee Contracts

Class Representatives George, Dunn, Swanson and Streff each signed agreements with Class Counsel prior to commencing this case calling for a one-third fee plus costs. Exs. A-D. At the time they entered into these arrangements, Class Counsel was the only firm willing to undertake cases of this type and did so pursuant to similar agreements calling for a one-third contingency fee. Schlichter Decl. ¶¶ 20, 22. Even today, Class Counsel are nationwide leaders in 401(k) fee litigation under such agreements.

---

[11] Doc. 238-1 at Art. 11.5 (Settlement Agreement). The cost of settlement administration, including notice, is estimated by the Settlement Administrator to be $235,000.
[12] Also, Class Counsel do not seek a one-third contingency fee for the interest earned on the Settlement Fund since it was created. Accordingly, Class Counsel are seeking less than one-third of the total monetary recovery.

2.      Information from Other Cases

As explained above, the other 401(k) fee cases undertaken by Class Counsel concurrent with *George v. Kraft* had one-third contingency fee agreements. Indeed, in Class Counsel's prior settlements of 401(k) fee cases within the Seventh Circuit, Class Counsel had one-third contracts and were awarded one-third of the monetary recovery to the Plans. *Martin v. Caterpillar, Inc.*, No. 07-1009 (C.D. Ill.) (J. McDade) (Doc. 197, Opinion and Order on the Motion of Class Counsel for fees, expenses, and award to named plaintiffs) (Sept. 10, 2010); *Will v. General Dynamics*, 2010 WL 4818174 (J. Murphy) (S.D.Ill. Nov. 22, 2010).

Even outside of the novel and complex ERISA litigation market, there is a general recognition both inside and outside of the Seventh Circuit that 33 1/3% is the market rate for a contingency fee. Indeed, the Seventh Circuit has specifically noted that "the typical contingent fee is between 33 and 40 percent." *Gaskill,* 160 F.3d at 362 (upholding the award of 38% of a $20 million settlement); *see also Retsky Family Limited P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *4 (N.D. Ill. 2001) ("A customary contingency fee would range from 33% to 40% of the amount recovered."); *Goldsmith v. Tech. Solutions Co*., 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) (noting that courts in the Seventh Circuit award attorneys' fees "equal to approximately one-third or more of the recovery."). As stated above, appropriate consideration of the value of just three of the eight separate benefits to the Class through affirmative relief brings Class Counsel's requested fee to below 8% of the estimated benefit to the Plan.

In addition to the *Martin v. Caterpillar* and *Will v .General Dynamics* fee cases, *supra*, an award of 33 1/3% is consistent with fees granted by other courts. *In re Marsh ERISA Litig*., 2010 WL 451028 (S.D.N.Y. Jan 29, 2010) (approving attorneys' fees of 33 1/3% of a $35 million settlement); *In re Ampicillin Antitrust Litig.,* 526 F. Supp. 494, 500 (D.D.C. 1981) (awarding

attorneys' fees of 45% of settlement recovery); *Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *9 (E.D. Pa. Apr. 11, 2007) (in a securities class action, noting that "a normal contingency fee in this type of case would be 30 percent to 40 percent of the recovery and that courts have awarded 33 1/3 percent in many cases with settlement funds larger than $750,000," and approving one-third attorneys' fee award from the common fund to class counsel); *In re Texas Prison Litig.*, 191 F.R.D. 164 (W.D. Mo. 1999) (stating that "an attorney fee award of 33 1/3 percent of the Global Settlement Fund is reasonable in this case and in line with awards granted by neighboring courts," and approving a 36% attorneys' fee award on a $2.22 million common fund settlement); *Cullen v. Whitman Med. Corp.,* 197 F.R.D. 136, 146-47 (E.D. Pa. 2000) (awarding 33⅓% of the $7.3 million common fund); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361, at *15 (E.D. Pa. Apr.18, 2005) (in a securities fraud case, awarding attorneys' fees of one-third of $7 million settlement); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *17 (D. N.J. Nov. 9, 2005) (approving award of 33 1/3% of the $75 million common fund). *Bruner v. Sprint/United Mgmt. Co.,* 2009 WL 2058762 (D. Kan. Jul. 14, 2009) (awarding 39% of common fund in FLSA case as attorneys' fee); *Perry v. Nat'l City Bank,* No. 05-CV-891-DRH-PMF (S.D. Ill. Mar. 3, 2008) (district court approved 33.3% of common fund as attorneys' fee award); *Bessey v. Packerland Plainwell, Inc.,* No. 4:06-cv-95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) (approving 33 1/3% of the common fund); *In re Medtronic Inc. Implantable Defibrillator Prod. Liab. Litig.*, 2008 WL 4861694 (D. Minn. Oct. 20, 2008) (approving 38.33% award of attorney fees from the common fund); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317-MDL-SEITZ (S.D. Fla. Apr. 19, 2005) (awarding 33 1/3% of $75 million common fund); *In re Relafen Antitrust Litig.,* No. 01-12239-WGY (D. Mass. Apr. 9, 2004) (awarding 33⅓% of $175 million common fund); *In re Managed Care Litig.*

*(Aetna),* 2003 WL 22850070, at *6 (S.D. Fla. Oct. 24, 2003) and *In re Managed Care Litig.*

*(Cigna),* 00-1334-MDL-MORENO (S.D. Fla. Feb. 2, 2004) (awarding 35.5% of a $310 million

common fund); *In re Busporine Antitrust Litig.,* No. 01-MD-1410 (S.D.N.Y. Apr. 11, 2003)

(awarding 33⅓% of $220M common fund); *Gutter v. E.I. Dupont De Nemours & Co.,* No. 95-

2152-CIV-GOLD (S.D. Fla. May 30, 2003) (awarding 33 1/3% of $77.5 million common fund);

*In re Corel Corp. Inc. Sec. Litig.,* 293 F. Supp. 2d 484, 497 (E.D. Pa. 2003) ("[T]he 33 1/3 % fee

request in this complex case is within the reasonable range."); *In re US Bancorp Litig.*, 291 F.3d

1035, 1038 (8th Cir. 2002) (affirming district court's award of 36% of common fund to class

counsel); *Faircloth v. Certified Fin. Inc.,* 2001 WL 527489, at *12 (E.D. La. May 16, 2001)

(awarding attorneys' fees of 35% of settlement plus interest and reimbursement of expenses); *In*

*re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 439 (E.D. Pa. 2001) (awarding attorneys'

fees of one-third of settlement as "fair and reasonable," plus reimbursement of expenses); *In re*

*Eng'g Animation Sec. Litig.,* 203 F.R.D. 417, 423-24 (S.D. Iowa 2001) (awarding attorneys' fees

of $2.5 million, or one third of common fund, plus expenses); *In re Unisys Corp. Sec. Litig.*,

2001 WL 1563721, at *3-4 (E.D. Pa. Dec. 6, 2001) (approving one-third fee sought by plaintiffs'

counsel as fair and reasonable); *In re Safety Components Int'l, Inc. Sec. Litig.*, 166 F. Supp. 2d

72, 101-02 (D.N.J. 2001) (approving fee request of one-third of $4.5 million settlement); *In re*

*Vitamins Antitrust Litig.,* 2001 WL 34312839 (D.D.C. July 16, 2001) (awarding 34.6% of a $365

million common fund); *In re Neoware Sys., Inc. Sec. Litig.,* 2000 WL 1100871, at *3-4 (E.D. Pa.

July 27, 2000) (awarding counsel fees of approximately one-third of each of two settlement

funds, plus a proportionate share of interest accrued and reimbursement of expenses); *Kogan v.*

*AIMCO Fox Chase, L.P.,* 193 F.R.D. 496, 503 (E.D. Mich. 2000) (awarding attorneys' fees of

one-third of common fund); *In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403 (S.D. Tex. 1999)

(awarding 35.1% of a $190 million common fund); *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291 (11th Cir. 1999) (awarding 33 1/3% of $40 million common fund); *Bakalor v. Integrated Commc'n Network, Inc.,* 96-2021-CIV-KING (S.D. Fla. 1997) (awarding 33 1/3% of the common fund); *In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 379 (9th Cir. 1995) (awarding attorneys' fees of 33% of total recovery); *In re Employee Benefit Plans Sec. Litig.,* 1993 WL 330595, at *7 (D. Minn. Jun. 2, 1993) (awarding 33 1/3% of a $10.7 million common fund); *Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1380-81 (D. Minn. 1985) (awarding attorneys' fees of 35% of settlement recovery).

Independent studies of class action litigation nationwide have come to a similar conclusion that a one-third fee is consistent with market rates. *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. OF EMPIRICAL LEGAL STUDIES, Vol. 1, Issue 1, 27-78, at 35 (March 2004).

### 3. The Quality of Class Counsel's Service was High.

The final factor courts look to in determining if the requested percentage fee is appropriate is the quality of the legal services provided. Based on the results of a five-year battle with a well-funded Defendant represented by highly qualified attorneys, Class Counsel's performance had to be high quality in order to achieve the settlement.

If the settlement is approved, every Class member is eligible to receive a monetary award, and most class members, as current participants, will receive their award directly through a tax-free 401(k) deposit. Further, current and future plan participants will enjoy the significant affirmative relief provisions of this settlement for the foreseeable future. Class Counsel believes the quality of its performance fully justifies the requested fee and costs award.

19

In this case, the Class went toe-to-toe with one of the largest companies in the United States and its formidable law firm because Class Counsel was of sufficient size, had the expertise necessary to withstand Kraft's defenses, and had the capacity and willingness to risk the expense of a lengthy battle and a potential cost award in favor of Defendants. Class Counsel has risked millions of dollars in un-reimbursed attorneys' time and over a million and half dollars in out-of-pocket costs because of the need for highly qualified experts in finance, 401(k) plan recordkeeping, investment management and fiduciary practices, the time necessary for attorneys to review thousands of documents and the need to see the cases through to trial and appeal with the resulting time and expense. Unless that risk is compensated with a commensurate award, no firm, no matter how large or well-financed, will have the incentive to even consider such a case as this.

Class Counsel in this case functioned as a private attorney general. Absent an award of fees that adequately compensates class counsel, the purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined. *See* John J. Coffee, Jr., *Rescuing the Private Attorney General: Why the Model of the Lawyers as Bounty Hunter is Not Working*, 42 MD. L. REV. 215, 216, 225-26 (1983) (the private attorney general provides an important mechanism "to enforce the federal… laws, to challenge corporate self-dealing… and to protect a host of other statutory policies," but in the absence of appropriate incentive structures, "litigated judgments are few, cheap settlements are common, and …. the private watchdog can be bought off by tossing him the juicy bone of a higher-than-ordinary fee award in return for his acceptance of an inadequate settlement.").

As described above, Class Counsel spent a year and a half before filing suit, including hundreds of hours of attorney time, intensely investigating, speaking with participants in the

Plan, obtaining documents from public sources and the Plan administrator, reviewing and analyzing Plan documents and financial statements, developing expertise regarding industry practices, conducting extensive legal research, and fashioning the Class's causes of action. It both has committed to, and is capable of, devoting the resources necessary to vigorously prosecute this litigation.

Even after settlement, Class Counsel have committed to keeping the class informed at no cost to the class, including through the settlement website, www.kraftERISAsettlement.com and through direct calls with class members. In the weeks since notices were mailed to class members, Class Counsel have fielded over 140 such calls and emails from class members. Meanwhile, Class Counsel will continue to oversee and monitor compliance with the Settlement Agreement for years with no expectation of, or request for, additional fees, and bear the risk of paying half the cost of the settlement, including the notice, if the settlement fails for any reason.

As described in the Motion for Class Certification and the supporting documents, Schlichter, Bogard & Denton has extensive experience litigating class actions of similar size, scope, and complexity to this case. In addition to this case, Schlichter Bogard & Denton has been named Class Counsel in other 401(k) Fee Cases, including *Martin v. Caterpillar, Inc*., 2010 WL 3210448 (C.D.Ill. Aug. 12, 2010); *Will v. General Dynamics,* 2010 WL 4818174 (S.D.Ill. Nov. 22, 2010); *Taylor v. United Tech. Corp.*, 2008 WL 2333120, at *5-6 (D. Conn. June 3, 2008); *Kanawi v. Bechtel Corp*., 254 F.R.D. 102, 111-12 (N.D. Cal. 2008); *Tussey  v. ABB Inc*., 2007 WL 4289694, at *8 (W.D. Mo. Dec. 3, 2007); and *Loomis v. Exelon Corp*., 2007 WL 2981951, at *5 (N.D. Ill. June 26, 2007).

In *Martin v. Caterpillar, Inc*., as stated *supra*, Judge McDade in the Central District of Illinois certified a similar settlement class of 401(k) Plan participants as part of his approval of

21

the settlement and award of a one-third contingency fee to Class Counsel. *Martin v. Caterpillar Inc.*, 2010 WL 3210448 (Aug. 12, 2010) (granting final approval of settlement); 07-1009 (Doc. 197) (awarding Attorneys' fees and costs). Judge McDade understood that the complexities and uncertainties of this litigation required extraordinary efforts by Class Counsel. In addition to awarding Class Counsel one-third of the monetary recovery of the settlement (the same percentage requested here), Judge McDade, in granting final approval of the settlement, observed that:

> Plaintiffs have a hard row to hoe. This litigation entails complicated ERISA claims that are not only dependent on the statute but also on various regulations that implement ERISA. These claims also are relatively unique with limited case authority in support.

*Martin*, 2010 WL 3210448 at *2. As in *Martin*, the class settlement "represents a significant boon to class members in light of the complexity of this litigation, the potential for protracted litigation, and the strength of the available defenses recognized in *Hecker*." *Id.*

Recognizing the work of plaintiffs' counsel as exceptional in taking on such a 401(k) fee case, the Honorable Federal District Judge Patrick Murphy, in *Will v. General Dynamics Corp.*, 2010 WL 4818174, at *2 (S.D.Ill. Nov. 22, 2010), approved fees of one-third of the monetary recovery in a similar settlement and stated:

> Schlichter, Bogard & Denton's work throughout this litigation illustrates ***an exceptional example of a private attorney general*** risking large sums of money and investing many thousands of hours for the benefit of employees and retirees. No case had previously been brought by either the Department of Labor or private attorneys against large employers for excessive fees in a 401(k) plan. Class Counsel performed substantial work…, investigating the facts, examining documents, and consulting and paying experts to determine whether it was viable. This case has been pending since September 11, 2006. Litigating the case required Class Counsel to be of the highest caliber and committed to the interests of the participants and beneficiaries of the General Dynamics 401(k) Plans.

(emphasis added).

In addition to being named the third most influential person in the 401(k) industry in 2007, firm principal Jerome J. Schlichter has been consistently commended for his capable representation of both individual litigants and large classes. In *Mister v. Illinois Central Golf Railroad*, Case No., 81-3006 (S.D. Ill.), U.S. District Judge James Foreman commented of Mr. Schlichter: "this Court is unaware of any comparable achievement of public good by a private lawyer in the face of such obstacles and enormous demand of resources and finance." Order on Attorney's Fees, *Mister v. Illinois Central Golf Railroad*, No. 81-3006 (S.D. Ill. 1993). In *Wilfong v. Rent-A-Center*, Case No. 00-680-DRH (S.D. Ill. 2002), Judge David Herndon found "that Mr. Schlichter's experience, reputation and ability are of the highest caliber." Order on Attorney's Fees. *Wilfong v. Rent-A-Center*, Case No. 00-680-DRH (S.D. Ill. 2002). Recently, speaking of Mr. Schichter and his firm, Judge Michael David of the 22nd Judicial Circuit in St. Louis described Counsel's effort as "the stuff of legends" in connection with the jury trial of a product liability claim involving a faulty respirator. The verdict in that case was upheld on appeal, which resulted in collection of a $40 million judgment for the family of a fallen fire fighter. *Martin v. Survivair Respirators, Inc.,* No. 22042-0883 (22d Cir. Mo. June 30, 2010) (Court Order and Judgment at 19).

As demonstrated above, a one-third fee is a common benchmark in private contingency fee cases, and this case in particular, with its unique risks, massive outlay of resources, untested theories of recovery, uncertainty of result, and capable representation by nationally recognized class counsel clearly justifies this market rate. This is particularly true since Class Counsel's requested recovery is just 8% of the value of the potential benefit to the class when the value of affirmative relief is considered.

D.     A Lodestar Cross-Check Supports Class Counsel's Fee Request.

Class Counsel's fee requested is further supported by a lodestar cross-check. In *Eshelman v. Client Services, Inc.*, Case No. 0822-CC-00763 (22d Cir. Mo.) (Motion for Attorneys' Fees and Costs, Dec. 7, 2009), the Court approved hourly rates for Class Counsel with 25 years or more experience of $800 per hour; for attorneys with 15-24 years of experience it was $625 per hour; for attorneys with 5-15 years of experience it was $450 per hour; for attorneys with 2-4 years of experience it was $325 per hour; and for professional support staff the rate was $125 per hour. *Id.* In *Martin v. Caterpillar*, Judge McDade accepted the same rates, which produced a blended hourly rate of $514.60 and a lodestar multiplier of 1.4. *Martin*, Opinion and Order on Motion of Class Counsel for Fees, Expenses, and Award to Named Plaintiffs, Doc. 197 at p. 8 (Sept. 10, 2010). Those rates were later found reasonable in *Will v. General Dynamics*, 2010 WL 4818174 (J. Murphy) (S.D.Ill. Nov. 22, 2010) and *Kanawi v. Bechtel*, No. 06-05566 (N.D.Cal.) (J. Breyer) (Doc. 828, Order Awarding Attorneys' Fees and Costs).

Based on market increases of 2.7%, 4.4% and 3.25% in 2010, 2011 and 2012 respectively,[13] Class Counsel's reasonable lodestar rates are currently:

> Attorneys with 25 years of more experience – $885.60/hr.
> Attorneys with 15-25 years of experience – $691.88/hr.
> Attorneys with 5-14 years of experience - $498.15/hr.
> Attorneys with 2-4 years of experience - $359.78/hr.
> Legal Assistants – $138.38.[14]

Additionally, Class Counsel employed paralegals and law clerks in this matter. The market for paralegal and law clerk services in national litigation such as this supports a rate of $275 per hour. Boyko Decl. ¶ 5.

Class Counsel spent 19,669.5 hours of attorney time and 4556.1 hours of non-attorney professional time litigating this case. O'Gorman Decl. ¶ 2. Based on the rates above, an

---

[13] Boyko Decl. ¶ 3.
[14] Boyko Decl. ¶ 4.

unenhanced value of Class Counsel's work would be $12,472,575.68. Boyko Decl. ¶ 6. Class

Counsel's fee request is one-quarter of that amount. Accordingly, a lodestar cross-check supports

the reasonableness of this request.

## V.     Approval of Costs

It is well established that counsel who create a common fund like this one are entitled to

the reimbursement of litigation costs and expenses. Fed.R.Civ.P. 23(h). The expenses that may

be reimbursed from the common fund encompass "all reasonable" litigation-related expenses.

*See Trustees v. Greenough,* 105 U.S. 527, 533 (1882).

Litigating complex contingent cases such as this one requires counsel to incur very large

expenses for expert witnesses, deposition and review of documents. Plaintiffs' Counsel have

advanced $1,496,371.33 (O'Gorman Decl. ¶ 1), and they are entitled to reimbursement of those

expenses.[15] *See Mills v. Electric Auto-Lite,* 396 U.S. 375, 392 (1970) (A party who has produced

a common fund for the benefit of a group may be reimbursed for expenses of litigation.);

*Miltland Raleigh-Durham v. Myers,* 840 F.Supp. 235, 239 (S.D.N.Y.1993) ("Attorneys may be

compensated for reasonable out-of-pocket expenses incurred and customarily charged to their

clients."). Indeed, Class Counsel, proceeding on a contingent-fee basis with a high risk of no

recovery, had a strong incentive to keep expenses at a reasonable level. The costs are largely

attributable to ordinary and necessary costs such as expert fees, computer-assisted document

organization, deposition travel and mediation costs. *See Matter of Continental Illinois Securities

Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (finding error in district court's decision not to

reimburse class counsel for LEXIS and Westlaw expenses). As Judge McDade noted in granting

final approval of the class settlement in *Martin v. Caterpillar,* cases such as *Martin* and this case

---

[15] Apart from the declaration of Sheri O'Gorman regarding the amount and categories of expenses, Class Counsel is prepared to submit an itemized list of expenses for in-camera review upon the Court's request.

"involve significant discovery of complicated financial documents, [which] require significant expert testimony" and that the complex subject matter of the litigation "would be difficult for a [fact finder], if required, to comprehend, thus necessitating more expert testimony than would otherwise be necessary." *Martin v. Caterpillar, Inc.,* 2010 WL 3210448 at *3.

Further, Class Counsel has incurred these expenses over the course of six years. Class Counsel do not seek interest to compensate them for the time value of this money or the costs associated with advancing these expenses to the Class. Accordingly, this fee request is all the more reasonable.

## VI.    Named Plaintiff Awards

Named Plaintiffs Gerald George, Cathy Dunn, Andrew Swanson and Timothy Streff have been active, hands-on participants in this litigation, expending significant amounts of their own time to benefit the Class. They came forward to initiate this action, took substantial risk, and thereafter remained in contact with Class Counsel. They responded to document requests and interrogatories; reviewed and approved pleadings; assisted with discovery; and were involved in settlement. They prepared for and were extensively questioned during depositions by Defendants' counsel. Most sat through two separate depositions, one for each of the two cases.

Further, as *Hecker* illustrates, the Named Plaintiffs risked a judgment against them for Defendants' costs to obtain this historic recovery for the Class. In light of their faithful commitment to the Class, Class Counsel request that each of the three Named Plaintiffs receive an incentive award of $15,000 from the Settlement Fund.

The total award for all three named plaintiffs represents just 0.63% of the total Settlement Fund. Awards of $15,000 for a named plaintiff award and total named plaintiff awards of less than one percent of the fund are well within the ranges that are typically awarded in comparable

cases. *See, e.g.*, *In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366, 377 (S.D. Ohio 1990) (awarding $215,000, or 1.19% of the settlement fund, to the named plaintiffs); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (upholding award of $25,000 to class representative); *Cook v. McCarron*, 1997 WL 47448, at *19 (N.D. Ill. 1997) (awarding $25,000 incentive award); *Will v. General Dynamics Corp.,* 2010 WL 4818174, at *4 (S.D.Ill. 2010) (awarding $25,000 to each of the three named plaintiffs).

## VII.    Conclusion

For all the reasons stated herein, Class Counsel request that the Court approve a fee award of $3,166,666 and a cost award of $1,496,371.33 to Class Counsel, Schlichter, Bogard & Denton, and incentive awards of $15,000 to each of the four named plaintiffs out of the Gross Settlement Fund.

Dated:  April 27, 2012

Respectfully submitted,

**Schlichter, Bogard & Denton**

/s/ Jerome J. Schlichter
Jerome J. Schlichter
Nelson G. Wolff
Troy A. Doles
Jason P. Kelly
100 South Fourth Street, Suite 900
St. Louis, MO 63102
Tel: 314-621-6115
jschlichter@uselaws.com
*Lead Counsel for Plaintiffs*

*and*

**Meites, Mulder, & Glink**
Thomas R. Meites
321 S. Plymouth Court, Suite 1250
Chicago, IL 60604
Tel: (312) 263-0272;
tmeites@mmmglaw.com
*Local Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing was filed on April 27, 2012 with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

                    **/s/** Jerome J. Schlichter_____